IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, | § § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIV. A. NOS. 2:20-CV-00319-JRG (LEAD) |
| PNC BANK N.A., | § § | 2:21-CV-00110-JRG |
| *Defendant*. | § § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is PNC Bank N.A.'s ("PNC") Motion to Transfer to the Western District of Pennsylvania Pursuant to 28 U.S.C. § 1404(a) (the "Motion"). (Dkt. No. 31). Having considered the Motion, the completed briefing, and oral argument, the Court is of the opinion that the Motion should be and hereby is **DENIED**.[1]

**I.    BACKGROUND**

United Services Automobile Association ("USAA") filed suit against PNC on September 30, 2020. USAA filed an amended complaint on December 2, 2020 (the "First Amended Complaint"). (Dkt. No. 8). The amended complaint alleged infringement of four USAA patents: U.S. Patent Nos. 10,482,432 (the "'432 Patent"), 10,621,559 (the "'559 Patent"), 8,977,571 (the "'571 Patent"), and 8,699,779 (the "'779 Patent"). (*Id.* ¶ 13). These patents generally relate to mobile check deposit technology. PNC also filed counterclaims of patent infringement in this case against USAA when it responded to USAA's First Amended Complaint. (Dkt. No. 60). On

---

[1] PNC also filed a nearly identical Motion to Transfer to the Western District of Pennsylvania in member case number 2:21-cv-00110 (the "-110 Case"). (-110 Case, Dkt. No. 13). For the same reasons discussed herein, that motion is likewise **DENIED**.

December 4, 2020, PNC filed a declaratory judgment action in the Western District of Pennsylvania (the "Western District") on a subset of the patents asserted in USAA's First Amended Complaint. (Dkt. No. 31 at 11). The Court in the Western District administratively closed that action while PNC's Motion was pending before this Court. (Dkt. No. 202 at 4:20–5:14). In response to USAA's First Amended Complaint, PNC filed a motion to dismiss on December 18, 2020. (Dkt. No. 24). On January 7, 2021, PNC filed the instant Motion to transfer this case to the Western District. (Dkt. No. 31). On March 31, 2021, USAA filed another suit in this District against PNC accusing PNC of infringing U.S. Patent Nos. 10,013,605 (the "'605 Patent") and 10,013,681 Patent (the "'681 Patent"). (-110 Case, Dkt. No. 1). On July 16, 2021, the Court consolidated the two cases. (Dkt. No. 144). On September 22, 2021, the Court heard oral argument on the Motion. (Dkt. No. 199).

## II.   LEGAL STANDARD

In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Fifth Circuit's non-exhaustive list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private interest factors include: (1) "the relative ease of access to sources of proof;" (2) "the availability of compulsory process to secure the attendance of witnesses;" (3) "the cost of attendance for willing witnesses;" and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors include: (1) "the administrative difficulties flowing from court congestion;" (2) "the local interest in having localized interests decided at home;" (3) "the familiarity of the forum with the law that will govern the case;" and (4) "the avoidance of unnecessary problems of conflict of laws." *Id.*

In order to support a claim for transfer under § 1404(a), a movant must demonstrate that the transferee venue is "clearly more convenient" than the current District. *In re Volkswagen of*

*Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). This analysis is "based on 'the situation which existed when the suit was instituted.'" *See In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (citing *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)); *Uniloc USA, Inc. v. Apple Inc.*, No. 2:17-cv-00258, 2017 WL 11553227, at *4 (E.D. Tex. Dec. 22, 2017).

### III.   DISCUSSION

The Court first addresses the private interest factors followed by the public interest factors.[2]

#### A.   Private Interest Factors

**The Relative Ease of Access to Sources of Proof.**  The first private interest factor the Court analyzes is the relative ease of access to sources of proof, including documentary and other physical evidence. *See Volkswagen II*, 545 F.3d at 315. Notwithstanding well-known advances in technology including the digitization of data, the courts of appeals nonetheless continue to affirm the relevance and importance of the physical location of these sources. *See id.* at 316; *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009). Parties must specifically identify and locate sources of proof and explain their relevance. *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-cv-513, 2018 WL 2329752, at *5 (E.D. Tex. May 22, 2018); *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 245 n.10 (5th Cir. 2017).

PNC argues that the sources of proof are more accessible in the Western District than this District because "the known documentary evidence relating to the Accused Functionality is in, or easily accessible from, PNC's headquarters in Pittsburgh." (Dkt. No. 31 at 10). PNC argues that it knows of no relevant evidence in this District. (*Id.*).

USAA responds that its own evidence is located in this District, including its mobile deposit source code, which is located at USAA's Chief Technology and Design Office ("CTO")

---

[2] USAA does not dispute that it could have brought suit in the Western District of Pennsylvania. (*See generally* Dkt. No. 38). Accordingly, the Court need not specifically address this threshold inquiry.

in Plano, Texas. (*Id.*). USAA argues that its source code is relevant to secondary considerations given PNC's affirmative defense of invalidity and also to PNC's counterclaims of infringement. (Dkt. No. 202 at 42:16–43:10). USAA also notes that its Plano CTO employs 35 technical engineers who work on USAA's embodying product. (Dkt. No. 202 at 46:10–22; Dkt. No. 38-1 ¶4).

The Court finds this factor is neutral. Although PNC is likely to have sources of proof located at its headquarters in the Western District,[3] USAA has sources of proof in this District related to its embodying products and the products PNC has accused of infringement in its counterclaims. (*E.g.*, Dkt. No. 60 ¶¶ 48–50, 57–59; Dkt. No. 202 at 42:16–43:10). USAA's presence in this District is relevant to this case and is not insignificant. (Dkt. No. 202 at 46:2–47:7). USAA's source code is stored in this District. (*Id.*; Dkt. No. 38-1 ¶ 4). USAA has maintained operations in this District related to the accused and embodying products since 2013. (Dkt. No. 202 at 46:2–47:7). Although PNC contends that USAA conceived of the invention in San Antonio in 2006 (*Id.* at 22:15–21), the Court's focus is on the circumstances that exist at the filing of the complaint. At the filing of the complaint, USAA developed and stored source code for its relevant products in Plano—and had done so since 2013. (*Id.* at 46:2–47:7). The Court is therefore persuaded that material sources of proof are located in both Districts. Consequently, the Court finds this factor is neutral.

**The Availability of Compulsory Process to Secure the Attendance of Witnesses and Cost of Attendance for Willing Witnesses.** PNC identified seven third-party witnesses. Three of these witnesses live in or around Pittsburgh, Pennsylvania. Three others live outside the country in Toronto, Canada and another lives in Ohio. With the exception of the international witnesses,

---

[3] At oral argument, counsel for PNC acknowledged that although PNC develops and accesses its source code in Pittsburgh, PNC stores its source code in Virginia. (Dkt. No. 202 at 24:17–21).

PNC identified the same witnesses for both the second and third private interest factors. (*Compare* Dkt. No. 31 at 8–9 *with id.* at 11, n. 5).

USAA, on the other hand, identified two former employees with relevant information who stated that they would be unwilling to attend trial in the Western District. Mr. Oakes—the inventor on three of the asserted patents—submitted a declaration with USAA's briefing and testified that he is "not willing or able to travel to testify in Pittsburgh, PA."[4] (Dkt. No. 38-3 ¶ 4). Additionally, USAA identified Mr. Morris who also submitted a declaration with PNC's briefing and testified that "it is very unlikely that I would be willing or able to travel to testify in Pittsburgh, PA." (Dkt. No. 38-2 ¶ 2). Messrs. Oakes and Morris live in Texas. (*Id.*; Dkt. No. 38-3 ¶ 4).

Despite the two factors being distinct, PNC identifies the same third-party witnesses for both factors and fails to provide any showing as to whether they are willing or unwilling.[5] Such is not proper. Instead, PNC must make a showing as to the availability of compulsory process for ***unwilling*** witnesses in the transferee district and separately, a lower cost of attendance of ***willing*** witnesses in the transferee district. In refusing to specify which witnesses were willing and which were unwilling, PNC has failed to make an adequate showing that these factors favor transfer. Considering the totality of the evidence before the Court, including the declarations of non-party witnesses identified by USAA, the Court views this factor as neutral.[6]

**All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive**. The fourth private interest factor addresses concerns rationally based on judicial

---

[4] At the hearing, the parties informed the Court that Mr. Oakes is now deceased. (Dkt. No. 202 at 41:1–6).
[5] During oral argument, PNC acknowledged that it did not submit a declaration regarding the willingness of any third-party witness. (Dkt. No. 202 at 47:24–48:2).
[6] The parties also dispute which venue is more convenient for their witnesses. Party witnesses are typically afforded little weight in the analysis of this private interest factor. *Genentech*, 566 F.3d at 1342. The Court is not persuaded by PNC's claims that Pittsburgh is more convenient for USAA's San Antonio witnesses than Marshall. (Dkt. No. 202 at 19:10–20:25). The Court finds that although the Western District may be more convenient for PNC's witnesses, this District is more convenient for USAA's witnesses. The Court therefore finds that the little weight to be given to the convenience of party witnesses is neutral.

economy. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-00118, 2019 WL 6344267, at *6 (E.D. Tex. Nov. 27, 2019); *see also In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010).

In its briefing, PNC, relying on the declaratory judgment action it filed in the Western District, argues that judicial economy favors transfer. (Dkt. No. 31 at 11–12). After the Court in the Western District found that USAA was the first to file (Dkt. No. 202 at 4:22–5:1), PNC now argues that this factor should not be weighed so heavily as to displace the other factors. (*Id.* at 30:13–31:17).

USAA argues that this factor "is of paramount importance given this Court's extensive familiarity with the subject matter of this case" from the *Wells Fargo*[7] case. (Dkt. No. 38 at 6). USAA argues that PNC's reliance on *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010) downplaying the significance of the overlapping cases is misplaced. (Dkt. No. 38 at 6). USAA argues that the overlapping cases in *Zimmer* were in their infancy. USAA argues that such is not the case here because the *Wells Fargo* case was tried to a jury verdict by this Court before the present case was filed. (*Id.* at 6–7).

The Court is persuaded that this factor weighs against transfer. As both PNC and USAA acknowledged, this Court gained familiarity with the asserted patents (or their family members) and the mobile deposit technology in the *Wells Fargo* case. This Court tried the *Wells Fargo* case to a jury verdict before USAA filed this case against PNC. Thus, the Federal Circuit's holding in *Zimmer* relating to overlapping cases is inapplicable here. In *Zimmer*, the Federal Circuit held that overlapping actions were given little weight because the cases were in "the infancy stages of litigation." *Zimmer*, 609 F.3d at 1382. Such is not the case here where the undersigned presided over all aspects of the *Wells Fargo* before this case was filed.

---

[7] Case No. 2:18-cv-00245 (E.D. Tex. June 7, 2018).

Notably, PNC recently appeared before this Court in support of its motion to compel the production of certain expert materials from the *Wells Fargo* case. In support of its motion to compel expert materials from the prior litigation, PNC repeatedly emphasized the substantive overlap between the two cases. (Dkt. No. 187 at 12:15–25 ("Judge, what we're dealing with is an overlap of technology in the two cases, I know Your Honor is well aware; we're dealing with an overlap of patents."); Dkt. No. 148 at 1 ("Moreover, the patents-in-suit here substantially overlap with the patents USAA asserted against Wells Fargo.")). The Court agrees that there is substantial overlap as to the technology and patents in this case and the *Wells Fargo* case. This overlap uniquely positions this Court to leverage its experience from the *Wells Fargo* case to handle this case more efficiently than if the case were heard elsewhere. PNC did not dispute this during oral argument. (Dkt. No. 202 at 30:13–19). The Court is not persuaded that the different legal theories or accused products PNC identified during oral argument override the admitted substantial overlap.[8] (*Id.* at 26:18–28:1). Accordingly, the Court finds this factor disfavors transfer.

### B. Public Interest Factors

**Administrative Difficulties Flowing from Court Congestion.** The first public interest factor concerns the speedy and efficient administration of justice.

PNC argues this factor is neutral, but acknowledges that "this District's time-to-trial statistics are faster than those of the W.D. Pa." (Dkt. No. 31 at 15). During oral argument, PNC noted that the Court in the Western District "made clear that she has a clear docket and could get these cases to trial on the same schedule that the Court has set." (Dkt. No. 202 at 5:11–13).

---

[8] PNC also raised the difference in claim construction disputes between this case and the *Wells Fargo* case. (Dkt. No. 202 at 28:2–29:1). As the Court recognized during oral argument, the Court is to conduct its venue analysis from the time the complaint was filed. (*Id.* at 29:2–30:6). Accordingly, the difference or overlap in claim construction disputes is irrelevant to the analysis.

7

In response, USAA noted that "the Western District of Pennsylvania has not been able to move trials along over the summer in the way that this Court has been able to do so" and has only "recently reopened for civil jury trials." (*Id.* at 44:18–45:14). USAA also argues that this factor weighs against transfer given the median time to trial in this District is 17.7 months compared to 31.9 months in the Western District. (Dkt. No. 38 at 14).

The Court is persuaded that this factor is neutral. Both parties acknowledge that this District is, on average, faster to trial than the Western District. Further, the Western District has only recently returned to conducting civil jury trials due to the pandemic. This Court, on the other hand, has tried 9 patent cases to a verdict since March 2021. However, given the Western District's willingness to try this case on the same schedule that this Court has set, the Court finds this factor is neutral.

**Local Interest in Having Localized Interests Decided at Home.** PNC argues that the Western District has a significant interest in this dispute because PNC is headquartered in Pittsburgh. (Dkt. No. 31 at 14). PNC argues that this District has no meaningful connection to this dispute as the facts put forth by USAA could apply to virtually any judicial district in the United States. (*Id.*). USAA responds that it is a Texas based company with significant operations and employees in this District, which includes the Plano CTO that develops USAA's embodying products. (Dkt. No. 38 at 15).

The Court finds that this factor is neutral. Although the Western District does have an interest in this case given PNC is headquartered in that district, USAA has a credible and material presence in this District. USAA employs 35 technical engineers who work in this District on the mobile deposit technology. (Dkt. No. 202 at 46:18–22). USAA maintains facilities in this District related to USAA's embodying products. (*Id.* at 44:8–15). The Court is unwilling to discount

8

USAA's CTO facility in Plano and its relevance to this case, as PNC suggests. Accordingly, the Court finds this factor is neutral given both districts have an interest in this case.

**Familiarity with Law and Conflicts of Law.** Both parties appear to agree that these factors are inapplicable or neutral.[9] The Court agrees.

## IV. CONCLUSION

One private interest factor weighs against transfer. All other factors are neutral. PNC has thus failed to establish that transfer is clearly more convenient. For the reasons stated herein and the specific facts of this particular case, the Court finds that PNC's Motion should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 29th day of September, 2021.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[9] USAA suggests that the overlap in patents with the *Wells Fargo* case factors into the third public interest factor. (Dkt. No. 38 at 15). The Court disagrees. That fact is appropriately weighed in the fourth private interest factor.