IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIV. A. NOS. 2:20-CV-00319-JRG (LEAD) 2:21-CV-00110-JRG |
| PNC BANK N.A., | § § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff United Services Automobile Association's ("USAA") Motion to Dismiss Defendant PNC Bank N.A.'s Counterclaims Seven and Eight (the "Motion to Dismiss"). (Dkt No. 116). Having considered the Motion to Dismiss and subsequent briefing, and for the reasons set forth herein, the Court finds that the Motion to Dismiss should be **DENIED**.

## I.  PROCEDURAL BACKGROUND

On June 7, 2021, Defendant PNC Bank N.A. ("PNC") filed its Amended Answer and Counterclaims to USAA's First Amended Complaint. (Dkt. No. 114). In its Counterclaims, PNC asserted several patents against USAA, two of which are relevant to the Motion to Dismiss: U.S. Patent No. 8,682,754 (the "'754 Patent) and U.S. Patent No. 8,380,623 (the "'623 Patent) (collectively, the "Patents-at-Issue"). (*Id.* ¶¶ 65–85) (PNC's Counterclaims Seven and Eight). Also on June 7, 2021, USAA filed the instant Motion to Dismiss under 35 U.S.C. § 101 arguing that PNC's Counterclaims Seven and Eight should be dismissed because the '754 Patent and '623 Patent claim patent ineligible subject matter.

## II.      THE PATENTS-AT-ISSUE

### A.      The '754 Patent

The '754 Patent is titled "Tracking Customer Spending and Income" and issued on March 25, 2014—before the Supreme Court's decision in *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014).  The '754 Patent describes "[v]arious embodiments [that] may be directed to products for displaying a customer's spending versus the customers income."  ('754 Patent at 1:59–60).  These embodiments are described and shown throughout the '754 Patent and generally describe a "user interface [that] may display multiple income and spending bar pairs simultaneously."  (*Id.* at 2:11–13).  For example, Figure 4 of the '754 Patent (depicted below) shows "one embodiment of a user interface 400 including bar sets 402, 404, 406, 408 showing historical spending and income information for the customer."  (*Id.* at 3:15–17).



*FIG. 4*

Claim 1 of the '754 Patent reads as follows[1]:

> A computer implemented method of tracking customer spending and income, the method comprising:
>> aggregating spending transactions by a customer during a first time period;

---

[1] PNC asserts that Claim 4 of the '754 Patent is representative of the asserted claims "because it captures the ordered combination required by the asserted claims that includes aggregating and displaying data over multiple time periods." (Dkt. No. 118 at 4).  The Court finds that dependent Claim 4 merely adds the same steps of independent Claim 1 over additional time periods.  Such a distinction is immaterial to the patent eligibility analysis of the claims of the '754 Patent.  *Content Extraction and Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

> estimating income to the customer during the first time period; and
> displaying a user interface to the customer, wherein the user interface comprises:
>> a first bar, wherein a dimension of the first bar is proportional to the estimated income to the customer during the first time period; and a second bar, wherein a dimension of the second bar is proportional to the aggregate spending transactions by the customer during the first time period, wherein the second bar is positioned within the first bar, and wherein the dimension of the first bar is parallel to the dimension of the second bar.

('754 Patent at Claim 1).

The client used for displaying the user interface "may include any suitably network-enabled devices such as, for example, personal computers (PC's), automated teller machines (ATM's), palmtop computers, mobile phones, etc." ('754 Patent at 4:37–40). The client may also use "a suitable browser software application including, for example, MICROSOFT INTERNET EXPLORER, MICROSOFT INTERNET EXPLORER MOBILE, MOZILLA FIREFOX, PALM BLAZER, etc.) for enabling the customer to display, enter and interact with information exchanged via the communication network 20." (*Id.* at 4:44–48).

## B.    The '623 Patent

The '623 Patent is titled "Systems and Methods for Enabling Financial Savings" and issued on February 19, 2013—also before the Supreme Court's *Alice* decision. The '623 Patent contains thirty-two pages of diagrams and screenshots depicting the interfaces embodied in the invention. ('623 Patent at 1:66–2:14). The '623 Patent describes the functionality of these embodiments:

> Various embodiments of the present invention are directed to systems and methods that provide electronic banking tools and interfaces. The systems and methods, in various embodiments, allow users to change payment dates of bills by way of graphical operation (e.g., by "dragging" and "dropping" a scheduled payment). Various embodiments alert a user when an available account balance drops below a certain threshold. Various embodiments allow for real time population of payment items on a calendar and allow for daily, weekly, monthly and yearly calendar views of past and future account activity.

('623 Patent at 2:18–27).  Both USAA and PNC cite to Claim 1 in their briefing (Dkt. No. 116 at

18; Dkt. No. 118 at 17):

> A computer-assisted method for facilitating financial savings, the method comprising:
>> accepting, using a processor, a funds transfer request by a user of an amount of funds between a funding account and at least one receiving account, wherein the funding account and the receiving account are separate accounts;
>> accepting, from the user, using the processor, a designation of an intended purpose of use of the amount of funds and a date of intended use of the amount of funds;
>> transferring the amount of funds from the funding account to the at least one receiving account;
>> generating, using the processor, for display on a graphical banking interface, a graphical representation of the designation of the intended purpose of use of the amount of funds; and
>> transferring the amount of funds from the at least one receiving account to the funding account on the date of intended use.

('623 Patent at Claim 1).  This claim, *inter alia*, was rejected during prosecution as directed to

ineligible subject matter under § 101.  (Dkt. No. 116-2 at 5).  The Examiner stated:

> In the case of claim 1 of the instant application, the entire process except the nominal step of generating a graphical banking interface is performed by a human entity.  Generating a graphical banking interface including a graphical representation of the intended purpose of use of the amount of funds is treated as a nominal or tangibly related (and not central to the claimed invention) to the performance of the claimed invention. Such nominal step(s) do not render the claim 101 compliant even if implemented on a machine. All other steps (accepting a funds transfer request and a designation of an intended purpose, and transferring funds) are performed manually and or conceived in human mind alone. Therefore, the claim is treated as an abstract idea and therefore non-statutory under 35 USC 101.

(*Id.*).  In response, PNC amended claim 1 to add "using a processor" to the "accepting" and

"generating" steps.  (*Id.* at 8, 13).  The claims were then allowed.  (*Id.* at 16).

## III.   LEGAL STANDARD

To evaluate the Motion to Dismiss, the Court may consider the complaint, the documents

attached to the complaint, and documents "attached to the motion to dismiss that are central to the

claim and referenced by the complaint."  *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594

F.3d 383, 387 (5th Cir. 2010).  The Court will grant a motion to dismiss for lack of patent eligibility under 35 U.S.C. § 101 only where "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law."  *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019).

The Court determines whether patent claims cover ineligible subject matter using a two-step analytical framework set out by the Supreme Court of the United States in *Alice*.  573 U.S. 208.  At the first step, the Court evaluates whether the claims are directed to ineligible subject matter, such as an abstract idea.  *Id*. at 217.  To do so, the Court looks to the claims' "character as a whole."  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016).  Although all claims embody abstract ideas and other ineligible subject matter at some level, the Court's task is to examine "whether the claims [] focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery."  *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016).

At *Alice* step two, if the claims are directed to ineligible subject matter, the Court then determines whether the claims contain an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself."  *Alice*, 573 U.S. at 217–18 (internal citations and quotes omitted).  "[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces," *BASCOM Glob. Internet Svcs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349–50 (Fed. Cir. 2016), but must be more than mere "'well-understood, routine, conventional activit[ies].'"  *Alice*, 573 U.S. at 225 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)).  "While the ultimate

5

determination of eligibility under § 101 is a question of law, like many legal questions, there can

be subsidiary fact questions which must be resolved en route to the ultimate legal determination."

*Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1127–1128 (Fed. Cir. 2018).

"The question of whether a claim element or combination of elements is well-understood, routine

and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer v. HP

Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

## IV.   DISCUSSION

### A.   The '754 Patent

#### 1.   The Claims of the '754 Patent are Directed to an Abstract Idea

USAA argues that the '754 Patent "is directed to the abstract idea of collecting and

displaying spending and income data, rather than any technical improvement."  (Dkt. No. 116 at

7).  USAA argues that "[c]omputers (and people using pencil and paper or calculators) have long

been capable of comparing income and spending and making bar graphs."  (*Id.*).  USAA claims

that the '754 Patent "does not contend that the practice of comparing spending and income or of

creating bar charts is new, but rather merely that using the computer to create the claimed bar chart

is "convenient" for the user."  (*Id.* at 9).  USAA traverses post-*Alice* case law in arguing that claims

related to collecting data, analyzing it, and displaying the results and budgeting and financial

concepts have been found to be abstract.  (*Id.* at 8).

PNC responds that the '754 Patent "claims the technological solution of a user interface

for banking applications that overcomes the shortcomings of the prior art with a specific, compact

display of income and spending data aggregated and grouped from many transactions and

presented in a format suitable for devices such as mobile phones and ATMs." (Dkt. No. 118 at 5).

PNC explains that the invention disclosed in the '754 Patent "is not an abstract idea, but a

technological solution to the shortcomings of prior art user interfaces for online banking

6

applications." (*Id.*).  PNC primarily points to the Federal Circuit's decision in *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018) as support.  PNC argues that, like *Core Wireless*, the '754 Patent is directed to "an improvement in the functioning of online banking computer systems, particularly those where the customer is using a small screen and/or limited input means such as a mobile device or an ATM." (Dkt. No. 118 at 7).

USAA responds that *Core Wireless* confirms that the '754 Patent claims are patent ineligible.  (Dkt. No. 119 at 2).  USAA argues that the claims in *Core Wireless* were directed to improving the functioning of computers, but the '754 Patent "does not purport to change how users navigate an online banking system or how any aspect of the computer system functions." (*Id.*). USAA argues that *Core Wireless* focused on the specific requirements of the claim limitation to limit the additional information displayed and therefore improve the functioning of the device. (*Id.* at 3–4).  Rather, USAA argues, the '754 Patent merely requires displaying information in a graph "displayed on a conventional screen and interface, without limits on what applications can run at the same time." (*Id.* at 4).

The Court agrees with USAA.  In *Core Wireless*, the patent described the issue with prior art user interfaces and the difficulty with navigating such user interfaces on small screens.  *Core Wireless*, 800 F.3d at 1363 ("[The patent] teaches that the prior art interfaces had many deficits relating to the efficient functioning of the computer, requiring a user 'to scroll around and switch views many times to find the right data/functionality.'").  The '754 Patent and its claims do not purport to solve any technical problem associated with prior art products.  Instead, the '754 Patent seeks to "provide a clear and convenient way to convey to a customer the ***relationship*** between their income and their spending." '754 Patent at 1:25–27 (emphasis added).  Put differently, the '754 Patent seeks to show users the connection between their income and spending, which was not

done by prior art products.  Plotting the relationship between income and spending as disclosed in the '754 Patent is not a technical solution to improve a user interface on smaller, resource intensive devices as in *Core Wireless*.[2]  800 F.3d at 1363.  Rather, such is an abstract idea directed towards showing users how much they spend as compared to how much they earn or are expected to earn.

The Court is not persuaded by PNC that the '754 Patent "claims the technological solution of a user interface for banking applications that overcomes the shortcomings of the prior art with a specific, compact display of income and spending data aggregated and grouped from many transactions and presented in a format suitable for devices such as mobile phones and ATMs." (Dkt. No. 118 at 5).  Although it is true that the '754 Patent mentions mobile phones and ATMs, the patent and its claims lack any disclosure or limitation that indicate a technical improvement of these smaller devices.  Instead, the '754 Patent merely discloses rendering a user interface that shows the relationship between spending and income on any client device.[3]  This is an abstract idea directed to budgeting of personal finances.  Accordingly, the Court finds the '754 Patent is directed to the abstract idea of collecting and displaying income data.

### 2.    There are Disputed Issues of Fact as to the Claims of the '754 Patent and any Inventive Concept

USAA argues that the claims of the '754 Patent—collecting spending transactions, estimating income, comparing the two, and displaying information about them—was indisputably conventional.  (Dkt. No. 116 at 12).  USAA argues that the patent recognizes that all of these steps

---

[2] PNC also contends that cases in this District relying on *Core Wireless* support its position.  (Dkt. No. 118 at 7) (citing *CXT Sys., Inc. v. Academy, Ltd.*, Case No. 2:18-cv-171, 2019 WL 1237148 (E.D. Tex. Mar. 12, 2019); *IDB Ventures, LLC v. Charlotte Russe Holdings, Inc.*, Case No. 2:17-cv-660, 2018 WL 5634231 (E.D. Tex. Oct. 31, 2018)).  Like *Core Wireless*, the claims at issue in those cases contained limitations directed at a solving a technical problem associated with data extraction, sorting, and collection rather than simply showing the relationship between two discrete sets of data (e.g., income and spending).

[3] USAA argues that "the claims broadly encompass all sizes of devices: *any* 'user interface' on *any* 'computer,' as long as it 'comprises' (includes) the claimed bar graph."  (Dkt. No. 119 at 1).  The fact that an invention can operate on any type of device does not show that the patent is directed to an abstract idea.  A user interface that provides readability across all devices could be a technical improvement.  However, the Court finds no disclosure that the '754 Patent is meant to improve interoperability in user interfaces amongst various devices.

were conventional except for the generating of the bar graph, which USAA argues is also a conventional process that can be done manually.  (*Id.* at 13).

PNC responds that, at a minimum, there is a factual question as to what was well-known, routine, or conventional to a person of ordinary skill in the art at the time.  (Dkt. No. 118 at 11). PNC argues that the inventive concept disclosed in the claims of the '754 Patent "is a highly specific method for aggregating and displaying banking information to improve an online banking interface." (*Id.*).  PNC acknowledges that the '754 Patent lists certain actions that were previously possible.  (*Id.*).  However, PNC argues "that nothing cited by USAA suggests that it was known, let alone conventional, to aggregate spending and estimate income over multiple time periods using an online banking interface, or to display that information in the specific, compact way required by the claims . . . that allows the information to be provided, for example, on a mobile phone." (*Id.*).  PNC contends that the claims require "aggregating income and spending data over discrete time periods and displaying that information in a novel graphical user interface." (*Id.* at 12).

The Court finds that there are factual disputes related to whether various elements of the asserted claims, alone or in combination, were conventional and well-understood at the time the patent was filed.   These are factual questions directly "underlying [] the § 101 inquiry." *Berkheimer*, 881 F.3d at 1368–69.  At the motion to dismiss stage of the case, these types of disputes must be presumed to favor the non-movant (i.e., PNC).  *BASCOM*, 827 F.3d at 1347, 1350.   Dismissal under Fed. R. Civ. P. 12 is therefore not appropriate for the '754 Patent. Accordingly, USAA's Motion to Dismiss is **DENIED** with respect to PNC's Counterclaim Eight.

### B.      The '623 Patent

#### 1.      The Claims of the '623 Patent are Directed to an Abstract Idea

USAA argues that the '623 Patent is directed to the abstract idea of displaying information entered by the user about a funds transfer.  (Dkt. No. 116 at 18).  USAA argues that the '623 Patent is directed to displaying user-entered information (e.g., date and intended use of funds) about a transfer of funds.  (*Id.* at 18–19).  USAA argues that courts have recognized that basic economic practices and displaying user-entered information is abstract.  (*Id.* at 19).  USAA also points to PNC's infringement contentions and argues that they further support a finding that the '623 Patent is directed to an abstract idea.  USAA argues that the '623 Patent does nothing more than introduce a computer into the human process of exchanging a check.  (*Id.* at 21).  USAA points to the prosecution history where the claims were initially rejected under § 101, but then were allowed once the patentee added that certain steps were performed by a "processor."  (*Id.*).  USAA argues that this is insufficient to save the claims under *Alice*.  (*Id.* at 21–22).

PNC responds that the '623 Patent is directed to a "novel feature that allows users to tag amounts of money within an account with information about their future intended use."  (Dkt. No. 118 at 18).  PNC argues that this feature "facilitates new types of transactions such as the claimed method of sequestering designated amounts of money in a separate or 'reserve' account for future use."  (*Id.*).  PNC argues that the invention of the '623 Patent is not a "fundamental economic practice" as USAA alleges.  (*Id.* at 19).  PNC responds that a "novel computerized method does not become abstract simply because it includes money transfers that may, viewed in isolation, be fundamental economic practices."  (*Id.*).  PNC argues that at a minimum whether this is a fundamental economic practice is a factual dispute that should not be resolved at the motion to dismiss stage.  (*Id.*).

The Court agrees with USAA that the claims of the '623 Patent are directed to the abstract idea of displaying information entered by the user about funds transfers.  The Court finds that the claims of the '623 Patent are directed more broadly than the "novel feature" described by PNC. For example, the claims make no mention of the "reserve" account identified by PNC in its briefing.  *Compare* '623 Patent at Claim 1 *with* Dkt. No. 118 at 17–18.  Further, the Court finds that the *Finjan* and *Data Engine* cases cited by PNC are inapplicable.  (Dkt. No. 118 at 18–19) (citing *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018); *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018)).  Specifically, *Finjan* contrasted the traditional "code-matching" virus detection systems of the prior art (which simply looked for the presence of known viruses) to the "behavior-based" approach (which analyzed the code to determine if it performed dangerous operations) disclosed in the patent at issue.  *Finjan*, 879 F.3d at 1304.   In finding the claims satisfied *Alice* step one, the Federal Circuit reasoned that the security profile made the use of the behavior-based information possible.  *Id.* at 1305.  Similarly, in *Data Engine*, the Federal Circuit held that the patent at issue satisfied *Alice* step one by disclosing an improvement to three-dimensional spreadsheets, which were complex and difficult to navigate. 906 F.3d at 1008.  The Federal Circuit concluded that the idea was not abstract because "[t]he claim recites specific steps detailing the method of navigating through spreadsheet pages within a three-dimensional spreadsheet environment using notebook tabs."  *Id.*  Both *Finjan* and *Data Engine* stand for the proposition that technical improvements are not abstract ideas.[4]  PNC again fails to identify anything in the '623 Patent that is a technical improvement of the abstract idea of

---

[4] PNC again cites decisions from this Court that it contends support its position.  (Dkt. No. 118 at 21–23).  These cases involve USAA's patents that were previously subject to patent eligibility challenges before this Court.  As the Court explained in those opinions, those patents involved new means of check depositing that improved on the prior art. *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, Case No. 2:18- cv-366, Dkt. No. 182, at 13-16 (E.D. Tex. Dec. 20, 2019), *report and recommendation adopted*, Dkt. No. 235 (E.D. Tex. Jan. 6, 2020).  PNC has failed to show how the claimed method of the '623 Patent is a technical solution that improves on the prior art.

labeling transferred funds and displaying that information.  Accordingly, the Court finds the '623 Patent is directed to an abstract idea.[5]

### 2.    There are Disputed Issues of Fact as to the Claims of the '623 Patent and any Inventive Concept

USAA contends that there is no "inventive concept" that transforms the claims to a patent-eligible invention.  (Dkt. No. 116 at 22).  USAA argues that the first, third, and fifth steps of the asserted claims merely relate to accepting a request to transfer funds and transferring those funds, and the patent recognizes that such was well known.  (*Id.* at 23).  USAA also argues that the remaining steps involve accepting manually entered information about the transfer, which USAA argues is a process that could be performed by humans.  (*Id.*).

PNC responds that the '623 Patent overcame the difficulty for customers to maintain stable account balances where multiple inflows and outflows occur automatically.  (Dkt. No. 118 at 27).  PNC argues that the '623 Patent overcomes these problems by using a computerized process to tag amounts of money within the online account.  (*Id.*).  PNC argues that this is an unconventional solution that is specific to online banking.  (*Id.*).  PNC points out that prior art systems allowed scheduling of transfers, "but had no mechanism for tagging money within an account with information about an intended purpose."  (*Id.* at 28).

Like the '754 Patent, the Court finds that there are factual disputes related to whether various elements of the asserted claims, alone or in combination, were conventional and well-understood at the time the patent was filed.  These are factual questions directly "underlying [] the § 101 inquiry." *Berkheimer*, 881 F.3d at 1368–69.  At the motion to dismiss stage of the case, these types of disputes must be presumed to favor the non-movant (i.e., PNC).  *BASCOM*,

---

[5] The Court does not find USAA's arguments based on PNC's infringement contentions and the pre-*Alice* prosecution history of the '623 Patent relevant to this analysis.  The Court's analysis properly focuses on the claims of the '623 Patent and applicable case law.

827 F.3d at 1347, 1350.  Dismissal under Fed. R. Civ. P. 12 is therefore not appropriate for the '754 Patent.  Accordingly, USAA's Motion to Dismiss is **DENIED** with respect to PNC's Seventh Counterclaim.

## V.    CONCLUSION

For the reasons set forth above, the Court finds the '754 Patent and '623 Patent are each directed to an abstract idea under *Alice* step one.  However, as to both patents, there are factual underpinnings with respect to *Alice* step two, which are improper for the Court to resolve at the pleadings stage.  Accordingly, USAA's Motion to Dismiss is **DENIED**.

**So ORDERED and SIGNED this 18th day of November, 2021.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE