# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PNC BANK, N.A.,<br><br>　　　　Defendant | Civil Action No.: 2:20-cv-00319-JRG (LEAD CASE)<br><br>Civil Action No: 2:21-cv-00110-JRG<br><br>▇▇▇▇▇▇▇▇▇▇▇▇ |

## DEFENDANT'S OPPOSED MOTION TO STAY PENDING *INTER PARTES* REVIEW

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1
II. FACTUAL BACKGROUND ...............................................................................................1
    A. USAA Asserts Six Patents ...............................................................................................1
    B. USAA's Delay in Filing Its Case Against PNC................................................................2
    C. The PTAB Has Instituted Three IPRs on the USAA Patents ...........................................2
    D. The PTAB Has Instituted Two IPRs on the PNC Patents ................................................3
    E. Much Time Intensive Work Remains to Be Done............................................................3
III. LEGAL STANDARD ..........................................................................................................4
IV. ARGUMENT .......................................................................................................................5
    A. A Stay Will Not Cause USAA Any Undue Prejudice .....................................................5
    B. A Stay Will Simplify the Issues........................................................................................7
    C. The State of the Proceedings Do Not Justify the Denial of a Stay ...................................8
V. CONCLUSION ...................................................................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

## **CASES**

*AR Design Innovations LLC v. Ashley Furniture Inds., Inc.*,
   No. 4:20-cv-00392-SDJ, 2021 WL 6496714 (E.D. Tex. Jan. 11, 2021) ....................... 6

*CyWee Grp. Ltd. v. Samsung Elecs. Co. Ltd.*,
   No. 2:17-cv-00140-WCB, 2019 WL 11023976 (E.D. Tex. Feb. 14, 2019) .............. 5, 9

*Emed Techs. Corp. v. Repro-med Sys., Inc.*,
   No. 2:15-CV-1167-JRG-RSP, 2016 WL 2758112 (E.D. Tex. May 12, 2016) ............. 7

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
   No. 2:15-cv-11, 2016 WL 1162162 (E.D. Tex. Mar. 23, 2016) ................................. 10

*Image Proc. Techs., LLC. v. Samsung Elecs. Co., Ltd.*,
   No. 2:16-cv-00505-JRG, 2017 WL 7051628 (E.D. Tex. Oct. 25, 2017) ................ 7, 10

*Landis v. North Am. Co.*,
   299 U.S. 248 (1936) ................................................................................................... 4

*Motion Games, LLC v. Nintendo Co.*,
   No. 6:12-cv-878, 2015 WL 13404313 (E.D. Tex. June 8, 2015) .............................. 10

*NFC Tech. LLC v. HTC America, Inc.*,
   No. 2:13-cv-01058-WCV 2015, WL 1069111 (E.D. Tex. Mar. 11, 2015) ............... 7, 8

*Papst Licensing GmbH & Co., KG v. Apple, Inc.*,
   No. 6:15-cv-01095-RWS, 2017 WL 11638426 (E.D. Tex. June 16, 2017) ................. 7

*Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys., Inc.*,
   No. 2:19-cv-00225-JRG, 2021 WL 121154 (E.D. Tex. Jan. 13, 2021) ..................... 4, 8

*Realtime Data, LLC v. Hewlett Packard Enter. Co.*,
   No. 6:16-cv-86, 2017 WL 3712916 (E.D. Tex. Feb. 3, 2017) ..................................... 8

*Smartflash LLC v. Apple Inc.*,
   621 F. App'x 995 (Fed. Cir. 2015) .............................................................................. 9

*Stragent LLC v. BMW of N. Am, LLC*,
   No. 6:16-cv-446, 2017 WL 3709083 (E.D. Tex. July 11, 2017) ................................. 7

*United States v. Rainey*,
   757 F.3d 234 (5th Cir. 2014) ..................................................................................... 4

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
   759 F.3d 1307 (Fed. Cir. 2014) .................................................................................. 6

*ZeniMax Media Inc. v. Samsung Elecs. Co., Ltd.*, No. 3:17-cv-01288-SAF,
    2017 WL 4805524 (N.D. Tex. Oct. 25, 2017) ..................................................................

## I. INTRODUCTION

Five of the ten patents asserted in this case are now subject to instituted *inter partes* review ("IPR") proceedings in the United States Patent and Trademark office—**half** of the patents asserted by each of the parties (three of the six USAA patents and two of the four PNC patents). Staying the case pending the resolution of these IPRs will not unduly or disproportionately prejudice USAA. Not only do both parties have patents subject to instituted IPRs, but USAA seeks only damages for a specific period that *ended in July 2021.* Moreover, a stay can still save the parties and the Court substantial resources. For example, the Court has yet to rule on the parties' twelve motions for summary judgement and thirteen motions to strike or preclude testimony, and staying the case will avoid the need for a retrial if there are claim amendments or invalidity determinations that undermine the verdict.

PNC thus respectfully requests that the Court stay this litigation until after the PTAB adjudicates the parties' IPRs.

## II. FACTUAL BACKGROUND

### A. USAA Asserts Six Patents

USAA asserts six of its mobile check deposit patents against a single accused product—a no longer used version of the PNC Mobile app. The asserted claims generally relate to the depositing of checks through the use of a mobile device or capturing an image of the check on a mobile device after determining that the check image meets certain monitoring criteria.

In this case, USAA seeks no damages or other relief with respect to the current PNC mobile app, called Version 4.20.1. That is because, after USAA served its infringement contentions, PNC quickly removed features of its mobile app that USAA claimed were infringing the asserted patents. By July 27, 2021, PNC required all customers who had not already updated to version 4.20.1 to update before using the app. Ex. 1 at 4-6.

Because in this case, USAA accuses only the versions of PNC's mobile app prior to

1

version 4.20.1 of infringing the USAA patents, USAA seeks only damages for a specific time period that *ended in July 2021.* There is no need to rush to trial.

### B.  USAA's Delay in Filing Its Case Against PNC

USAA delayed *years* before filing its lawsuit against PNC. In May 2011, over three years before any of the USAA patents issued, PNC began offering mobile check deposit and has done so continuously since that time. PNC began offering autocapture in 2016 and ceased doing so with Version 4.20.1 in July 2021. Ex. 2 at 63; Ex. 3 at 5.

The asserted '779 patent issued in April 2014 and the '571 patent issued in March 2015, but USAA waited *over four years* to assert these patents against PNC. Dkt. No. 12 (USAA's First Amended Complaint filed December 2020 adding the '779 and '571 patents to the case). And although the '605 patent and '681 patents issued in July 2018, USAA did not file its lawsuit against PNC on these patents until March 2021. *See* Case 2:21-cv-00110, Dkt. No. 1.

### C.  The PTAB Has Instituted Three IPRs on the USAA Patents

In July 2021, well within the one-year bar, PNC began filing IPR petitions challenging USAA's asserted patents.[1] The PTAB has instituted IPR on three of USAA's asserted patents: both autocapture patents—the '571 and '779 patents—and the '559 patent.[2]

PNC's instituted IPRs—which could *eliminate three of the six USAA patents*—are strong and there is a high likelihood that most, if not all, of the challenged claims will be invalidated. For example, in the Institution Decision for the '559, the Board "agree[d]" with PNC that PNC's primary reference—Garcia—"*presents a strong prior art reference*."[3] Ex. 6

---

[1] PNC has also filed two IPRs on the '605 and '681 patents. Decisions on PNC's petitions for the '605 and '681 patents are due no later than March 13, 2022. If instituted, the final written decisions on these IPRs will be due no later than March 13, 2023. Therefore, no later than March 13, 2023, *five of the six* asserted USAA patents—and *seven of the ten total asserted patents*—may be invalidated.

[2] On January 20, 2022, the Board denied institution of PNC's two '432 patent petitions. On January 24, 2022, the Board denied institution of PNC's additional '559 patent petition.

[3] Emphasis added throughout unless otherwise noted.

at 15.  And in weighing the merits of the petition in favor of PNC, the Board expressly dismissed USAA's unsupported allegation that PNC's petition was "repetitive of past failed challenges."  *Id*.  In the Institution Decision for the '571 patent, the Board again "disagreed" with USAA's characterizations of the petition as weak.  Instead, the Board emphasized that "[a]s discussed above, we do not find Petitioner's arguments weak.  To the contrary, based on the preliminary record to date, ***Petitioner has made a strong showing***."  Ex. 7 at 29.  Similarly, in the Institution Decision for the '779 patent, the Board found that based on the preliminary record the "merits of Petitioner's case ***are particularly strong as to all challenged claims***."  Ex. 9 at 29.  The final written decisions on these IPRs are due by January 24, 2023.

### D. The PTAB Has Instituted Two IPRs on the PNC Patents

Rather than litigate invalidity only in this Court, USAA also made the strategic decision to pursue invalidity of two of the four asserted PNC patents through IPR.  The Board has now instituted IPRs on those patents.  On January 10, 2022, the Board instituted IPR on the '786 patent.  On January 14, 2022, the Board instituted IPR on the '788 patent.  The final written decisions for these two IPRs are expected no later than January 14, 2023.

### E. Much Time Intensive Work Remains to Be Done

Although trial is set for April 18, 2022, significant work remains to be done.  As of the date of this filing, the parties have not yet filed a joint pretrial order or motions in *limine*.  The parties are still likely to spend thousands of hours preparing outlines, demonstratives, and witnesses for trial.  The trial itself will also be burdensome on the Court, parties, and members of the public that would participate in the jury selection and trial.  Indeed, the trial itself is expected to last at least five days and USAA has identified 45 trial witnesses on its witness list.  There will also likely be significant post-trial motions practice.

Continuing this case will also be particularly burdensome on the Court given the number of pending motions.  Currently, there are ***twenty-five pending pretrial motions***: twelve

3

pending motions for summary judgment (or partial summary judgment) and thirteen pending motions to strike or preclude expert testimony.

Understanding the resource intensity of litigation—even post institution—USAA itself has argued it would be wasteful to proceed in two fora at the same time on invalidity. For example, in opposing PNC's petitions, USAA argued that "***the additional investment of time and resources by the District Court and the parties occurring <u>after institution</u> but <u>before [the Board's] final decision</u>***" weighs in favor of denying institution. *See, e.g.*, Ex. 8 at 12 (internal quotation omitted). By the same logic, since there has now been institution, those considerations weigh in favor of a stay of the litigation while the IPRs proceed.

### III.  LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936); *see also United States v. Rainey*, 757 F.3d 234, 241 (5th Cir. 2014).

Courts in this Circuit consider three factors in determining whether to grant a stay: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys., Inc.*, No. 2:19-cv-00225-JRG, 2021 WL 121154, at *1 (E.D. Tex. Jan. 13, 2021) (Gilstrap, J.). These factors often weigh in favor of a stay when some of the asserted patents/claims are subject to instituted IPRs. *See, e.g.*, *CyWee Grp. Ltd. v. Samsung Elecs. Co. Ltd.*, No. 2:17-cv-00140-WCB, 2019 WL 11023976, at *3 (E.D. Tex. Feb. 14, 2019) (granting stay when PTAB instituted proceedings on 6 out of 11 asserted claims).

4

## IV. ARGUMENT

For the following reasons, a stay is warranted pending final written decisions in the instituted IPRs.

### A. A Stay Will Not Cause USAA Any Undue Prejudice

A stay of proceedings will not cause undue prejudice to USAA for four reasons. ***First***, a stay pending IPR will not create a tactical disadvantage for USAA. Rather, because the PTAB has already instituted proceedings concerning ***both*** sides' patents (two PNC patents and three USAA patents), the instituted IPR proceedings stand to equally affect both parties. PNC, like USAA, may have at least half of its asserted patents invalidated. And the vindication of PNC's valid patent rights will be equally delayed as the vindication of USAA's valid patent rights. A stay of proceedings would thus give both parties an opportunity to resolve invalidity issues critical to their respective patent infringement claims.

***Second***, USAA's years of delay in bringing this suit cuts sharply against any claim of unfair prejudice arising from a stay. *See CyWee Grp.*, 2019 WL 11023976, at *4 ("Further undermining CyWee's suggestion as to the urgency of obtaining judicial relief is the fact that CyWee delayed for more than three years after the issuance of the '438 and '978 patents before bringing suit against Samsung."). The autocapture patents issued years ago— the '779 patent issued in April 2014 and the '571 patent issued in March 2015 (both patents are now subject to instituted IPRs). Although PNC began offering its customers autocapture in April 2016, USAA waited ***over four years*** to file suit even though ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 4 at 37:19-38:8. Similarly, the '605 and '681 patents issued in July 2018, but USAA did not file suit against PNC more than ***two years*** after these patents issued.

USAA's delay is confirmed by its ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 4 at 76-

:24-77:23; Ex. 5. However, USAA never ▮▮▮▮▮▮▮▮▮ and did not attempt to place PNC on notice of infringement by any other means. *See* Ex. 5. And in 2018, USAA demonstrated that it had the ability to bring suit when it commenced litigation against Wells Fargo. Despite all this, USAA waited until the end of 2020 to assert any of its patents against PNC.

Courts routinely hold that waiting years to bring suit, as USAA has done here, constitutes undue delay and precludes undue prejudice. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014) ("We also note that VA, for some unexplained reason, waited nearly a year after the '413 patent issued before it filed suit against Defendants. These facts weigh against VA's claims that it will be unduly prejudiced by a stay."); *ZeniMax Media Inc. v. Samsung Elecs. Co., Ltd.*, No. 3:17-cv-01288-SAF, 2017 WL 4805524, at *5 (N.D. Tex. Oct. 25, 2017) (finding no prejudice where plaintiff "has already delayed any relief by waiting so long to sue [Defendant], and it offers no reason why an award of damages would not adequately compensate it for any losses it ultimately proves in its case.").

***Third***, a stay will not cause undue prejudice because USAA seeks only monetary damages, and only through July 2021 because PNC no longer offers the accused features. *See AR Design Innovations LLC v. Ashley Furniture Inds., Inc.*, No. 4:20-cv-00392-SDJ, 2021 WL 6496714, at *2 (E.D. Tex. Jan. 11, 2021) ("When a patentee seeks exclusively monetary damages, mere delay in collecting those damages does not constitute undue prejudice."). Thus, "[a] stay will not diminish the monetary damages to which [the plaintiff] will be entitled if it succeeds in its infringement suit." *VirtualAgility Inc.*, 759 F.3d at 1318. Rather, a stay would only delay the collection of any damages, and mere delay is not enough to create unfair prejudice. *See Stragent LLC v. BMW of N. Am, LLC*, No. 6:16-cv-446, 2017 WL 3709083, at *2 (E.D. Tex. July 11, 2017) ("[M]ere delay in collecting those damages does not constitute undue prejudice.") (quotation and citation omitted).

6

*Fourth*, the timing of PNC's motion does not create unfair prejudice.  Unlike USAA, PNC did not delay in raising issues for this Court to adjudicate.  PNC filed its petitions well within the one-year bar and filed the present motion to stay only two weeks after the PTAB instituted proceedings.  *See Papst Licensing GmbH & Co., KG v. Apple, Inc.*, No. 6:15-cv-01095-RWS, 2017 WL 11638426, at *4 (E.D. Tex. June 16, 2017) ("That [defendant] did not delay in seeking IPR or a stay weighs in favor of granting a stay."); *Emed Techs. Corp. v. Repro-med Sys., Inc.*, No. 2:15-CV-1167-JRG-RSP, 2016 WL 2758112, at *2 (E.D. Tex. May 12, 2016) ("This Court places substantial weight on the parties' diligence when deciding whether to grant a stay.").

### B. A Stay Will Simplify the Issues

The IPR proceedings could drastically reduce or simplify the issues that the Court and the parties need to litigate.  Currently, the PTAB has instituted IPR on five of the ten asserted patents.  Courts in this district regularly grant stays when some—but not all—asserted patents or claims are before the PTAB.  *Image Proc. Techs., LLC. v. Samsung Elecs. Co., Ltd*., No. 2:16-cv-00505-JRG, 2017 WL 7051628, at *1 (E.D. Tex. Oct. 25, 2017) (Gilstrap, J.) (granting stay when IPR was instituted on 3 out of 4 asserted claims); *NFC Tech. LLC v. HTC America, Inc*., No. 2:13-cv-01058-WCB, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015) (granting stay when PTAB instituted proceedings on only 2 out of 3 petitions).

The instituted proceedings before the PTAB could eliminate up to half of the patents in this case.[4]  Importantly, the PTAB instituted IPR on both autocapture patents, which raise distinct issues about infringement and validity, and which USAA's damages expert says together account for ▇ of USAA's damages.  Ex. 10 at ¶ 518.  The IPRs on these two patents,

---

[4] Institution decisions for PNC's petitions challenging USAA's '605 and '681 patents are expected by March 13, 2022.  If those petitions are instituted as well, five out of the six patents asserted by USAA in this case would be the subject of an instituted IPR before the current trial date.

7

alone, if successful, could eliminate entirely the autocapture aspect of the case and reduce by ▇▇▇▇▇ damages USAA is seeking. It does not make sense for the parties and the Court to expend significant resources and time litigating patents and claims that are likely to be found invalid. *Realtime Data, LLC v. Hewlett Packard Enter. Co.*, Case No. 6:16-cv-86, 2017 WL 3712916, at *4 (E.D. Tex. Feb. 3, 2017) ("[A]cknowledg[ing] that IPR has not been instituted with respect to the '728 and '506 Patents, and thus whether there will be simplification of the issues with respect to these patents is more speculative . . . [but] looking at the other side of the coin, the fact that the PTAB has already instituted review of five of the seven Asserted Patents makes it highly likely that there will be at least some simplification of the issues in this case overall."); *NFC Tech.*, 2015 WL 1069111 at *7 ("In any event, even if the PTAB restricts its review to the claims of the '551 patent and the initially asserted claims of the '664 patent, any disposition by the PTAB is likely to simplify the proceedings before this Court, at the very least with respect to the '551 patent.").

During the IPR proceedings, the parties may make arguments that could narrow the issues in the case. For example, to try to overcome the prior art at issue in the IPRs, USAA is likely to make arguments about the scope of the asserted claims. This will change the infringement and validity issues in the present litigation. *Ramot at Tel Aviv Univ.*, 2021 WL 121154, at *2 (Gilstrap, J.) ("When claims are rejected in an *ex parte* reexamination proceeding, the patent owner can narrow, cancel, or submit new claims . . . [the asserted claims] will not likely stay as they were when this suit was filed. If the case were to proceed to trial on the current claims, there is a serious risk of wasted resources as to the parties and the Court."). Therefore, even if some of the challenged claims ultimately survive the IPRs, a stay is far more efficient than continuing to litigate at this stage.

    **C.**    **The State of the Proceedings Do Not Justify the Denial of a Stay**

Significant work remains in this case. Trial is set for April 18, 2022, and the parties have yet to file certain pre-trial motions, prepare for trial, hold the trial itself, and file post-trial motions. The Court also faces the burdensome task of ruling on the parties' currently pending twelve motions for summary judgment (or partial summary judgment) and thirteen motions to strike or preclude expert testimony. In addition to the pending motions, the Court will have to expend time on upcoming motions *in limine* as well as trial and post-trial briefing on patents that are likely to be invalidated. Expending such resources now is imprudent. As the Federal Circuit has recognized, even when trial is only months away, "the most burdensome task is yet to come." *Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1005 (Fed. Cir. 2015); *see also CyWee Grp.*, 2019 WL 11023976, at *6 ("[T]he most burdensome part of the case, for both the parties and the court, is the period ***immediately before, during, and after trial***."). The upcoming months will require the parties to expend thousands of hours working on motions *in limine*, outlines, witnesses, demonstratives, jury instructions, verdict forms, post-trial briefing and countless other tasks associated with the trial and post-trial process.

Moving forward with these proceedings would unnecessarily waste substantial resources before, during, and after trial if the PTAB ultimately invalidates or amends claims from the asserted patents. Further, if the jury returns a verdict of infringement, even having a single claim invalidated or amended may raise uncertainty as to whether the verdict was based on a valid claim.

Indeed, courts in this district routinely grant stays pending IPR after the close of discovery to avoid unnecessarily wasting resources during the trial and post-trial process. *See Image Proc. Techs., LLC. v. Samsung Elecs. Co., Ltd.*, No. 2:16-cv-00505-JRG, 2017 WL 7051628, at *1 (E.D. Tex. Oct. 25, 2017) (Gilstrap, J.) (granting stay three weeks before trial); *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-cv-00011, 2016 WL 1162162, at *2 (E.D. Tex. Mar. 23, 2016) (granting stay after the close of fact and expert discovery);

9

*Motion Games, LLC v. Nintendo Co.*, No. 6:12-cv-878-RWS-JDL, 2015 WL 13404313, at *1 (E.D. Tex. June 8, 2015) ("While it is true that significant resources have been invested to this point, there is little doubt that a substantial amount of pretrial, trial and post-trial resources have yet to be expended.").

## V. CONCLUSION

For the reasons set forth above, PNC respectfully requests that the Court stay this case pending the conclusion of the IPR proceedings.

Respectfully submitted,

Dated: February 7, 2022

   */s/ Gregory Lantier*

Melissa R. Smith
Texas State Bar No. 24001351
GILLAM & SMITH LLP
303 S. Washington Ave.
Marshall, TX 75670
(903) 934-8450
melissa@gillamsmithlaw.com

Gregory P. Stone (*pro hac vice*)
Adam R. Lawton (*pro hac vice*)
Vincent Y. Ling (*pro hac vice*)
Rowley J. Rice (*pro hac vice*)
Sarah S. Lee (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
(213) 683-9100
gregory.stone@mto.com
adam.lawton@mto.com
vincent.ling@mto.com
rowley.rice@mto.com
sarah.lee@mto.com

Blanca F. Young (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
560 Mission St., 27th Floor
San Francisco, CA 94105
(415) 512-4000
blanca.young@mto.com

Gregory H. Lantier
David L. Cavanaugh (*pro hac vice*)
R. Gregory Israelsen (*pro hac vice*)
Gerard A. Salvatore (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND
  DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000
gregory.lantier@wilmerhale.com
david.cavanaugh@wilmerhale.com
greg.israelsen@wilmerhale.com
jerry.salvatore@wilmerhale.com

Andrew J. Danford (*pro hac vice*)
Monica Grewal (*pro hac vice*)
Jeannette P. Leopold (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND
  DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
andrew.danford@wilmerhale.com
monica.grewal@wilmerhale.com
jeannette.leopold@wilmerhale.com

Derek Gosma (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND
  DORR LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071
(213) 443-5308

*Attorneys for Defendant PNC Bank, N.A.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Plaintiff's counsel of record were served with a true and correct copy of the foregoing document by electronic mail on February 7, 2022.

/s/ *Melissa R. Smith*


## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules CV-7(h) and (i), counsel for the parties met and conferred on February 3, 2022. Plaintiff indicated that it opposes this motion.

/s/ *Melissa R. Smith*