IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, a Texas reciprocal inter-insurance exchange,<br><br>Plaintiff,<br><br>vs.<br><br>PNC BANK N.A.,<br><br>Defendant. | Civil Action No. 2:20-cv-319-JRG (Lead)<br>No. 2:21-cv-110-JRG<br><br>JURY TRIAL DEMANDED |

### USAA'S SUR-REPLY TO PNC'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT REGARDING VERSION 4.20.1 OF THE PNC MOBILE APP

11068407

- i -

## **TABLE OF CONTENTS**

**Page**

I.   PNC'S MOTION DOES NOT ADDRESS THE ISSUE IN THIS CASE ........................1

II.  VERSION 4.20.1 INFRINGES THE '571 AND '779 PATENTS ........................................1

III. THERE IS NO ESTOPPEL FOR THE '559 PATENT .........................................................3

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*,
   757 F.2d 255 (Fed. Cir. 1985) ............................................................................................... 4

*Dane Techs., Inc. v. Gatekeeper Sys., Inc.*,
   135 F. Supp. 3d 970 (D. Minn. 2015) ................................................................................ 2, 3

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
   2019 WL 2164090 (S.D. Ohio May 17, 2019) ..................................................................... 1

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010) ......................................................................................... 1, 2

*Mycogen Plant Sci., Inc. v. Monsanto Co.*,
   261 F.3d 1345 (Fed. Cir. 2001) ............................................................................................ 4

*Salazar v. Proctor & Gamble Co.*,
   414 F.3d 1342 (Fed. Cir. 2005) ............................................................................................ 4

*TQ Delta LLC v. Adtran, Inc.*,
   2021 WL 1200595 (D. Del. Mar. 30, 2021) ...................................................................... 2, 3

**I.     PNC'S MOTION DOES NOT ADDRESS THE ISSUE IN THIS CASE**

PNC does not dispute that version 4.20.1 is not an accused product in this case, and ignores black letter law that a motion for summary judgment of non-infringement on a product that is not accused is improper. Treating this Court's procedural rules as a game, PNC now recasts its motion as "concerning whether PNC's version 4.20.1 is a noninfringing alternative." Reply at 1. But PNC did not seek summary judgment on whether version 4.20.1 is a non-infringing alternative in its opening brief. PNC's new motion should be denied out of hand. 4.20.1 is not a non-infringing alternative. In particular, USAA has presented undisputed evidence that version 4.20.1 infringes at least the following USAA patents: 9,224,136; 10,402,638; and 10,769,598. This evidence is presented at Dkt. 326 and the exhibits thereto.

PNC's cited case of *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 2019 WL 2164090, at *12 (S.D. Ohio May 17, 2019) does not support its argument, because there the motion for summary judgment focused on the actual damages issue, the "absence of acceptable and available non-infringing alternatives." Here, in contrast, PNC does not seek summary judgment as to whether 4.20.1 is available as a non-infringing alternative, but whether it infringes individual patents.

**II.    VERSION 4.20.1 INFRINGES THE '571 AND '779 PATENTS**

PNC does not contest that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, (2) the asserted claims of the '571 and '779 Patents are storage medium and system claims that do not require performance of method steps, and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dkt. 389-3 (Goodstein) at 158:3-159:6; Dkt. 389-5 (Fernandez) at 8:18-9:6, 10:1-13.

Federal Circuit precedent is clear that, where the claims "at issue are 'system' and 'storage medium' claims, which do not require the performance of any method steps," there is no requirement that "any software components be 'active' or 'enabled.'" *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204–05 (Fed. Cir. 2010). Rather, such claims are infringed where "software for performing the claimed functions existed in the products when sold." *Id.* at 1205 (affirming verdict of infringement).

PNC argues there is no infringement because "users undisputedly cannot activate auto-capture." Reply at 2. The Federal Circuit directly rejected this argument in *Finjan*. There, the defendant argued (like PNC) that "'locked' or disabled products cannot infringe apparatus claims." *Id.* at 1203. The Federal Circuit dismissed this argument as "misplaced," because the infringing software was "'already present' in Defendants' accused products when sold." *Id.* at 1203–05. Whether the end user was able to activate the code had no bearing on the Federal Circuit's decision (indeed, the users in Finjan could not activate the code themselves, activation required a key from the seller, *id.* at 1202), the dispositive fact was that the code "existed in the products."

PNC also attempts to mischaracterize cases cited by USAA as endorsing PNC's invented user activation test. But these cases actually hold the exact opposite. In *TQ Delta LLC v. Adtran, Inc.*, 2021 WL 1200595 (D. Del. Mar. 30, 2021), defendant (like PNC) argued that users could **not** activate the infringing code because activation required "access to a particular level of the command line interface ('CLI')" that was "protected by a challenge-response mechanism that prevents uncredentialed users from enabling Dynamic D," and that "there is no evidence that 'a customer would know that the non-public Broadcom CLI exists, would know how to access it, or would know what commands to execute to enable Dynamic D.'" *Id.* at *1-2. Further, there was "no evidence that any user has ever successfully enabled the infringing functionality." *Id.* at *2. The Court rejected this argument, holding that:

> [T]he Broadcom CLI and Dynamic D-enabling command are merely publicly inaccessible—not non-existent. If someone were to have the right command and access the correct level of the CLI, Defendant does not dispute that the user could activate Dynamic D. Because there are no hardware or firmware features that prevent the Dynamic D source code from exercising infringing functionality when activated . . . I therefore find that the Accused Products infringe the asserted claims.

*Id.* at *6. So too here, PNC merely contends that 

Dkt. 389-3 at 158:3-159:6.

Similarly, in *Dane Techs., Inc. v. Gatekeeper Sys., Inc.*, 135 F. Supp. 3d 970, 986 (D. Minn. 2015),

11068407  - 2 -

defendant argued there was no infringement because "'a user' is unable to utilize the claimed function" and "'a user' must be an end user." The Court rejected this argument, finding it "relies on an overly restrictive definition of the phrase 'a user'" and that there was infringement because "the accused devices are sold with software that is capable of operating the devices in an infringing manner." *Id.*

Nor is there any merit to PNC's argument that ████████████████████████████████████████████████████████████████████████████████████████████████████████ Opp. at 6-7; *TQ Delta.*, 2021 WL 1200595, at *5; *Dane*, 135 F. Supp. 3d at 987.

## III. THERE IS NO ESTOPPEL FOR THE '559 PATENT

PNC's estoppel arguments ignore the evidence, which demonstrates the element "compare the determined amount against a customer-entered amount" was not added for a reason related to patentability. As discussed in USAA's opposition, the "compare" element has been present in USAA's claims from the very beginning. Specifically, the original 2006 claims of related application No. 11/590,974 contained the limitation "receiving from a customer-controlled general-purpose computer an identification of . . . an amount of said check" and "comparing said amount of said check to an amount determined by performing Optical Character Recognition (OCR) on said image of said front side of said check." Dkt. 389-7 at USAA_PNC00301971-301974; Dkt. 389-15 (issued '227 Patent claims containing this limitation). This limitation was then added to the continuation '559 Patent in a preliminary amendment before any examination, in substantively identical form.

PNC tries to dismiss the fact that this limitation was present in USAA's original claims, contending that USAA "surrendered . . . the subject matter between the original broader claims that lacked the 'compare' limitation, and the narrowed claims that included that limitation." Reply at 3. This is simply empty lawyer argument. There is no case law cited by PNC finding that a preliminary amendment before examination constitutes a surrender of claim scope where that same limitation was present in an original related application. This is particularly the case because in the parent application,

the error checking limitation was never a basis on which the claims were allowed.

PNC also argues that the claims were narrowed because "rewriting a dependent claim into independent form, constitutes narrowing." Reply at 3. That is not what happened. The "compare" limitation was added in a preliminary amendment as part of independent claim 41 of the '559 Patent (issued Claim 1), USAA did not rewrite a dependent claim into independent form. Dkt. 389-9 at USAA_PNC00006691-6693. But it is also an incorrect statement of law. Whether incorporating a dependent claim into an independent claim is a narrowing amendment related to patentability requires a case-by-case evaluation. *See Salazar v. Proctor & Gamble Co.*, 414 F.3d 1342, 1347 & n.4 (Fed. Cir. 2005) (writing new independent claim to incorporate limitation of prior dependent claim "was not a narrowing amendment for purposes of patentability and, therefore, does not by itself give rise to prosecution history estoppel").[1]

PNC also contends that "USAA has not met its burden to show that its narrowing amendment was for a purpose unrelated to patentability." Reply at 3. This statement simply ignores the evidence identified by USAA that the limitation was present in the original 2006 claims of an earlier application in the same family and was then added to the '559 Patent in a preliminary amendment – i.e., the opposite of the situation where a limitation is added to obtain the patent. Similarly, PNC's argument that voluntary amendments "can" give rise to estoppel is a red herring, such amendments only do so if they are related to patentability, and here the record shows it was not.

Respectfully submitted,

Dated: February 18, 2022

/s/ *Robert Christopher Bunt*
Jason G. Sheasby (CA #205455) (*Pro Hac Vice*)

---

[1] PNC's cited cases confirm this, as both turned on the specific circumstances of the amendments. In *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 261 F.3d 1345, 1350 (Fed. Cir. 2001), the applicant specifically rewrote the independent claims to overcome a rejection from the examiner. Similarly, in *Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*, 757 F.2d 255, 260 (Fed. Cir. 1985) the amendment "was made in view of the prior art."

    Lead Attorney
Lisa S. Glasser (CA #223406) (*Pro Hac Vice*)
Rebecca L. Carson (CA #254105) (*Pro Hac Vice*)
Stephen M. Payne (CA#310567) (*Pro Hac Vice*)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Tel.: (310) 203-7096
Fax: (310) 203-7199
jsheasby@irell.com
lglasser@irell.com
rcarson@irell.com
spayne@irell.com
Robert Christopher Bunt
PARKER, BUNT & AINSWORTH, P.C.
Texas State Bar No. 00787165
100 E. Ferguson Suite 418
Tyler, Texas 75702
Tel.: (903) 531-3535
rcbunt@pbatyler.com

**ATTORNEYS FOR PLAINTIFF UNITED SERVICES AUTOMOBILE ASSOCIATION**

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 18, 2022 a copy of the foregoing was served to all counsel of record.

*/s/ Robert Christopher Bunt*

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Robert Christopher Bunt*

11068407