# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **UNITED SERVICES AUTOMOBILE ASSOCIATION,**<br><br>Plaintiff,<br><br>v.<br><br>**PNC BANK, N.A.,**<br><br>Defendant. | Civil Action No. 2:20-cv-00319-JRG (LEAD CASE)<br><br>Civil Action No. 2:21-cv-00110-JRG<br><br>■■■■■■■■■■■■■■■ |

**DEFENDANT PNC BANK, N.A.'S OPPOSITION TO
USAA'S MOTIONS IN LIMINE NOS. 1-21**

**MIL No. 1:** USAA's sweeping request to preclude PNC from presenting any evidence regarding its state of mind should be denied. First, PNC employees repeatedly responded to state-of-mind questions that did not call for privileged information. For example, a PNC mobile deposit product manager testified about when he first learned that USAA claimed to have RDC patents, and PNC's 30(b)(6) representative testified about when PNC first learned of the asserted patents.[1] Second, PNC has not raised an advice of counsel defense and PNC's limited privilege instructions were appropriate. For example, USAA points to a question it asked a PNC product manager: "███████████████████████████████████████████████████████████████████████████████████████████████████."[2] But legal advice outside counsel provided to ██ ████████████████████████ is obviously privileged. USAA also cites five examples from the deposition of Robert Pugh, but USAA fails to mention it was asking Mr. Pugh about the period when he was PNC in-house counsel and was not limiting its questions to non-privileged information. Dkt. 511 at 1. Third, USAA's remedy for an improper instruction was to move to compel, not to preclude. *See* Fed. R. Civ. P. 37(a)(3)(B)(i), 37(a)(4); *see also SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 250 F. Supp. 3d 244, 268–69 (W.D. Ky. 2017). Finally, the breadth of USAA's requested preclusion sanction—i.e., all state of mind testimony regarding infringement, validity, and willfulness—is dramatically overbroad, particularly in light of the state-of-mind questions that PNC employees answered.

**MIL No. 2:** USAA wrongly seeks to prohibit any reference to any third party patent unless it is "Section 102 prior art." ████████████████████████████████████████

---

[1] *See, e.g.,* ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[2] *See, e.g.,* ████████████████████████████████████████████████████████████

2

████████████████████████████████████████████████████████. That issue is the subject of motions to strike expert testimony, ████████████████████████████ ██████ and therefore is "more appropriately addressed in that context than in the *in limine* context." *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, 5:09-CV-135, 2010 WL 11451797, at *11 (E.D. Tex. Mar. 31, 2010). If the Court agrees the ███████████████ is relevant, PNC's experts can hardly opine on that license without mentioning "any third party patent."

In any event, USAA's broad and vague request should be deferred until it can be addressed in context at trial. PNC can properly discuss third party patents in numerous contexts, none of which USAA identifies or addresses. For example, PNC can properly discuss third party prior art (e.g., the Garcia application) both as a NIA, and to isolate the "incremental value" of the inventions. *See, e.g.*, *Genband US LLC v. Metaswitch Networks Corp.*, 2:14-CV-33-JRG-RSP, 2016 WL 122969, at *3 (E.D. Tex. Jan. 9, 2016). PNC can also properly discuss patents, beyond its elected prior art, as evidence of what was "routine and conventional." *See* Dkt. 382 at 7-10. And, PNC can rely on its awareness of ███████ broad RDC patent portfolio and belief that ██████ was a leader in the field to rebut USAA's allegations of copying and willfulness. *Advanced Tech. Incubator, Inc.,* 2010 WL 11451797, at *2 ("Defendants can use … third party patents to argue invalidity and lack of willfulness."). USAA's complaint that PNC's experts did not opine that ████████████████████████████████████ rings hollow, since no expert opinion is required to show that the third party patents represent non-infringing alternatives, that what USAA added over what was already known, or whether PNC acted willfully.

**MIL No. 3:** USAA intends to argue that the lack of evidence that PNC conducted a freedom-to-operate analysis supports its willful infringement claim. As discussed in PNC's MIL No. 6 (Dkt. 513), USAA should be precluded from doing so. *See* 35 U.S.C. § 298. If the Court

denies that MIL, PNC should be allowed to rebut USAA's argument by explaining that USAA, like others in the banking industry, did not perform freedom-to-operate analyses. Contrary to USAA's assertion, this argument does not imply that third party patents cover USAA's systems, but merely that USAA—like PNC—does not investigate whether such patents exist.

**MIL No. 4:** As set forth in PNC's MIL Nos. 4 and 6, USAA should be precluded from offering any evidence that PNC supposedly copied features from USAA or others because the identified evidence has nothing to do with USAA's asserted patents or the issues in this case. Dkt. 513 at 8-9, 14-15. To the extent those motions are denied, however, PNC should be able to respond with evidence that USAA itself monitors its competitors. Such evidence places PNC's conduct in the proper context; that is, that monitoring competitors' technologies was commonplace in the mobile banking sector, and not necessarily indicative of an intent to copy.

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████ Absent this context, the jury may be led erroneously to believe that PNC's conduct was out of the ordinary.

**MIL No. 5:** USAA's attempt to exclude evidence related to Silicon Valley Bank ("SVB") should be denied. ████████████████████████████████ ██████████████████████████████████████ should be allowed for several reasons. First, ██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

4

███████████████████████████████  It also rebuts any willfulness argument based on the absence of evidence that PNC itself conducted a freedom-to-operate analysis.  *See* Opp. to USAA MIL No. 3, *supra*.  As discussed in PNC's MIL No. 6, USAA should be precluded from insinuating that such investigations or lack thereof are relevant.  But if the Court denies that MIL, PNC should be allowed to introduce ██████████████████████████.  Second, ██

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████ PNC may properly use this inconsistency to challenge his credibility.

**MIL No. 6:** USAA wrongly seeks to convert an order denying Rule 37(e) sanctions, *see* Dkt. 279 at 2, into an order precluding any reference to USAA's failure to preserve documents. While Rule 37(e) requires bad faith for the preclusion and adverse inference sanctions that PNC previously sought, it does not require bad faith to present evidence of information loss to the jury.  Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendments (Rule 37(e)(2) "would not prohibit a court from allowing the parties to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence.").  Here, ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████ when USAA had a duty to preserve.

**MIL No. 7:** USAA's request to exclude witnesses that *USAA* chose not to depose should be rejected.  Mr. Gashel is a third party, and PNC does not control his foreign travel.  Since he

was abroad at the end of fact discovery, PNC offered to make him available immediately after fact discovery closed but before expert reports, as the parties did with other witnesses who had scheduling conflicts at the close of discovery. PNC offered five different dates for Mr. Gashel, all of which USAA refused. Ex. 5 at 1, 3, 4. PNC then offered to make Mr. Gashel available again after expert reports but with ample time to supplement expert reports if necessary. USAA never responded to that offer. Ex. 5. Any purported prejudice to USAA is of USAA's own making. Similarly, with Mr. Olsson, USAA has not been "ambushed." Mr. Olsson is an inventor on a prior art patent. PNC timely disclosed him as a potential witness in its Rule 26 disclosures. Ex. 6 at 25. He is a third party witness living in Spain, and PNC has neither the ability nor the duty to produce him for deposition. USAA could have noticed his deposition through the Hague Convention, but chose not to. USAA's strategic decision is no basis for exclusion.

**MIL No. 8:** Evidence of USAA's licensing negotiations should not be precluded. First, PNC relies on admissions made by USAA and its licensing agents to third party banks, and adoptive admissions by USAA in response, which are not hearsay. *E.g.* Exs. 7, 8 (USAA_PNC00342327; USAA_PN000342370). Second, the positions USAA took in real-world licensing negotiations ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Excluding such evidence would be inconsistent with the Federal Circuit's dictate that "the patentee's usual licensing approach should be considered in assessing a reasonable royalty." *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1568 (Fed. Cir. 1988). Third, USAA repeats the false claim from its *Daubert* briefing that Dr. Vellturo purportedly rejects a comparable license approach. Not so. Dr. Vellturo states simply that ▆▆▆▆▆▆▆▆▆▆

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ That does not preclude him from opining that USAA's past negotiations are relevant to how it would conduct the hypothetical negotiation.

**MIL No. 9:** PNC does not intend to "argue [that] any third-party entity, including ▇▇▇▇▇▇▇▇, is liable for PNC's infringement or is indemnifying PNC." Dkt. 511 at 6. PNC is, however, entitled to reference ▇▇▇▇▇▇▇▇, as part of its defense to willfulness. For instance, PNC should, consistent with its interrogatory responses, be allowed to offer evidence of the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (which form the basis for USAA's infringement allegations). At least one communication providing assurances ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. PNC will not be offering this email to establish that ▇▇▇▇▇▇▇▇▇▇▇▇, but solely to show that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ That is probative of whether, in continuing to use ▇▇▇▇▇▇▇▇, PNC believed it was engaging in infringing conduct. Thus, PNC requests that if the Court is inclined to grant this MIL, the Court clarify that its order does not preclude PNC from offering ▇▇▇▇▇▇▇▇ communications referencing indemnification if they are offered for another relevant purpose, such as PNC's knowledge and intent related to willfulness. Alternatively, references to indemnification could be redacted.

**MIL No. 10:** USAA's vague attempt to exclude "evidence regarding consent decrees and regulatory inquires involving USAA" should be denied because it is overbroad and could bar the introduction of highly relevant evidence. Dkt. 511 at 6; *see also See Foradori v. Captain D's, LLC*, No. 1:03cv669, 2005 WL 6736846 at *3 (N.D. Miss. Sept. 29, 2005) (denying MIL "to exclude broad categories of evidence, with very little specificity regarding the precise testimony

7

sought to be excluded"). For example, a USAA ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ found that Deposit@Mobile had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Because Deposit@Mobile allegedly embodies USAA's inventions and because USAA's claims include "duplicate check detection," that ▮▮▮▮▮▮▮▮▮ undermines and directly relates to the value of USAA's inventions. *See* Dkt. 18 ¶ 16. And while USAA extols its "deep commitment" to technology investments that created the Asserted Patents for the benefit of "members in the armed services," Ex. 12 (10/30/19 *Wells Fargo* Trial Tr. 32:13-17), a USAA website statement on its consent decrees admitted that "[n]oncompliance occurred," including with the Servicemembers Civil Relief Act, because USAA's technology capabilities "did not keep pace" and USAA "did not sufficiently invest" in technology. *Compare* Ex. 13 (Reeder Dep. Ex. 17) at 1, 2-3, *with* Dkt. 18 ¶ 12. Indeed, as PNC explains in its MIL No. 5, USAA should be precluded from offering evidence or argument on USAA protecting or taking care of service members. However, if that motion is denied, then PNC must be allowed to rebut those characterizations and USAA's admitted violations of statutory protections for servicemembers would provide an additional basis for denying USAA's MIL No. 10.

**MIL No. 11:** USAA's wholesale attempt to preclude all fact witness testimony about the WVCU system, Movilcheck system, and Garcia-Verdugo application is premature and overbroad. Garcia-Verdugo is elected prior art. As discussed in PNC's briefing on USAA's motions to strike, PNC's experts properly rely on that application and evidence relating to the WVCU and Movilcheck systems as evidence of the state of the art and the knowledge of those skilled in the art; to rebut praise for Deposit@Mobile supposedly being first to market; to show the availability of non-infringing alternatives; and to assess the value of the asserted patents. *See*

8

Dkt. 381 at 3, 15; Dkt. 382 at 13; Dkt. 388 at 12-13; Dkt. 469 at 5; Dkt. 475 at 1, 5.  Finally, USAA's contention that *PNC* lacked knowledge of some of these items provides no basis for precluding witnesses with personal knowledge from testifying about them.

**MIL No. 12:** USAA's attempt to prevent PNC from demonstrating that it only developed workable systems embodying its claimed inventions through extensive experimentation conducted *after* it applied for its patents is baseless. USAA's characterization of this work as mere commercialization ignores its ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Dkts. 318 at 9-13, 17-21; 388 at 3-5; 419 at 2-6; 468 at 2-3. The Federal Circuit has made clear that such post-priority work is highly relevant to enablement. *See, e.g., Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1375 (Fed. Cir. 2017).  It is also relevant to damages because the significant time and effort required to have a working product after having the patents shows their limited value.

C*FMT, Inc. v. Yieldup Int'l Corp.,* 349 F.3d 1333, 1338-39 (Fed. Cir. 2003), is inapposite.  First, unlike the claims in *CFMT*, which required cleaning semiconductor wafers without any threshold level of cleaning, the inventions here require a system that can produce a quality of check image *sufficient for deposit*.  Second, the inventors in *CFMT* had developed a working prototype before filing patent applications; ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Specifically as to its 2009 patents, USAA cannot brush aside ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See  Taylor v. Iancu*, 809 F. App'x 811, 815 (Fed. Cir. 2020) (claims not enabled where inventor was "'waiting for a suitable

platform to become available' to allow him to implement his idea"). Finally, in both district court cases cited by USAA, the court *allowed* evidence of the patentee's own work, and their enablement holdings are inapplicable to the facts here. *See Eli Lilly & Co. v. Sicor Pharms., Inc.*, 705 F. Supp. 2d 971, 1010 (S.D. Ind. 2010) (considering clinical trials conducted by patentee); *Streck, Inc. v. Research & Diagnostic Sys.*, 2010 WL 3926059, at *11 (D. Neb. Sept. 30, 2010) (considering inventor's post-filing behavior).

**MIL No. 13:** The Court should reject USAA's one-sided attempt to use customer comments while blocking PNC from doing so. USAA's experts quote extensively from customer comments in opining that ███████████████████████████████████. Ex. 14 (Kennedy Report) at ¶¶ 226-227; Ex. 15 (Reed-Arthurs Report) at ¶¶ 40-58; Ex. 16 (Mott Report) ¶¶ 132, 143, 151, 154. Customer comments, whether about USAA or PNC, are hearsay. *Hendricks v. Ford Motor Co.*, 2012 WL 4478308, at *2 (E.D. Tex. Sept. 27, 2012). And anecdotal comments are not probative because PNC customers make millions of mobile deposits per month. Fed. R. Evid. 403.

If USAA is nevertheless allowed to introduce customer comments about PNC's app, PNC should be allowed to do the same for USAA's app. Those comments are relevant to rebut USAA's claims about Version 4.20.1. They show that customers complain about mobile deposit even when it has features like auto-capture that Version 4.20.1 removed. USAA's and PNC's experts reviewed comments from the same sources—the app stores and party documents—so USAA cannot question the sources' reliability. USAA also is incorrect that PNC's expert did not provide an opinion on USAA customer comments. *See* Vellturo Rebuttal Report ¶¶ 262-266 (opining that "it is not difficult to find negative written reviews of any app" including USAA's). And its complaint that PNC's expert did not perform a proper "survey analysis" through a

"representative sampling" is a *Daubert* argument that is not proper for a motion in limine, *Tyree v. Bos. Sci. Corp.*, 2014 WL 5445769, at *12 (S.D.W. Va. Oct. 22, 2014) – and goes to weight, not admissibility, in any case. *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 401 F.3d 901, 916 (8th Cir. 2005) (whether sample size is "representative" goes to weight, not admissibility).

**MIL No. 14:** USAA seeks to preclude PNC from using spreadsheets that show the cost to PNC to deposit checks in ATMs and branches, based on the unsupported claim that the spreadsheets were "manufactured." The spreadsheets are admissible for two reasons. *First*, they are business records because they were extracted from a database kept in the ordinary course of business. Fed. R. Evid. 803. As detailed in PNC's opposition to USAA's related motions to compel, Dkt. 260 at 4-7, and to strike the rebuttal report of Dr. Vellturo, Dkt. 367 at 10-12, (which PNC incorporates by reference), PNC pulled the spreadsheets' information from PNC's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 17 (Mitchell Dep.) at 132:4-19. Although the spreadsheets comprise a subset of PNC's database, that subset was exported directly from PNC's databases and remains a business record. *AFD Fund v. United States*, 61 Fed. Cl. 540, 544–55 (Fed. Cl. 2004) (printouts showing subset of records maintained in electronic databases are business records even though printed after the filing of the complaint). That the spreadsheets were formatted to be more readable for litigation does not make them inadmissible. *United States v. Sanders*, 749 F.2d 195, 197 (5th Cir. 1984) (computer printouts showing claims submitted by the defendant were admissible as business records although the government had changed the format to be more readable for trial); *see also United States v. Channon*, 881 F.3d 806, 811 (10th Cir. 2018) ("[B]usiness records in one form may be presented in another for trial. Here, we have just that—business records in one form, a database, simply presented in another form, a

spreadsheet.") (citation omitted). USAA's claim that the data was "cherry-picked" is specious. The data was exported directly from PNC's database in response to *USAA's* specific requests; PNC simply queried its database to give USAA exactly what it asked for.

*Second*, the spreadsheets' information is also admissible through PNC's experts. As discussed in PNC's opposition to USAA's motion to strike Dr. Vellturo's testimony: (1) Dr. Vellturo may testify about the spreadsheet's data because it is the kind of data on which damages experts routinely rely and he confirmed it was reliable; and (2) USAA's reliance on *Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1375-76 (Fed. Cir. 2021) is misplaced because unlike in *Wi-Lan*, the data here is not unauthenticated, did not come from third parties, and does not have any discrepancies. Dkt. 367 at 10-12.

**MIL No. 15:** USAA's MIL No. 15 is an improper use of a MIL. Rather than seek to preclude PNC from offering inadmissible evidence, USAA is asking the Court to place undue emphasis on the PTO's affordance of a 2006 priority date for the '605 and '681 patents, which would unfairly heighten PNC's clear-and-convincing burden of proof on its invalidity defenses, including written description. *See, e.g.*, *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260-61 (Fed. Cir. 2012) (holding there is no heightened burden of proof based on what was previously considered by the PTO). That PNC's opposition to USAA's duplicative motion for summary judgment focused on procedural grounds does not amount to a waiver of substantive issues. Indeed, the case USAA cites, *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 506 (5th Cir. 2018), is inapposite because it relates to a defendant's failure to develop a defense during discovery, not to the scope of a party's summary judgment opposition.

**MIL No. 16:** USAA's motion effectively seeks to strike all of PNC's anticipation, obviousness, and written description defenses based on an overly broad interpretation of PNC's

IPR stipulations.  As an initial matter, PNC's petitions for the '432 and '681 patent have been denied institution, and the institution decision has not yet been made for the '605 patent; and thus all invalidity defenses remain available for these patents.  USAA's motion should also be denied with respect to the '559, '571, and '779 patents.

*§ 112 Written Description*:  PNC raises a written description defense for only one patent where an IPR has been instituted:  the '559 patent.  PNC's IPR stipulations stated, "if this IPR is instituted, it will not advance the grounds that are raised or reasonably could have been raised in this IPR in the co-pending district court proceeding."[3]  Petitioners in IPR proceedings are not permitted to raise § 112 defenses.  *See* 35 U.S.C. § 311(b).  PNC's written defense thus could not "reasonably … have been raised" in its instituted IPR petition and is not subject to the stipulation.  While PNC filed a separate petition arguing that the patent was not entitled to a 2006 priority date based on lack of specification disclosure, that petition was denied institution.

*Section 102/103 based on printed publications*:  PNC does not intend to assert anticipation of the '571 patent—one of the three patents for which IPRs have been instituted—based on the Nepomniachtchi patent.  All of Dr. Kia's other invalidity theories require a prior art product, alone or in combination with other prior art references.  Although Dr. Kia has relied on printed publications as ***supporting evidence*** of how the underlying prior art products functioned, his obviousness opinions are not based solely upon these printed publications.  Instead, those opinions properly depend upon non-printed evidence, such as the physical products themselves, testimony from knowledgeable witnesses, and/or non-published documents or audio/video materials describing product features that were publicly known.[4]  *IP Innovation L.L.C v. Red*

---

[3] IPR2021-01077, Paper 4 at 89 (July 21, 2021).

[4] As explained in PNC's briefing on USAA's motion to strike the Kia report, to the extent USAA argues that prior art products must be shown by source code, that is incorrect.  *See* Dkt. 468 at 5 & n.4.

*Hat, Inc.*, No. 2:07-cv-447 RRR, 2010 WL 9501469, at *4 (E.D. Tex. Oct. 13, 2010) ("This court sees no error in using multiple references to describe a single prior art system . . . ."). Such obviousness grounds, which require consideration of non-printed publication prior art, were not and could not have been raised in the IPR proceedings. *See* 35 U.S.C. § 311(b); *Gen. Access Sols., Ltd. v. Sprint Spectrum LLC*, 2021 WL 5154085, at *4 (E.D. Tex. July 21, 2021) (IPR estoppel does not apply to combinations of system art and printed publications).

**MIL No. 17:** The Court should deny USAA's motion because it is overly broad and would exclude evidence that is relevant and well-founded. Instead, the subject matter should be addressed case by case at trial. Contrary to USAA's argument, "lay witnesses may provide facts within their personal knowledge about the structure, function or operation of the accused products." *Maxell, Ltd. v. Apple Inc.* 2021 WL 3021253, at *3 (E.D. Tex. Feb. 26, 2021). Thus, knowledgeable PNC witnesses may testify about the operation of PNC's products as long as they do not "provide a[] noninfringement analysis that would require an expert report." *Id.* That a PNC fact witness' testimony about the operation of PNC's products uses words that are also found in a claim limitation does not necessarily turn the testimony into a noninfringement analysis requiring an expert report, particularly where the Court has not ruled that the words have a meaning in context that differs from their ordinary meaning in the field. *Air Turbine Technology, Inc. v. Atlas Copco AB*, 410 F.3d 701 (Fed. Cir. 2005), is not on point because it involved testimony *from the inventor* about the *defendant's accused product* that was outside the inventor's personal knowledge. *Id.* at 714.

**MIL No. 18:** USAA seeks to preclude PNC from discussing its pending PTAB proceedings during the trial. PNC does not intend to do so. Should USAA open the door by

referring to IPR proceedings involving USAA's patents, however, PNC should be allowed to introduce evidence about its pending IPRs.

**MIL No. 19:** USAA seeks to preclude "argument or evidence regarding when USAA filed the claims at issue relative to when MRDC products began launching in the industry, or otherwise suggesting that continuation practice is improper." Dkt. 511 at 14-15. PNC does not intend to argue that continuation practice is improper. But as PNC explained in its opposition to USAA's motion to strike the Kia report, PNC should be allowed to argue that USAA's failure to file claims directed to mobile devices until years after their original applications bears on whether USAA met the written description requirement. *See* D.I. 388 at 6; D.I. 468 at 3-4.[5]

The case USAA cites, *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 959592 (E.D. Tex. Mar. 13, 2017), supports PNC's position, not USAA's. There, the court "allowed … evidence regarding the timing of [the patentee]'s application for any purpose relevant to a claim or defense in this case," noting that it "may be relevant to Lilly's written description defense." *Id.* at *1, *3. Here, the evidence is relevant to PNC's written description defense, and thus should be allowed.

Additionally, evidence as to when MRDC products began launching in the industry is relevant to rebut USAA's claim that it was the first to launch mobile deposit, which it has argued is ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. If USAA makes that claim, PNC should be allowed to rebut it with evidence showing earlier mobile deposit systems.

**MIL No. 20:** USAA seeks to preclude any reference to its submission of non-publication requests for the patent applications that issued as the asserted patents. That request is

---

[5] Although USAA suggests that it moved to strike Paragraph 86 of Dr. Kia's expert report, *see* Dkt. 511 at 14, that is not true, *see* D.I. 314 at 2-3, 4-6 (not listing Paragraph 86 as a paragraph subject to the motion to strike).

overbroad at least because the public availability of USAA's patent applications is probative of willfulness. In particular, PNC is entitled to argue that the fact that USAA kept its patents secret is relevant to the credibility of USAA's argument that PNC should have been aware of USAA's patents as well as the period of time during which PNC conceivably could have performed that search. PNC does not intend to argue that USAA laid in wait or acted improperly. Rather, PNC merely wishes to make the jury aware of the highly relevant fact that the USAA patents were not publicly known (due to USAA's request for confidentiality) until they were issued.

**MIL No. 21**: PNC should be able to argue to the jury that prior art it asserts was not before the USPTO. Such arguments are routine. *Canrig Drilling Technology Ltd. v. Trinidad Drilling Ltd. et al*, 4-15-cv-00656, Dkt. 96, at 16-17 (S.D. Tex. Dec. 12, 2016) (permitting testimony that "certain relevant prior art was not before the PTO when it made" its decisions); *bioMerieux, S.A. et al v. Hologic Inc.*, 1-18-cv-00021, Dkt. 404, at 2 (D. Del. Feb. 6, 2020) (allowing evidence that certain experimental data "was not before the PTO (without any reference or suggestion to whether it should have been")).

USAA has not identified any basis on which to support its preclusion argument. *AbbVie Deutschland GmbH & Co. v. Janssen Biotech, Inc.*, 759 F.3d 1285 (Fed. Cir. 2014), does not address whether a defendant should be precluded from arguing that references were not before the PTO. Instead, the Federal Circuit considered, but did not rule, on the separate question of whether the district court should have instructed the jury that non-considered art may be merely cumulative of considered art. *Id.* at 1302. In short, preclusion is unwarranted. If USAA contends that the unconsidered prior art is cumulative, its expert can express that opinion (consistent with his reports).

Dated: March 7, 2022					Respectfully submitted,


							/s/ *Andrew Danford*

							Melissa R. Smith
							Texas State Bar No. 24001351
							GILLAM SMITH LLP
							303 S. Washington Ave.
							Marshall, TX 75670
							(903) 934-8450
							melissa@gillamsmithlaw.com

							Gregory P. Stone (pro hac vice)
							Peter E. Gratzinger (pro hac vice)
							Adam R. Lawton (pro hac vice)
							Grant A. Davis-Denny (pro hac vice)
							Vincent Y. Ling (pro hac vice)
							MUNGER, TOLLES & OLSON LLP
							350 S. Grand Ave., 50th Floor
							Los Angeles, CA 90071
							(213) 683-9100
							gregory.stone@mto.com
							peter.gratzinger@mto.com
							adam.lawton@mto.com
							grant.davis-denny@mto.com
							vincent.ling@mto.com

							Blanca F. Young (pro hac vice)
							Peter A. Detre (pro hac vice)
							MUNGER, TOLLES & OLSON LLP
							560 Mission St., 27th Floor
							San Francisco, CA 94105
							(415) 512-4000
							blanca.young@mto.com
							peter.detre@mto.com

							Gregory H. Lantier (pro hac vice)
							WILMER CUTLER PICKERING HALE
							AND DORR LLP
							1875 Pennsylvania Avenue, NW
							Washington, DC 20006
							(202) 663-6000
							gregory.lantier@wilmerhale.com

17

Andrew J. Danford (pro hac vice)
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
andrew.danford@wilmerhale.com

Derek Gosma (pro hac vice)
WILMER CUTLER PICKERING HALE
AND DORR LLP
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071
(213) 443-5308
derek.gosma@wilmerhale.com

*Attorneys for Defendant PNC Bank, N.A.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Plaintiff's counsel of record were served with a true and correct copy of the foregoing document by electronic mail on March 7, 2022.

/s/ *Melissa R. Smith*