**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 2:20-cv-00319-JRG-RSP |
| PNC BANK N.A., | § § § | (LEAD CASE) |
| *Defendant.* | § § § | |

## REPORT AND RECOMMENDATION AND ORDER

Before the Court are the

- Motion for Partial Summary Judgment of Noninfringement Regarding Version 4.20.1 of the PNC Mobile App ("PNC's Non-Infringement Motion"), filed by Defendant PNC Bank N.A. **Dkt. No. 319**. The Motion should be **GRANTED IN PART** and **DENIED IN PART**.

- Motion for Partial Summary Judgment that PNC Mobile App Version 4.20.1 is not a Non-Infringing Alternative ("USAA's NIA Motion"), filed by Plaintiff United Services Automobile Association. **Dkt. No. 326**. The Motion should be **DENIED**.

- Motion to Strike Expert Report of Alan C. Bovik ("Bovik Motion"), filed by USAA. **Dkt. No. 307**. The Motion is hereby **GRANTED IN PART** and **DENIED IN PART**.

## I.  BACKGROUND

### A.  General

Plaintiff United Services Automobile Association ("USAA") alleges that PNC infringes six patents: U.S. Patent Nos. 10,482,432 ("'432 Patent"), 10,621,559 ("'559 Patent"), 10,013,681

1

("'681 Patent"), 10,013,605 ("'605 Patent"), 8,977,571 ("'571 Patent"), and 8,699,779 ("'779 Patent") (the "Asserted Patents"). The Asserted Patents generally relate to mobile check deposit technology.

### B. Interrogatory No. 12

On April 2, 2021, PNC entered into a licensing agreement with Northwest IP, LLC. Dkt. No. 307-2 ¶ 352. Part of the agreement included a license to Northwest IP's U.S. Patent No. 8,532,419 ("'419 Patent"). On November 15, 2021, PNC provided a supplemental response to USAA's Interrogatory No. 12. Dkt. No. 307-8 at 110.[1] Interrogatory No. 12 was directed to seeking whether PNC contended there were any non-infringing alternatives ("NIA") to the patents-in-suit. *Id*. USAA's Interrogatory No. 12 is reproduced below:

> **INTERROGATORY NO. 12:**
> For each Asserted Patent, identify and describe in detail any alleged noninfringing alternative that you contend exists to each Asserted Patent, including but not limited to: (i) a description of each alleged non-infringing alternative; (ii) a description of when and how each alleged non-infringing alternative was developed or otherwise available; (iii) the identity of individuals involved in developing and/or most knowledgeable about each alleged non-infringing alternative (if applicable); (iv) costs associated with developing and implementing each alleged non-infringing alternative; (v) steps and the time required to develop and implement each alleged non-infringing alternative; and (vi) all evidence that supports any contention that the alternative is/was viable from a technical and business perspective.

*Id*. PNC's response did not include any discussion of the '419 Patent, or any discussion of why PNC contended the '419 Patent would be a non-infringing alternative. On November 24, 2021, USAA served Dr. Thomas Conte's (USAA's technical expert) report of infringement, which had no discussion of the '419 Patent. Dkt. No. 253. On December 22, 2021, PNC served Dr. Alan C. Bovik's (PNC's technical expert) rebuttal non-infringement report which had a lengthy discussion of the '419 Patent. Dkt. No. 307-2.

---

[1] Citations are to the document numbers and page numbers assigned through ECF.

### C.  Version 4.20.1

As discussed above, USAA accuses PNC's mobile deposit application of infringing the patents-in-suit. During the course of litigation, however, PNC developed a new version of its mobile deposit application. Dkt. No. 363 at 5 ("PNC re-designed its PNC Mobile App to clearly avoid infringement of the claims asserted by USAA.").

On May 27, 2021, PNC supplemented its interrogatory responses on NIAs. PNC's supplement disclosed its position that the re-designed mobile application (known as "Version 4.20.1") was a NIA. *Id*. On July 7, 2021, USAA filed another lawsuit against PNC, which alleges that Version 4.20.1 infringes U.S. Pat. Nos. 10,769, 598 ("'598 Patent"), 10,402, 638 ("'638 Patent"), and 9,224,136 ("'136 Patent") (collectively the "unasserted patents"). *See* Dkt. No. 189 at 7–8; *United Services Automobile Association vs PNC Bank N.A.*, No. 2:21-cv-246-JRG, (E.D. Tex.) ("*PNC-3*").

On July 14, 2021, USAA responded to PNC's Interrogatory No. 22, which was directed towards determining whether USAA considered Version 4.20.1 an acceptable or available NIA. Dkt. No. 307-5 at 7–8. On July 15, 2021 at a status conference, USAA stated that it contended Version 4.20.1 is not a NIA because it contends Version 4.20.1 infringes one of the patents-in-suit and the unasserted patents. *See* Dkt. No. 189 at 6–8.

## II.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment should be granted if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-55 (1986). A "material fact" is one that "might affect the outcome" of the case, and a dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict

for the nonmoving party." *Anderson,* 477 U.S. at 248. Any evidence must be viewed in the light most favorable to the nonmovant. *See id.* at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59 (1970)). "If the moving party does not have the ultimate burden of persuasion at trial, the party 'must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Intellectual Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-cv-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

## B. Federal Rules of Civil Procedure 37

A party "who has responded to an interrogatory . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect, the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). If a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1).

A court considers four factors in determining whether a Rule 26 violation is harmless: (1) the party's explanation, if any, for its failure to disclose the information in a timely manner; (2) the prejudice to the opposing party if the evidence is admitted; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the evidence. *See Texas A & M Research Found. v. Magna Transp. Inc.*, 338 F.3d 394, 402 (5th Cir. 2003). Courts have broad discretion in determining whether to admit expert submissions under Rule 37(c). *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 583 (5th Cir. 2004).

The Federal Rules contemplate that contention interrogatories need not necessarily be answered early in a case. *See* Fed. R. Civ. Proc. 33(a)(2); see also Rule 33 advisory committee's note (1970 amendment, subdivision (b)) ("Since interrogatories involving mixed questions of law and fact may create disputes between the parties which are best resolved after much or all of the other discovery has been completed, the court is expressly authorized to defer an answer"). In responding to interrogatories, a party is "not required [] to disclose its experts' opinions in advance of the deadline for serving expert reports." *See Beneficial Innovations, Inc. v. AOL LLC*, Case No. 2:07-cv-555, Dkt. No. 260 at 1 (E.D. Tex. May 26, 2010) (Dkt. No. 256); *see also IP Innovation L.L.C. v. Sharp Corp.*, 219 F.R.D. 427, 430 (N.D. Ill. 2003) ("Plaintiffs' request for an invalidity analysis before Sharp is required to produce its expert report is denied as premature"); *Duncan v. Chevron U.S.A., Inc.*, 2011 U.S. Dist. LEXIS 63707 at *10-11 (E.D. La. June 15, 2011) (discovery seeking disclosure of expert opinions and bases for such opinions was premature in light of expert disclosure deadline imposed by the Court).

### C.    *Daubert* Standard

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Federal Rule of Evidence 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). District courts are accorded

broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). Accordingly, "a district court may exclude evidence that is based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015).

As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## III.    ANALYSIS

### A.    PNC Non-Infringement Motion (Dkt. No. 319)

PNC moves the Court to find that Version 4.20.1 does not infringe the patents-in-suit as well as the unasserted patents. *See generally* Dkt. No. 319. PNC also moves the Court to find that the prosecution history of the '559 Patent bars USAA from asserting an infringement theory under the Doctrine of Equivalents ("DOE"). *Id*. at 5–7.

### 1.    Literal Infringement of the patents-in-suit

PNC asserts that Version 4.20.1 does not literally infringe any of the patents-in-suit. *See id*. at 5–6. As to the '571 Patent, PNC asserts that by "disabling" the auto-capture feature PNC has successfully designed-around the '571 Patent. *See id*. at 5. PNC, however, admits that although the "auto-capture feature" has been disabled in Version 4.20.1, Version 4.20.1's software still includes computer code that could perform the "auto-capture feature." *Id*. Despite this acknowledgement, PNC contends that under Federal Circuit precedent, having the allegedly infringing code present in Version 4.20.1., but not providing the user a method to enable or use the allegedly infringing code, is sufficient for non-infringement as a matter of law. *Id*. (citing *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1203–04 (Fed. Cir. 2010); *VirnetX Inc. v. Apple Inc.*, 792 F. App'x 796, 808 (Fed. Cir. 2019)). With respect to the '779 Patent, PNC argues that USAA's expert offers no opinions to support a finding that Version 4.20.1 infringes the '779 Patent. *See id*. at 6. As to the '432 Patent, '605 Patent, and '681 Patent, PNC argues that Version

4.20.1 "removed the steps in the prior versions of the app in which the captured images were presented to the customers to review." *Id.*; *see also* Dkt. No. 319-2 ¶¶ 277–84, 338–42, 347–49.

USAA argues there is a "genuine dispute that version 4.20.1 infringes the '571 and '779 Patents." Dkt. No. 389 at 9. USAA also argues that *Finjan* stands for the opposite proposition than PNC propounds. *See id.* at 9–10. USAA provides no argument as to whether Version 4.20.1 is a NIA for the '432 Patent, '605 Patent, or '681 Patent.

There is a genuine dispute as to whether the features of Version 4.20.1 infringe either, or both, of the '571 and '779 Patents. PNC's *Finjan* analysis is incorrect, the Federal Circuit has clearly stated that Beauregard claims, like the asserted claims of the '571 Patent, do not need to be executed in order to infringe. *See VirnetX*, 792 F. App'x at 807–08. In *VirnetX*, the Federal Circuit stated:

> Claim 13 requires a computer readable medium, not the underlying process itself, so infringement "do[es] not require the performance of any method steps." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010). When it is "undisputed that software for performing the claimed functions existed in the products when sold," infringement occurs when the party sells those products. *Id.* at 1205. Accordingly, VirnetX was not required to prove that Apple or its customers actually executed VPN on Demand, just that Apple sold devices with VPN on Demand installed. There is no dispute that Apple did so.

*Id.* at 808. Moreover, the *Finjan* Court stated:

> As we have cautioned, "in every infringement analysis, the language of the claims, as well as the nature of the accused product, dictates whether an infringement has occurred. Accordingly, we have held that, to infringe a claim that recites capability and not actual operation, an accused device "need only be capable of operating" in the described mode. Thus, depending on the claims, "an accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of noninfringing modes of operation."

626 F.3d at 1204.

Based on the language of the asserted claims of the '571 Patent and '779 Patent, capability is enough to infringe the claims. The asserted claims of the '571 Patent are Beauregard claims that

do not require execution to be satisfied. Although the asserted claim of the '779 Patent calls for a "system," the language of the claim does not require any steps to be performed, merely that a mobile device processor be "configured to" perform a number of actions. '779 Patent Claim 1.[2]

As for the '432 Patent, '605 Patent, and '681 Patent, USAA offers no evidence that creates a question of genuine fact. The PNC Non-Infringement Motion should be granted as to these patents. But in all other respects, the PNC Non-Infringement Motion should be denied.

### 2.      Prosecution History Estoppel bar for the '559 Patent

The Court will take up matter-of-law bars to DOE post-trial.[3] *See Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1323 (Fed. Cir. 2009) ("Notwithstanding the jury's proper fact-finding role in assessing the equivalence of each limitation of a claim, the Supreme Court has recognized 'various legal limitations on the application of the doctrine of equivalents.' These 'legal limitations . . . are to be determined by the court either on a pretrial motion for partial summary judgment or on a motion for judgment as a matter of law at the close of the evidence and after the jury verdict.'" (citations omitted)).

Dr. Conte will not be prohibited from asserting DOE opinions to the jury. However, Dr. Bovik (or any other expert) may not testify about any matter-of-law bars to DOE he or she may believe are applicable.

---

[2] Although not addressed by the parties, the Court also finds that the claim language of the '559 Patent does not require execution to be infringed.

[3] The parties are reminded that the verdict form should inquire regarding both literal infringement and DOE in order to facilitate the post-trial analysis, in the event that USAA does assert infringement under the DOE. The patent infringement inquiry should likely be on a patent by patent (or even claim by claim) basis in order to accommodate potential IPR outcomes post-trial.

**B.    USAA's NIA Motion (Dkt. No. 326)**

As discussed, in the PNC Non-Infringement Motion there is a genuine dispute of material fact as to whether Version 4.20.1 infringes one or more of the patents-in-suit. Additionally, there is genuine dispute whether Version 4.20.1 infringes the unasserted patents.

During discovery, USAA timely disclosed that it contended that Version 4.20.1 infringed the unasserted patents and provided expert opinions to that effect. Both parties were sufficiently on notice with respect the opposing party's position on the NIA issue. *See e.g.* Dkt. No. 189 at 6–7.

USAA contends that under *Astrazeneca AB v. Apotex Corp.,* 782 F.3d 1324, 1340-41 (Fed. Cir. 2015), "[a] proposed alternative that is covered by patents outside the immediate lawsuit is not "available" and thus cannot be an NIA for damages purposes." Dkt. No. 326 at 7.

The Court agrees with USAA's proposition that a proposed alternative "that is covered" by patents outside the lawsuit (even though the alternative does not infringe the asserted patents) could therefore be "unavailable."

Ultimately PNC, as the party contending that it has a NIA, will need to persuade the jury that Version 4.20.1 is available to it.  Accordingly, USAA may contend at trial that Version 4.20.1 is not a NIA and PNC may contend that Version 4.20.1 is a NIA. Both parties will, of course, be governed by the scope of their respective expert reports.  The summary judgment record does not establish that USAA is entitled to the relief sought.  Accordingly, the motion should be denied.

**C.    Dr. Bovik Motion (Dkt. No. 307)**

USAA moves the Court to strike several opinions offered by Dr. Bovik.

1. **Dr. Bovik's NIA Opinions**

   i. **Northwest IP Patent**

USAA seeks to preclude Dr. Bovik from offering his opinion that Northwest IP's '419 Patent sets forth a NIA. Dkt. No. 307 at 7; Dkt. No. 307-2 ¶¶ 370–73. USAA argues that Dr. Bovik's '419 Patent NIA opinion should be struck as a consequence of "PNC's failure to identify the '419 Patent as an alleged NIA in a timely manner. . . ." Dkt. No. 307 at 7. USAA argues that a consequence of PNC's failure to disclose the '419 Patent as a NIA has allowed USAA to get "sandbagged." *Id*.

PNC argues that the fault lies with USAA's failure to object, or otherwise interpret, PNC's clarification of what it understood the scope of Interrogatory No. 12 to include. Dkt. No. 366 at 6 ("PNC objected that 'exists' was vague in this context, and clarified that PNC understood the interrogatory to ask about 'noninfringing alternatives that exist in the sense that they have been implemented in the Accused Instrumentalities, and not for information about hypothetical noninfringing alternatives that potentially could later be but have not yet been implemented.' USAA never questioned or challenged PNC's clarification." (internal citation omitted)). Additionally, PNC contends that its failure, if any, should be considered harmless because USAA had an opportunity to depose Dr. Bovik. *Id*.

PNC failed to timely disclose its contention that the '419 Patent provides a NIA. PNC seeks to shift the blame for its concealment of the '419 Patent as a NIA on the phrasing of USAA's Interrogatory No. 12. *See id*. The Court declines to do so. The Court cannot condone PNC arbitrarily curtailing the scope of its obligations, so as to deny the discovery of valuable information, under the guise of "clarification;" particularly given that Interrogatory No. 12 obviously sought to elicit PNC's assertions with respect to NIAs. PNC's "clarification" goes

against the purpose of the discovery rules and the against a plain reading of Interrogatory No. 12. *Cf. SSL Servs., LLC v. Citrix Sys.*, No. 2:08-cv-158-JRG, 2012 U.S. Dist. LEXIS 76965, *5-7 (E.D. Tex. June 4, 2012) (plain language of interrogatory indicates the interrogatory only related to defendant's attempts to design around the patents in suit). Additionally, the Court finds PNC's justification for withholding disclosure of the '419 Patent as largely a hindsight attempt to find an explanation for its failure. *See Realtime Data LLC v. EchoStar Corp.*, No. 6:17-cv-00084-JDL, 2018 WL 6266300, at *7 (E.D. Tex. Nov. 15, 2018).

PNC's failure to disclose the '419 Patent is also not harmless. PNC claims the facts of this case are comparable to *iFLY Holdings LLC v. Indoor Skydiving Germany GmbH*, No. 2:14-cv-01080-JRG-RSP, 2016 WL 3680064 (E.D. Tex. Mar. 24, 2016). That is incorrect. In *iFLY Holdings*, the Court noted that the prejudice from the expert's "brief testimony on design-arounds" was mitigated by the Plaintiff's ability to depose the expert. *Id*. at *2. Although USAA had an opportunity to depose Dr. Bovik, that did not adequately mitigate the prejudice. Here, Dr. Bovik's opinions are more than "brief." Dr. Bovik does a substantial analysis on the allegedly non-infringing nature of the '419 Patent unlike the *iFLY Holdings* expert who stated a limited number of small changes would be enough to be considered a "design-around." Additionally, PNC's excuse for its failure to disclose the '419 Patent significantly weighs in favor of exclusion. Accordingly, PNC's experts are excluded from offering testimony that the '419 Patent is a NIA.

### ii. PNC's Version 4.20.1

USAA argues that Dr. Bovik's opinions on whether Version 4.20.1 is a NIA should be stricken because Dr. Bovik is offering an improper legal opinion. *See* Dkt. No. 307 at 10; Dkt. No. 307-2 ¶ 326. Specifically, Dr. Bovik's opinion on whether it is possible to infringe a claim despite

the consumer not having access to the accused functionality. *See* Dkt. No. 307-2 ¶ 326. PNC

argues that *Finjan* is properly being recited by Dr. Bovik. Dkt. No. 366 at 9.

As discussed above, *Finjan* does not require claims such as this to be executed in order to

be infringed. Accordingly, Dr. Bovik's opinion on whether there can be infringement as a matter

of law based on whether the users have access to the accused functionality is hereby stricken. *See*

Dkt. No. 307-2 ¶ 326

### 2. Dr. Bovik's Adherence to the Court's Claim Construction

USAA asserts that Dr. Bovik has offered several opinions that are inconsistent with the

Court's previous claim construction order. In particular, USAA alleges Dr. Bovik's opinions

related to the "checking for errors," "image monitoring and capture module," "A computing

device," and "presenting electronic images" claim terms should be stricken. *See, e.g.*, *MarcTec,*

*LLC v. Johnson & Johnson*, 664 F.3d 907, 913 (Fed. Cir. 2012) ("expert testimony [that] ignored

the court's claim construction 'is irrelevant to the question of infringement' and is inadmissible

under *Daubert*").

### i. "checking for errors"

USAA argues that Dr. Bovik offers opinions that are contrary to the Court's claim

construction of "checking for errors" in the '432 Patent. *See* Dkt. No. 307 at 11; Dkt. No. 307-2

¶¶ 132–33. USAA asserts that Dr. Bovik's opinion contradicts the Court's previous construction

that "'checking' could involve user input that is related to the check image, such as user input of

dollar amount corresponding to the check." *See* Dkt. No. 307 at 12; Dkt. No. 265 at 23.

PNC responds that "USAA's motion is based on a mischaracterization and distortion of

Dr. Bovik's opinion." Dkt. No. 366 at 10. PNC states that Dr. Bovick simply "opines that the

particular example given by Dr. Conte—a user-inputted amount that exceeded the user's deposit

limits—did not relate to any check image." *Id*. at 10–11. PNC contends "[t]he claim construction order did not hold that the error correction step in the claims included errors relating to user-inputted amounts wholly unrelated to check images, and thus there is no contradiction between Dr. Bovik's opinion and the claim construction order." *Id*. at 11.

The Court agrees with USAA that Dr. Bovick's offered opinions can only be read as restricting the Court's previous claim construction Order. The Court articulated that limiting the "checking" term to only the check image itself is improper. *See* Dkt. No. 265 at 23 (The Court "expressly reject[ed] PNC's proposal of 'in the check image' because the 'checking' could involve user input that is related to the check image, such as user input of a dollar amount corresponding to the check."); *see also PNC-3*, Dkt. No. 86 at 29–32 (E.D. Tex. Mar. 17, 2022). Dr. Bovick stated:

> [Dr. Conte's] comparison between the amount entered by the customer and the customer's deposit limits was not related to the check image. Instead, the comparison was related to the amount entered by the customer and was not related to customer's deposit limit. While the app prompted the customer to enter the amount of the check, the app permitted the customer to enter a different amount. At the time of the comparison, the app did not determine, and had no way to determine, whether the amount entered by the customer matched the amount written on the check.

Dkt. No. 307-2 ¶ 133. In rejecting Dr. Conte's opinion, Dr. Bovick necessarily restricted "related to customer's deposit limits" to aspects of the check image itself, which is inconsistent with Court's claim construction.

### ii.  "image monitoring and capture module"

USAA argues that Dr. Bovik offers opinions that are contrary to the Court's claim construction of "image monitoring and capture module" in the '571 Patent. *See* Dkt. No. 307 at 12–14; Dkt. No. 307-2 ¶¶ 211–15. USAA contends that Dr. Bovik's rebuttal opinion with respect to whether the accused product practices the "image monitoring and capture module" limitation is

merely a disguised indefiniteness argument—an indefiniteness argument that has already been rejected. *See* Dkt. No. 307 at 13.

PNC states that Dr. Bovik's opinions are directed to non-infringement not indefiniteness. Dkt. No. 472 at 4. PNC argues that Dr. Bovik is merely opining that "USAA has not met its burden to show how or where the 'portions of the specification' describing the corresponding structure are found in the accused PNC product." *Id*.

The Court concurs with USAA. In Dr. Conte's report, which Dr. Bovik attempts to rebut, Dr. Conte makes a number of statements about the structure disclosed in the application and how the accused product reads on that disclosed structure. *See* Dkt. No. 307-11 ¶ 227. To support his opinion about the structure disclosed in the specification, Dr. Conte cites to passages in the specification that the Court previously referenced as sufficient to impart sufficient structure to "image monitoring and capture module." *Compare id*. (citing '571 Pat., 12:65-13:3) *with* Dkt. No. 265 at 64–65 (citing '571 Pat., 12:55–13:6 & 13:35–38). Dr. Bovik picks out specific phrases and sentences in Dr. Conte's report and states that these specific sentences do not identify software structure disclosed in the specification. *See e.g.* Dkt. No. 307-2 ¶ 212 ("[Dr. Conte] states that the patent specification 'explains that the 'image monitoring and capture module' includes the 'camera[] contained within the mobile device' as well as related software (for example, the specification describes a 'software call from the check processing module 454 to the image monitoring and capture module 456.'' That sentence does not identify any software structure set forth in the specification."). The Court determined there is sufficient structure in the specification for the "image monitoring and capture module," and the cited portions of the claim construction constitute the relevant software structure disclosure. *See* Dkt. No. 265 at 64–65 (citing '571 Pat., 12:55–13:6 & 13:35–38). As discussed in the claim construction order, "image monitoring and

capture module" is a special purpose device with a particular software as disclosed in the specification. *Id*.; *see also Dyfan, LLC v. Target Corp.*, 2022 U.S. App. LEXIS 7752, *17-18, _ F.4th _ (Fed. Cir. Mar. 24, 2022). Indeed, the portions cited by the Court, which are the same portions that Dr. Conte relies upon to show structure, have the relevant software structure— Dr. Bovik cannot testify to the contrary. *Id*.; *Dyfan*, 2022 U.S. App. LEXIS 7752 at *17-18. Dr. Bovik will be precluded from stating that certain passages, which the Court already identified as imparting structure, do not impart sufficient structure. *See e.g.* Dkt. No. 307-2 ¶ 212 ("The fact that the image monitoring and capture module is called by the check processing module does not set forth any structural attribute or characteristic of the image monitoring and capture module software."). Moreover, Dr. Bovik will be precluded from testifying there is insufficient structure in the specification. *See e.g.* Dkt. No. 366-5 at 7 ("I've only pointed out that I couldn't find any software structure."). To be clear, Dr. Bovik may not testify that the specific portions that Dr. Conte relied upon are insufficient to show software structure or that there is insufficient structure in the specification.

### iii. "A computing device"

USAA argues that Dr. Bovik offers opinions that are contrary to a plain and ordinary construction of "A computing device" in the '559 Patent. *See* Dkt. No. 307 at 15; Dkt. No. 307-2 ¶ 189. USAA asserts that Dr. Bovik opines "that claim 1 of the '559 Patent requires that a single computer—as opposed to a data center or server farm containing multiple processors —contain the first processing circuitry and second processing circuitry." Dkt. No. 307 at 15. USAA alleges this opinion is a narrow construction of "A computing device," which is allegedly inconsistent with the claim construction. *Id*. at 15–16. Dr. Bovik opines:

> claim 1 requires not only non-identical "first processing circuitry" and "second processing circuitry," but also "A computing device" comprising both the first

processing circuitry and the second processing circuitry. Dr. Conte has not identified any such computing device. His identification of entire data centers does not suffice because data centers may contain multiple computing devices, and there is no basis for concluding that any particular computing device comprises the functionality of the entire data center. For that additional reason, Dr. Conte has not shown any infringement of claim 1 by PNC.

Dkt. No. 307-2 ¶ 189.

Dr. Bovik impermissibly narrows the plain meaning of "A computing device." The Court must now construe whether "A" in the preamble of the '559 Patent limits the scope of the invention to a single device. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360–62 (Fed. Cir. 2008). As discussed above, USAA argues that the "first processing circuitry" and "second processing circuitry" need not necessarily be on the same processor or server; while PNC supports Dr. Bovik's opinion that the "first processing circuitry" and "second processing circuitry" must be on a single device or processor. Dkt. No. 307 at 15–16; Dkt. No. 366 at 13–14.

In general, there is a "presumption against reading a statement of purpose in the preamble as a claim limitation." *Marrin v. Griffin*, 599 F.3d 1290, 1294–95 (Fed. Cir. 2010); *see Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002) ("Generally, the preamble does not limit the claims."); *see also Acceleration Bay, LLC v. Activision Blizzard Inc.*, 908 F.3d 765, 769–71 (Fed. Cir. 2018). A preamble may be limiting, however, if it states a "fundamental characteristic of the claimed invention," "serves to focus the reader on the invention that is being claimed," or "states the framework of the invention." *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1343 (Fed. Cir. 2006).

At first blush it might seem that Dr. Bovik's understanding of "A computing device" would be consistent with having one physical unit, but the structure of the claims shows that the "device" could be distributed. The Court previously construed the preamble of the '599 Patent to be limiting, specifically with respect to "processing a remote deposit of a check" limitation. *See* Dkt. No. 265

at 27–29. The Court did not, however, limit the preamble in the manner Dr. Bovik opines. Namely, that the "first" and "second" processing circuitry could not be distributed across other processors or multiple servers. The Court finds no basis to confine the claims in the manner offered by Dr. Bovik. Whether or not the first" and "second" processing circuitry are located on a single server, processor, or apparatus, as opposed to distributed across multiple servers or processors, is not a "fundamental characteristic of the claimed invention," it does not "serve[] to focus the reader on the invention that is being claimed," nor does it "state[] the framework of the invention." *See On Demand*, 442 F.3d at 1343. Further, PNC never proposed a construction of this term during claim construction. *See Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007); *Fenner Invest., Ltd. v. Microsoft Corp.*, 632 F. Supp. 2d 627, 638 (E.D. Tex. 2009); *see also Spigen Korea Co. Ltd v. Ispeaker Ltd.*, No. 2:16-CV-08559-DOC-DFM, 2018 WL 6038300, at *19 (C.D. Cal. July 16, 2018). Accordingly, that opinion is stricken.

### iv. "presenting the electronic images of the check to the user after the digital camera captures the electronic image"

USAA argues that Dr. Bovik seeks to narrow the plain and ordinary construction of "presenting the electronic images of the check to the user after the digital camera captures the electronic images" in the '605 Patent. *See* Dkt. No. 307 at 19; Dkt. No. 307-2 ¶¶ 237–45. USAA asserts Dr. Bovik improperly imports a temporal ordering into the claims of the '605 Patent. Dkt. No. 307 at 19 ("It is settled law that unexpressed temporal ordering should not be read into claims.").

PNC contends "Dr. Bovik has not opined that different steps of a method claim or different elements of a system claim require any particular order." Dkt. No. 366 at 17. PNC argues that the

claim term itself imparts a particular order. *Id*. (citing *Broadcom Corp v. Amazon.com Inc.*, 2017 WL 5151356, at *16-17 (C.D. Cal. Sept. 1, 2017)).

Dr. Bovik has not engaged in claim construction of the claim term at issue. Dr. Bovik simply gives opinions that are consistent with the plain and ordinary meaning of the claim term. Although USAA urges the Court to strike Dr. Bovik for importing temporal limitations, he is merely rebutting Dr. Conte's opinion based on the plain and ordinary meaning of the claim term at issue—in other words, Dr. Bovik has not engaged in improper claim construction.

### 3. Dr. Bovik's Reference to USAA's Mobile Application

USAA alleges that "Dr. Bovik attempts to prove non-infringement by showing implementation differences between USAA's embodying Deposit@Mobile app and PNC's mobile app." Dkt. No. 307 at 18; Dkt. No. 307-2 ¶¶ 241–42. USAA states that "pointing to implementation differences between the accused product and USAA's commercial product" "is legally irrelevant and would mislead the jury . . . ." Dkt. No. 307 at 19.

PNC contends Dr. Bovik is not attempting to show non-infringement only by showing differences between USAA's and PNC's products. Dkt. No. 366 at 16. PNC states that Dr. Bovik's comparisons are relevant and proper to rebut testimony related to the DOE and copying. *Id*. (citing *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1298 (Fed. Cir. 2009)).

The Court agrees with USAA. Dr. Bovik is precluded from comparing USAA's application for the purposes of infringement (literal or DOE). *See ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1578 (Fed. Cir. 1984) ("infringement is determined on the basis of the claims, not on the basis of a comparison with the patentee's commercial embodiment of the claimed invention."). Although PNC argues paragraphs 241 and 242 are relevant for DOE, Dr. Bovik did not rely on a comparison of the USAA application as the basis for his DOE opinion. *See* Dkt. No.

307-2 ¶¶ 241–42 (comparison used to show literal infringement). Moreover, *Abbott* is not on point. In *Abbott*, the plaintiff asserted that defendant had admitted infringement by equivalents when defendant sought a bioequivalence designation. 566 F.3d at 1298. Bioequivalence, as noted by the Federal Circuit, is a "regulatory and medical concern," which has a very particular meaning in life science and chemical arts. *Id*. With this distinct meaning in mind, the Federal Circuit stated bioequivalence is "potentially relevant" to a DOE analysis, but not necessarily relevant. *Id*. This is a far cry from allowing opposing experts to compare mobile applications to aid in determining equivalency, particularly given the meaning of bioequivalence in the pertinent art.

As for copying, Dr. Bovik's analysis may be relevant and useful for the purpose of rebutting Dr. Conte's assertion of copying. But Dr. Bovik's analysis in paragraphs 241 and 242 is not directed toward rebutting Dr. Conte's opinions on copying. Dr. Bovik will confined to the scope of his report and is precluded from comparing the parties' two applications for that purpose.

### 4.        Dr. Bovik's Opinion on Availability of DOE

As noted earlier, the Court will take up matter-of-law bars to DOE post-trial. *See Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1323 (Fed. Cir. 2009) ("Notwithstanding the jury's proper fact-finding role in assessing the equivalence of each limitation of a claim, the Supreme Court has recognized 'various legal limitations on the application of the doctrine of equivalents.' These 'legal limitations . . . are to be determined by the court either on a pretrial motion for partial summary judgment or on a motion for judgment as a matter of law at the close of the evidence and after the jury verdict.'" (citations omitted)).

Dr. Conte will not be prohibited from providing DOE opinions to the jury. However, Dr. Bovik (or any other expert) may not testify about any matter-of-law bars to DOE he or she may believe are applicable.

### 5.    Dr. Bovik's Opinion on NCR Passport

USAA argues that Dr. Bovik's opinion that the "NCR Passport can no longer validate whether the OCRed CAR field matches a customer-entered amount" should be stricken because it relies upon knowledge that PNC's fact witnesses disclaimed. *See* Dkt. No. 307 at 16; Dkt. No. 307-2 ¶ 126. USAA alleges that the deposition portions Dr. Bovik cited as support for his paragraph 126 opinion are based on topics the deponents disclaimed any knowledge of. *See* Dkt. No. 307 at 16–17. USAA argues that any of Dr. Bovik's opinions which are predicated on the allegedly disclaimed knowledge must be excluded.

PNC argues that the deponents "did not 'disclaim[] knowledge' of the information Dr. Bovik describes in paragraph 126." Dkt. No. 366 at 15. According to PNC, the relevant portions of the deponents' depositions were selectively excluded by USAA. *Id*. PNC contends that these excluded portions show that the deponents were knowledgeable about the NCR Passport topic. *Id*. PNC also argues that even if the factual basis for Dr. Bovik's opinion is questionable, that is an insufficient basis to exclude his testimony. *Id*. (citing *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 955 (8th Cir. 2007)).

At worst, Dr. Bovik made an assumption based on the testimony provided by the deponents. Dr. Bovik's opinion that there is no NCR Passport optical character recognition ("OCR") scan of the check is sufficiently supported by deposition testimony, whether the NCR Passport actually performs a second scan is a question of fact. *See* Dkt. No. 307-15 at 4. To the extent USAA believes there is an additional OCR scan, that is a subject for cross-examination. *See Ericsson, Inc. v. Harris Corp.*, No. 4:98-cv-325-PNB, 2001 U.S. Dist. LEXIS 26485, *15 (E.D. Tex. Mar. 13, 2001) ("The fact that some of [the expert's] assumptions and conclusions may be based on facts that are disputed should not be grounds for excluding his testimony entirely.").

## IV. CONCLUSION

The Court should **GRANT** the PNC Non-Infringement Motion that Version 4.20.1 is a NIA with respect to the '432 Patent, '605 Patent, and '681 Patent. In all other respects the PNC Non-Infringement Motion should be **DENIED**.

USAA's NIA Motion should be **DENIED**.

The Court **GRANTS** the Dr. Bovik Motion with respect to PNC's expert opinions of the Northwest IP NIA and paragraphs 132–33, 189, 211–15, 241–42, 326 of Dr. Bovik's report. PNC's experts will be precluded from testifying about any matter-of-law bars to DOE he or she may believe are applicable. In all other respects the Motion is **DENIED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report **within 14 days** bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, resporth]" or it may not be considered by the District Judge.

**SIGNED this 17th day of April, 2022.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE