## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, § § § *Plaintiff*, § v. § § PNC BANK N.A., § § *Defendant*. § § | Case No. 2:20-cv-00319-JRG-RSP (LEAD CASE) |

### MEMORANDUM OPINION

Before the Court is the Motion to Strike Portions of the Rebuttal Expert Report of Christopher Vellturo filed by Plaintiff United Services Automobile Association. Dkt. No. 316. USAA moves the Court to strike certain opinions of Dr. Christopher Vellturo, Defendant's damages expert.

**I.   BACKGROUND**

Plaintiff USAA alleges that Defendant PNC Bank N.A. infringes six patents: U.S. Patent Nos. 10,482,432 ("'432 Patent"), 10,621,559 ("'559 Patent"), 10,013,681 ("'681 Patent"), 10,013,605 ("'605 Patent"), 8,977,571 ("'571 Patent"), and 8,699,779 ("'779 Patent") (collectively, the "Asserted Patents").

On December 2, 2021, USAA served Mr. David Kennedy's expert report on damages. *See* Dkt. No. 331-1. PNC then served Dr. Vellturo's rebuttal damages report. Dkt. No. 316-2.[1] USAA now moves to exclude certain opinions of Dr. Vellturo.

---

[1] Citations are to document numbers and page numbers assigned through ECF.

## II. LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Federal Rule of Evidence 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial

court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). Accordingly, "a district court may exclude evidence that is based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015).

As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### III. ANALYSIS

#### A. Dr. Vellturo's NIA Opinions

USAA argues several of Dr. Vellturo's opinions should be stricken because he relies on testimony and opinions of other experts who are subject to a motion to strike, specifically as they relate to non-infringing alternatives ("NIA"). *See generally* Dkt. No. 316 at 5–9, 18.

The Court has ruled that there are genuine disputes of fact that surround whether PNC's re-designed mobile application (known as "Version 4.20.1") infringes any of the Asserted Patents as well as unasserted USAA patents. *See* Dkt. No. 592 at 10. Dr. Vellturo's opinions that rely on any technical opinions that consider Version 4.20.1 to be a NIA are sufficiently supported.

PNC and Dr. Vellturo have already been precluded from relying on Northwest IP's '419 Patent as a NIA. *Id*. at 11–12.

Dr. Vellturo's testimony relies on certain opinions from Mr. Webster. If these same opinions of Mr. Webster are later are struck, than Dr. Vellturo's testimony that relies on the stricken opinions will be stricken as well. The Court, however, will not take up issues of whether Mr. Webster's opinions are permissible in this Motion.

### B. Dr. Vellturo's Opinion on Willingness to Pay

USAA asserts "Dr. Vellturo's cost analysis of Version 4.20.1 (¶¶ 320-350, 500-505) repeatedly opines that the design-around cost of Version 4.20.1 provides a cap on the amount of damages and relies on that assumption in constructing his analysis." Dkt. No. 316 at 9.

USAA is correct that reasonable royalty damages may exceed the amount that the infringer could have paid to avoid infringement, however, that does not preclude Dr. Vellturo from opining that during the hypothetical negotiation PNC would be unwilling to pay more than the cost associated with designing a NIA.

### C. Dr. Vellturo's Use of Agreements

USAA moves to strike certain opinions Dr. Vellturo offers that are allegedly based on non-comparable agreements and letters. Dkt. No. 316 at 10. USAA asserts that Dr. Vellturo's opinions directed to the NCR software license, SunCoast and Dollar Bank offers, and the Wells Fargo settlement license should be excluded. *Id*. at 10–12.

#### 1. NCR License

USAA argues Dr. Vellturo cannot rely on a NCR software license ("NCR License") because Mr. Webster allegedly did not find the NRC License comparable to the hypothetical negotiation. Dkt. No. 316 at 11. USAA also argues that any of Mr. Webster's shortcomings are not remedied by Dr. Vellturo because he allegedly did not perform a comparability analysis between the NCR License either. *Id*. at 11.

PNC argues Dr. Vellturo's testimony is permissible because he "addressed each difference that USAA's damages expert purports to have found between the NCR Agreement and the hypothetical negotiation." Dkt. No. 367 at 8.

Dr. Vellturo's opinions on the NCR License are admissible. Though Mr. Webster used a colorful metaphor in his deposition, he was simply distinguishing the general nature of the hypothetically negotiated license and the NCR agreement. However, Mr. Webster's colorful rhetoric is not necessarily dispositive on the issue. There is little question that the technology at issue in the NCR License is comparable, the main question is whether there is economic comparability. *See Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372-1373 (citing *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012)); *see also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) ("[T]he fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility."). Dr. Vellturo has sufficiently supported his opinion that certain aspects of the NCR license are comparable to the hypothetical negotiation. Dr. Vellturo addresses each difference between the NCR License and the hypothetical negotiation. *See* Dkt. No. 316-2 ¶¶ 420, 424-28. He then gives his analysis as to the impact those perceived differences have on the hypothetical negotiation. *See id*.

    **2.**    **SunCoast and Dollar Bank Letters**

USAA contends that Dr. Vellturo's opinions with respect to the offer letters USAA sent to SunCoast and Dollar Bank should be excluded because Dr. Vellturo had not assessed whether they are economically comparable. Dkt. No. 316 at 11. USAA also contends that since these offers were unconsummated, they are not comparable and any testimony regarding them should be excluded.

*Id.* (citing *MiiCs & Partners, Inc. v. Funai Elec. Co.*, 2017 WL 6268072, at *4 (D. Del. Dec. 7, 2017)).

PNC responds that the SunCoast and Dollar Bank offers are relevant because "what USAA was prepared to accept for a license to its RDC patents is relevant both to the amount USAA would be willing to accept in the hypothetical negotiation, and the form that license would take." Dkt. No. 367 at 10–11. PNC also argues that USAA's "usual licensing approach should be considered in assessing a reasonable royalty." *Id.* (internal quotation marks omitted) (quoting *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1568 (Fed. Cir. 1988)).

"[P]roposed licenses may have some value for determining a reasonable royalty in certain situations," and this is one of those situations. *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 29–30 (Fed. Cir. 2012); *Maxell, Ltd. v. Apple Inc.*, No. 2020 WL 8269548, at *16 (E.D. Tex. Nov. 11, 2020). The opinions USAA seeks to exclude are based on negotiations and offers USAA made to SunCoast and Dollar Bank. Though these offers are not a perfect fit, Dr. Vellturo provides a fulsome analysis to draw conclusions from these offers and negotiation. Dkt. No. 316-2 ¶¶ 358–67. The negotiations and offers fall into the category of "proposed license" and, in this case, are relevant and probative. Moreover, there is no indication that these offers were made for any illegitimate purpose. USAA disputes Mr. Vellturo's conclusions and argues they are not comparable, but that is a subject for cross-examination.[2]

### 3.     Other Licensing Letters and Communications

USAA asserts that Dr. Vellturo's statement that USAA sent many letters to other banking institutions should be precluded because those letters are not comparable. Dkt. No. 316 at 12.  PNC

---

[2] USAA also argues that the SunCoast and Dollar Bank offers were excluded from the previous *Wells Fargo* litigation. Although these same licenses were excluded in the *Wells Fargo* litigation, in that case, there was no question that each expert opined the licenses were not comparable. Here, Dr. Vellturo performs a substantive analysis to reconcile these two offers and apply the facts of the case.

contends that these letters are relevant and probative of the structure of the resulting hypothetical license (i.e. lump sum versus running royalty).

Dr. Vellturo may discuss these other letters to establish what structure the hypothetical license may take. PNC may not disclose the amounts being offered in the letters, to the extent there are any.

### 4. Wells Fargo Settlement License

USAA objects to Dr. Vellturo's analysis of the Wells Fargo license referring to the fact that it arose from a case with a finding of willful infringement and no decision as to enhancement of the damages. This has been previously addressed by the Court, and USAA was precluded from discussing the previous jury verdict of willful infringement in the Wells Fargo case before the jury in this case. *See* Dkt. No. 597 at 10. However, that ruling was made in order to avoid unfair prejudice to PNC. If PNC wants to open the door to that evidence, in order to allow Dr. Vellturo's analysis, then that will also open the door to USAA's response that there were post-trial motions pending, including a motion regarding ongoing royalties. Unless leave is obtained from the trial judge, both parties are precluded from raising the Wells Fargo finding of willful infringement before this jury.

### D. Data Used by Dr. Vellturo

#### 1. Econometric Model

USAA seeks to exclude certain opinions of Dr. Vellturo that are allegedly based on non-disclosed and unreliable data. Dkt. No. 316 at 12; Dkt. No. 316-2 ¶¶ 227–28, 281–87, 320–39. USAA alleges the econometric model discussed by Dr. Vellturo is based on data never identified by PNC during discovery. Dkt. No. 316 at 13. USAA also argues that the data should be stricken

"because PNC produced it in such a way as to make it impossible for USAA to identify [it] absent disclosure in a discovery response." *Id*. at 14.

PNC argues that it sufficiently disclosed and timely produced the documents Dr. Vellturo relies upon to render his opinion. *See* Dkt. No. 367 at 13. PNC also argues that to the extent there is information that was not disclosed any failure is harmless. *See id*. at 13–14.

The Court finds that PNC timely disclosed this information. USAA's claim that PNC "buried" these documents is exaggerated. PNC produced these documents in a native format during the window of fact discovery. The Court does not see a basis to exclude Dr. Vellturo's testimony on this basis. If USAA received many unreadable files, as it asserts—that USAA had reason to believe were significant—USAA cannot wait until *Daubert* motion practice to complain. If these documents were produced in a format USAA could not view or utilize, USAA should have advised PNC of this issue during discovery—or filed an appropriate discovery motion.

### 2. Dr. Vellturo's Cost Savings Analysis

USAA argues that Dr. Vellturo's cost savings calculations should be stricken because he relies on inconsistent testimony from one of PNC's corporate representatives. Dkt. No. 316 at 14–15. USAA also argues that certain documents Dr. Vellturo relied upon were created for this litigation and should be stricken. *Id*. at 14–15.

PNC argues that the corporate representative testimony cited by USAA is consistent, and that USAA merely misconstrues the statements. Dkt. No. 367 at 15. PNC also argues Dr. Vellturo's testimony is independent of whether his opinions are supported. Dkt. No. 367 at 16 (citing Fed. R. Evid. 703).

The Court agrees with PNC. After review of PNC's representative's testimony, it is not inconsistent. USAA merely conflates the representative's statements about separate documents.

8

*Compare* Dkt. No. 316-14 at 4 *with* Dkt. No. 367-13 at 6–12; *see also* Dkt. No. 367-11. Further, Dr. Vellturo may rely on inadmissible documents to render an opinion. Fed. R. Evid. 703. Whether the underlying document is admissible under the business record exception is a separate matter.

### E.    Dr. Vellturo's Patent Citation Analysis

USAA moves to exclude Dr. Vellturo's patent citation analysis used to apportion the value of the Asserted Patents in the Bremer license (which includes the Asserted Patents). Dkt. No. 316 at 16. USAA attacks Dr. Vellturo's reliance on the "Schankerman" article that discusses regression analysis. Dkt. No. 316-2 ¶¶ 402, 409. USAA's main criticism is that the "Schankerman" article, which analyzes the value of patent rights in France as the input for the regression analysis, is not reliable enough for Dr. Vellturo's analysis. Dkt. No. 316 at 16–17. USAA further criticizes Dr. Vellturo's citation analysis as not tethered to the facts of the case. *Id*. at 17.

PNC counters that many courts, including this Court, have found forward citation analysis to be a sufficiently acceptable method of estimating value. Dkt. No. 367 at 17. PNC submits that USAA's critiques go to the weight of Dr. Vellturo's testimony, not admissibility. *Id*. at 18–19.

The substance of USAA's complaints goes to the weight of Dr. Vellturo's testimony, not its admissibility. This Court, and others, have stated that patent citation analysis can be a sufficiently reliable method. *See Better Mouse Co. v. SteelSeries ApS*, 2016 WL 3611528, at *3 (E.D. Tex. Jan. 5, 2016); *Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, 2019 WL 4198194, *2-3 (D. Del. Sept. 4, 2019); *Odyssey Wireless, Inc. v. Apple Inc.*, 2016 WL 7644790, at *12 & n.15 (S.D. Cal. Sept. 14, 2016); *In re Innovatio IP Ventures, LLC Patent Litig.*, 2013 WL 5593609, at *43 (N.D. Ill. Oct. 3, 2013). It is used by experts in the field to determine patent value. Dr. Vellturo has submitted publications that show how and why he conducted his analysis. USAA can use this

9

information to challenge any perceived weaknesses in Dr. Vellturo's analysis. *See Daubert*, 509 U.S. at 569.

Furthermore, Dr. Vellturo's analysis is sufficiently tied to the facts of the case. Dr. Vellturo's apportionment is based on a portfolio license and each of the Asserted Patents was part of the agreement. That is very much tied to the facts of the case, particularly considering both damages experts offer opinions on the Bremer License (though both believe adjustment is necessary). *Compare* Dkt. No. 331-1 ¶¶ 328–38 *with* Dkt. No. 316-2 ¶¶ 401–10.

F. **Dr. Vellturo's Statement on the Law**

USAA seeks to preclude Dr. Vellturo from offering certain opinions because they are a misstatement of the pertinent law. Dkt. No. 316 at 18–19. USAA moves to strike opinions relating to the allegedly pre-existing features of the accused product, a statement about MRDC features, and Dr. Vellturo's opinions about Dr. Kia's opinions. Dkt. No. 316 at 18–19; Dkt. No. 316-2 ¶¶ 59–60, 91, 61–71.

PNC argues that each of the opinions that USAA states are unsupported, or are otherwise excludable, are relevant and faithfully apply the law. Dkt. No. 367 at 19–20.

Each statement that USAA asserts is a misstatement of the applicable law is taken out of context. USAA seeks to divorce each paragraph, and even sentences within a paragraph, from the overall context of the opinion being offered. For example, Dr. Vellturo discusses (in paragraphs 59 and 60) features that were conventional and known in the art to separate out the novel aspects of the patented invention. *See* Dkt. No. 316-2 ¶¶ 59–60. USAA claims these statements are improper because "Supreme Court and Federal Circuit cases note that novel and nonobvious inventions often are only a combination of known individual features." Dkt. No. 316 at 19–20 (citing *Veritas Techs. LLC v. Veeam Software Corp.*, 835 F.3d 1406, 1414–15 (Fed. Cir. 2016)).

Dr. Vellturo is merely trying to separate the incremental benefit from the patented invention, which is something Dr. Vellturo may do. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 66-67 (Fed. Cir. 2012). USAA's contention that Dr. Vellturo is being overly reductive is an issue of credibility and weight, not admissibility. USAA's other arguments fail for similar reasons.

### G.  Dr. Vellturo's Discussion of Unavailable Materials

USAA argues that Dr. Vellturo should be precluded from stating that he was not able to access expert reports from Wells Fargo because the Court ruled that the expert reports from the *Wells Fargo* litigation were not discoverable. Dkt. No. 316 at 19.

PNC argues that if information about the Wells Fargo litigation is allowed to be discussed at trial, then "PNC must be able to explain the context, including the limits on its ability to understand and distinguish the relevant facts." Dkt. No. 367 at 20.

Dr. Vellturo will be able to state that he did not have access to certain *Wells Fargo* materials but he will not be permitted to state, or otherwise suggest, that either Wells Fargo or USAA were responsible for preventing access to those materials.

### IV.  CONCLUSION

Accordingly, the Motion is **DENIED** except as expressly stated herein.

**SIGNED this 24th day of April, 2022.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE