**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 2:20-cv-00319-JRG-RSP |
| PNC BANK N.A., | § § | (LEAD CASE) |
| *Defendant.* | § § § § | |

**MEMORANDUM OPINION**

Before the Court is the Motion to Strike Portions of the Expert Report of Omid Kia filed by Plaintiff United Services Automobile Association. Dkt. No. 314. USAA moves the Court to strike certain opinions of Dr. Kia, Defendant's invalidity expert. *Id*. The Motion is **GRANTED IN PART**.

## I.      BACKGROUND

Plaintiff United Services Automobile Association  alleges that Defendant PNC Bank N.A. infringes six patents: U.S. Patent Nos. 10,482,432 ("'432 Patent"), 10,621,559 ("'559 Patent"), 10,013,681 ("'681 Patent"), 10,013,605 ("'605 Patent"), 8,977,571 ("'571 Patent"), and 8,699,779 ("'779 Patent") (collectively, the "Asserted Patents").

On November 24, 2021, PNC served Dr. Kia's expert report on invalidity. *See* Dkt. No. 314-2 at 2.[1] USAA now moves to exclude certain opinions of Dr. Kia. Dkt. No. 314.

## II.      LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine

---

[1] Citations are to document numbers and page numbers assigned through ECF.

a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Federal Rule of Evidence 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper

[under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). Accordingly, "a district court may exclude evidence that is based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015).

As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## III.   ANALYSIS

### A.   Scope of PNC's Invalidity Contentions

USAA alleges a number of the opinions Dr. Kia offers are outside the scope of PNC's invalidity contentions. *See* Dkt. No. 314 at 6–7; Dkt. No. 314-2 ¶¶ 101–26, 96–97, 125, 127–28, 415–93. USAA's arguments can be put into two categories: the invalidity contentions (1) fail to disclose Dr. Kia's non-enablement opinions and (2) fail to disclose rebuttal evidence for secondary considerations of non-obviousness.

#### 1.   Non-Enablement Disclosure[2]

USAA generally argues that, although PNC made several non-enablement theory disclosures in its invalidity contentions, PNC did not sufficiently disclose which non-enablement theories PNC would be asserting against which Asserted Patent. *Id.* at 6. For instance, USAA states

---

[2] The Court notes that PNC has withdrawn ¶ 125 from Dr. Kia's report. Dkt. No. 388 at 6. Accordingly, the Motion with respect to ¶ 125 is **GRANTED**.

that Dr. Kia's image quality non-enablement theory should be stricken with respect to the '432 Patent because PNC did not expressly identify this theory for the '432 Patent. However, this same theory was disclosed for the '681 Patent and '559 Patent. Dkt. No. 426 at 2.

PNC responds that its "identification of the relevant claim terms put USAA on notice of the enablement defense." Dkt. No. 388 at 5–6 (citing *Ultravision Technologies, LLC, v. Lamar Advertising Co.*, No. 16-cv-374-JRG-RSP, 2017 WL 3836139, at *2 (E.D. Tex. Apr. 18, 2017)).

The Court agrees with PNC. "The purpose of both expert reports and [] contentions is to provide the opposing party notice." *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-CV-134-JRG-RSP, 2017 U.S. Dist. LEXIS 80578, 2017 WL 2869331, at *1 (E.D. Tex. Apr. 27, 2017). PNC's invalidity contentions sufficiently put USAA on notice as to PNC's enablement positions and allowed for USAA "to engage in meaningful discovery and to prepare its case." *Ultravision*, 2017 WL 3836139 at *2. This is particularly true given the relationship between the '432 Patent and the '681 Patent and '559 Patent. Thus, the Court does not strike these opinions.

### 2.    Secondary Considerations Disclosure

USAA argues "PNC did not disclose any evidence supporting its secondary considerations arguments in its invalidity contentions" or interrogatory response. Dkt. No. 314 at 6–7. USAA argues that since PNC bears the burden of proving invalidity it was obligated to disclose its secondary considerations positions in its invalidity contentions or interrogatory responses. *Id.* USAA also accuses PNC of "sandbagging." Dkt. No. 426 at 3.

PNC counters that the Local Rules do not "require the production of all evidence that may be relevant in any way to the issue of obviousness, such as . . . evidence bearing on any secondary considerations." Dkt. No. 388 at 7 (internal quotations omitted) (quoting *Mobility Workx, LLC v. Cellco P'ship*, No. 4:17-cv-872-ALM, 2019 WL 5721814, at *20 (E.D. Tex. Nov. 5, 2019)).

The Local Rule governing invalidity contentions "does not expressly, or by implication, require the production of all evidence that may be relevant in any way to the issue of obviousness, such as . . . any secondary considerations that the patentee may invoke to help rebut the defendant's obviousness case." *Allergan, Inc. v. Teva Pharm. USA, Inc., et al.*, No. 2:15-cv-1455-WCB, Dkt. No. 395 at 5 (E.D. Tex. Aug. 3, 2017). Defendants may rely on evidence that was "not included in their invalidity contentions when the [evidence was] not proposed as invalidating prior art, but were directed to other purposes, such as . . . rebutting the patentee's secondary consideration evidence." *Allergan, Inc. v. Teva Pharm. USA, Inc., et al.*, No. 2:15-cv-1455-WCB, 2017 U.S. Dist. LEXIS 225041, *16-19 (E.D. Tex. Aug. 3, 2017) (collecting cases); *see also Mobility Workx*, 2019 WL 5721814, at *20. Here, USAA has not presented the Court any compelling reason to depart from the Court's typical practice.[3]

## B.    Non-Enablement Evidence

USAA seeks to preclude Dr. Kia from discussing "USAA's and Mitek's efforts to launch commercial products as purportedly evidencing non-enablement." Dkt. No. 314 at 7; *see, e.g.*, Dkt. No. 314-2 ¶¶ 122–23, 138. USAA asserts that Dr. Kia's "statements are not helpful to the trier of fact . . . because they do not track the Federal Circuit standard for enablement." *Id*. USAA contends that any evidence "based on the effort it would take, or actually did take, to perfect a particular commercial product" is irrelevant to a non-enablement defense. *Id.* (citing *CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1339 (Fed. Cir. 2003).

USAA misunderstands *CFMT*. In *CFMT*, the Federal Court criticized a district court's finding of non-enablement based on the undue experimentation needed to implement a particular

---

[3] To avoid precisely these disputes, it is best practice for parties to include all references related to obviousness in their invalidity contentions. *See e.g. Better Mouse Co. v. SteelSeries ApS*, No. 2:14-cv-198-RSP, 2016 WL 3611560, at *1 (E.D. Tex. Jan. 5, 2016).

commercial product. *CFMT, Inc. v. YieldUp Int'l Corp.*, 349 F.3d 1333, 1337 (Fed. Cir. 2003) ("At the outset, the district court erred in requiring that the patent disclosures enable a single embodiment, the Full Flow system, to meet TI's commercial standards. . . . Title 35 does not require that a patent disclosure enable one of ordinary skill in the art to make and use a perfected, commercially viable embodiment absent a claim limitation to that effect."). USAA's efforts to make a "perfected, commercially viable embodiment" may not be dispositive of whether the Asserted Patents are enabled, but that is much different than whether USAA's efforts to make its own application are *relevant* to whether the Asserted Patents are enabled. Dr. Kia's evidence for non-enablement is not solely USAA's efforts to make a commercial product, it is merely one piece of the evidence that Dr. Kia uses to support his opinion.

### C.    Dr. Kia's Opinion on "capture"

USAA asserts Dr. Kia's opinions related to the Nepomniachtchi reference are flawed in view of the Court's claim construction. Dkt. No. 314 at 8; Dkt. No. 314-2 ₱ 350. USAA argues that Dr. Kia improperly applied the Court's claim construction of "capture" in order to opine that the Nepomniachtchi reference invalidates the '571 Patent and '779 Patent. Dkt. No. 314 at 8 (citing Dkt. No. 314-2 ₱₱ 349–50).

Dr. Kia does not improperly apply the Court's construction. Rather, he is discussing the way in which he believes "capture" was used in the prior art reference. *See* Dkt. No. 314-2 ₱₱ 349–50 ("I understand that the Court rejected PNC's proposed construction, and construed capture as having a "plain meaning." . . . Nepomniachtchi here appears to be using the word 'capture' in accordance with PNC's proposed construction (record in memory the light entering the camera), rather than the meaning that the Court has given that word in the context of the '571 patent (perform further processing on an image that was found to pass the monitoring criteria). Therefore,

in my opinion, Nepomniachtchi anticipates the asserted claims of the '571 patent under the Court's explanation of the term 'capture.'"). Although Dr. Kia cannot discuss either party's previously rejected claim construction arguments in the presence of the jury (and PNC has assured the Court that he will not)[4], it was not improper for him to address this in his report.

### D.    Dr. Kia's Discussion on the Prosecution History of the Asserted Patents[5]

#### 1.    Lack of Written Description in the '559 Patent (¶¶ 131, 133–34)

Paragraphs 131, 133, and 134 of Dr. Kia's report are not improper. *Id*. at ¶¶ 131, 133–34. USAA's arguments were principally directed to paragraph 132, which PNC has withdrawn. Dkt. No. 314 at 9–10.   The Court sees no basis to exclude Dr. Kia's opinions contained within paragraphs 131, 133, and 134.

#### 2.    Characterization of USAA's Patent Prosecution Practice

USAA contends that Dr. Kia will offer opinions suggesting that USAA acted in bad faith, or is otherwise a bad actor, as a result of certain choices USAA made during the prosecution of certain Asserted Patents. *Id.* at 10 (citing Dkt. No. 314-2 ¶¶ 74–75, n.25)

Under Fed. R. Evid. 403 and the Order on Plaintiff's MIL No. 20, Dr. Kia will be prevented from suggesting to the jury that USAA was acting secretively, or otherwise improperly as result of restricting publication of the patent applications. *See Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988). Thus, Dr. Kia is prohibited from suggesting that there was anything "secretive" or "unusual" about USAA's continuing applications. However, Dr. Kia may offer his opinions about the history of the Asserted Patents. *See* Dkt. No. 314-2 ¶¶ 74–75, n.25.

---

[4] Dkt. No. 388 at 10.
[5] The Court notes that PNC has withdrawn ¶ 132 from Dr. Kia's report. Dkt. No. 388 at 19. Accordingly, the Motion with respect to ¶ 132 is **GRANTED**.

### E.    Dr. Kia's Use of Product Manuals[6]

USAA moves the Court to exclude certain opinions that may rely on inadmissible evidence, specifically phone manuals and ImageNet manuals. *See* Dkt. No. 314 at 12–13. USAA makes two specific points why the opinions offered by Dr. Kia should be stricken: (1) inauthenticity of the manuals and (2) inability to publish manuals. *Id.*

Dr. Kia's opinions will not be struck. Even if the Court determines the underlying documents are inadmissible, this does not render Dr. Kia's opinion inadmissible as long as the documents are typically relied upon by experts in Dr. Kia's field. *See* Fed. R. Evid. 703. Manuals at issue[7] would be the type of documents the Court would reasonably expect an invalidity expert would rely upon in rendering their opinion. *See Fujifilm Corp. v. Motorola Mobility LLC*, 182 F. Supp. 3d 1014, 1028-1029 (N.D. Cal 2016) (citing *Sonoscan, Inc. v. Sonotek, Inc.*, 936 F.2d 1261 (Fed. Cir. 1991)). Therefore, the Court does not strike Dr. Kia's opinions but he is not permitted to read from them unless they have been admitted into evidence.[8]

Finally, USAA points to "discovery shenanigans" as a basis to exclude certain opinions of Dr. Kia, but the Court is not persuaded that any such "discovery shenanigans" took place.

### F.    Dr. Kia's Discussion of BankServ Documents

USAA asserts that the BankServ documents relied upon by Dr. Kia cannot be considered prior art because "Dr. Kia admits that all BankServ documentation he relies on in his report post-

---

[6] The Court notes that "PNC withdraws Dr. Kia's reliance on the non-"beta release" ImageNet documents excerpted at USAA Exs. 15-17 and 22 as reflecting the operation of the prior art ImageNet product." Dkt. No. 388 at 13 n.2. Accordingly, the Motion with respect to "Dr. Kia's reliance on the non-"beta release" ImageNet documents excerpted at USAA Exs. 15-17 and 22 as reflecting the operation of the prior art ImageNet product" is **GRANTED**.

[7] There appears to be some factual dispute about whether the documents are indeed prior art, the jury will have an opportunity to assess these documents and determine whether they are indeed prior art and whether they are invalidating; it is not within the Court's purview to make such factual findings.

[8] The Court notes that this ruling does not disturb any motions *in limine* or evidentiary rulings. Furthermore, the Court's ruling cannot serve as a basis for allowing these manuals as evidence. The party sponsoring the evidence will need to overcome any evidentiary objections in order to pre-admit these manuals.

dates the pilot program and post-dates the filing of the patents-in-suit." Dkt. No. 314 at 16. USAA criticizes Dr. Kia's reliance on the testimony of a PNC employee to corroborate that "the features and functionalities of the pilot system" (which is the allegedly invalidating prior art) are the same as the features in the "full launch system."*Id.*

Again, USAA is conflating the sufficiency of the Dr. Kia's testimony with its admissibility. Dr. Kia's opinion that the pilot system had the same functionalities and features as the full-launch system are sufficiently supported by the testimony of PNCs' employee. Although USAA contends that the PNC employee's testimony is not sufficient to support Dr. Kia's opinion, the Court finds there is a sufficient basis for Dr. Kia's opinions. *See* Dkt. No. 388-18 at 15–17.

### G.     Dr. Kia's Discussion of Unelected Prior Art

USAA argues that Dr. Kia is improperly using unelected prior art to infer certain claim limitations are obvious. Dkt. No. 314 at 17–19. In particular, USAA argues that "it is improper to use unelected art to supply elements of the claims." *Id.* at 18. In other words, USAA argues that the opinions that Dr. Kia offers on the unelected prior art go beyond what would normally be considered acceptable (i.e. to show the state of the art or secondary considerations). *Id.* (citing *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00055-JRG-RSP, 2017 WL 4619791, at *2 (E.D. Tex. Oct. 16, 2017*); ContentGuard Holdings, Inc. v Amazon.com, Inc.*, No. 2:13-CV-1112-JRG, 2015 WL 4944514, at *2 (E.D. Tex. Aug. 19, 2015)).

PNC responds that Dr. Kia "properly cites certain references beyond those elected by PNC to show that the state of the art existing at the time of the alleged inventions would have supplied a motivation to combine the elected references or to rebut arguments on secondary considerations." Dkt. No. 388 at 16. PNC alleges "[t]hese factors are not subject to the Court's limit on election of anticipation or obviousness references disclosing elements of the claims." Dkt. No. 314 at 16.

PNC is correct. This Court has previously stated:

> [defendants are] otherwise not precluded from relying on unelected prior art, including without limitation, in the context of: (1) background material relevant to the technology at issue; (2) state of the art; (3) establishing what one of skill in the art would have known at the time of the invention; (4) *supplying motivation or expectation of success with respect to an elected prior art combination*; or (5) demonstrating objective evidence of obviousness such as simultaneous invention.

*Arthrex, Inc. v. Smith & Nephew*, No. 2:15-cv-1047-RSP, 2016 U.S. Dist. LEXIS 203781, *9-10 (E.D. Tex. Nov. 30, 2016) (emphasis added). After review of the opinions offered by Dr. Kia, it is clear that Dr. Kia offers these opinions for one or more the permitted uses of unelected prior art.

## H.     Dr. Kia's Reliance on the Opinions of Other Experts

USAA states "[a]s discussed in the motion to strike the opening report of Dr. Vellturo, Dr. Kia's report adopts sections of Mr. Webster's report wholesale. For the reasons set out in the motion to strike Dr. Vellturo's opening report, Dr. Kia should not be permitted to parrot Mr. Webster's opinions." Dkt. No. 314 at 19.

Generally, experts are permitted to rely on other experts, particularly to fill gaps in knowledge (e.g. a technical expert explaining to a damages expert whether a particular technology is or is not comparable). *See also Chrimar Sys., Inc. v. ADTRAN, Inc.*, No. 15-cv-618-JRG, 2016 WL 11746545, at *2 (E.D. Tex. Nov. 7, 2016) (it is "permissible, for experts to rely on other experts in rendering their opinions . . . ."). Obviously, Dr. Kia will be precluded from verbatim reading of hearsay documents to the jury.

## I.     Dr. Kia's Discussion of USAA's Prior § 101 Statements

USAA moves to strike certain opinions by Dr. Kia that were made by USAA in previous litigation. Dkt. No. 314 at 19; Dkt. No. 314-2 ¶¶ 101–26, 138–73. USAA contends "Dr. Kia's gloss on what USAA said in a prior case regarding section 101 is irrelevant to enablement, which simply

asks whether the scope of the claimed invention, as construed by the Court, could be produced by a POSA without undue experimentation." Dkt. No. 314 at 20.

PNC responds that "USAA's argument fails, because Dr. Kia is merely showing that he applied the claim terms in a manner fully consistent with the interpretation USAA has advanced before this Court with regard to the same patents." Dkt. No. 388 at 19.  Dr. Kia has offered a "conditional" approach to proving invalidity based on previous statements made by USAA. *See, e.g.*, Dkt. No. 314-2 ¶¶ 102–03. Per Federal Circuit precedent, that is an acceptable method of assessing invalidity. *See Longhorn HD LLC. v. NetScout Systems, Inc.*, No. 2:20-cv-00349-JRG-RSP, Dkt. No. 127 at 3–4 (E.D. Tex. Mar. 30, 2022) (citing *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742-43 (Fed. Cir. 2018)).

### J.      Dr. Kia's Opinion of "second processing circuitry"

As discussed above, the Court finds that the opinions expressed in paragraphs 131, 133, and 134 of Dr. Kia's report are permissible.

## IV.     CONCLUSION

Accordingly, the Motion is **GRANTED IN PART**.  The opinions expressed by Dr. Kia in paragraphs 125 and 132; as well as Dr. Kia's opinions that the "non-'beta release'" ImageNet documents reflect the operation of the prior art ImageNet product are **STRICKEN**. In all other respects, the Motion is **DENIED**.

**SIGNED this 29th day of April, 2022.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE