THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, | § § § § § § § § § § § § | |
| *Plaintiff*, | | |
| v. | | CASE NO. 2:20-CV-00319-JRG-RSP (LEAD CASE) |
| PNC BANK N.A., | | |
| *Defendant*. | | |

## REPORT AND RECOMMENDATION AND ORDER

Before the Court are three motions all related to 35 U.S.C. § 101:

- Motion for Summary Judgment Dismissing PNC's Patent-Eligibility Defenses filed by Plaintiff United Services Automobile Association ("USAA"), Dkt. No. 323;
- Motion For Summary Judgment Of Lack Of Patent Eligibility Under 35 U.S.C. § 101 filed by Defendant PNC Bank N.A. ("PNC"), Dkt. No. 322; and
- Motion to Strike Portions of the Opening Expert Report of Mark Webster, Dkt. No. 310.

Having reviewed the briefing, it is recommended that USAA's Motion for Summary Judgment be **GRANTED**. (Dkt. No. 323). In light of this, the Court recommends denying as moot PNC's Motion for Summary Judgment (Dkt. No. 322). Finally, most of USAA's Motion to Strike is rendered moot by granting USAA's Motion for Summary Judgment, but the Court **GRANTS IN PART** other portions of the Motion to Strike (Dkt. No. 310).

I. Background

In this suit, USAA alleges that PNC infringes U.S. Patent Nos. 10,482,432 ("'432 Patent"), 10,621,559 ("'559 Patent"), 10,013,681 ("'681 Patent"), 10,013,605 ("'605 Patent"), 8,977,571 ("'571 Patent"), and 8,699,779 ("'779 Patent") (collectively, the "Asserted Patents"). The Asserted Patents can be divided into two groups based on the priority date and the technology of the patents:

the first group, referred to as the "MRDC Patents" consists of the '605, '681, '432, and '559 patents, which all claim priority to applications filed on October 31, 2006. Dkt. No. 323 at 3-4. Three of the MRDC patents—the '681, '432, and '559 patents—are continuations of the same application (No. 11/591,247) and have substantially identical specifications, and the remaining patent—the '605 Patent—originates from a related application (No. 11/590,974), which has a similar specification. *Id.* at 4.

The second group of patents, referred to as the "Autocapture Patents" consists of the '571 and '779 Patents, both filed in August 2009 and relating to improvements to USAA's MRDC technology. *Id.* at 5.

Three of the Asserted Patents have been involved in previous litigation before this Court, and in each case, the Court addressed the eligibility of the claims under § 101. The claims of the '605 and '681 patents were found to be directed to eligible subject matter by this Court. *United Servs. Auto. Assoc. v. Wells Fargo Bank, N.A.*, No. 2:18-cv-366-JRG-RSP, Dkt. No. 182, (E.D. Tex. Dec. 20, 2019), *R&R adopted id.* Dkt. No. 239 (hereinafter "*Wells Fargo II*"). Likewise, the claims of the '571 Patent were also found to be directed to eligible subject matter. *United Servs. Auto Assoc. v. Wells Fargo Bank, N.A.*, 414 F.Supp.3d 947 (E.D. Tex. 2019) (hereinafter "*Wells Fargo I*").

In addition to district court litigation, the '681 Patent was the subject of a Covered Business Method review, where the PTAB denied institution based upon the PTAB's finding that Claim 1 of the '681 Patent recites "technological features that solve a technical problem using a technical solution by capturing electronic images of a check using a digital camera and a portable device for remote deposit." *Wells Fargo Bank, N.A. v. United Servs. Auto Assoc.*, CMB2019-00028, Decision Denying Institution, Paper 14, at 27 (P.T.A.B. Oct. 1, 2019). The '571 and '779 Patents were also

the subject of Covered Business Method reviews, and the PTAB denied institution because the PTAB found the claims of both patents recited a technological solution. *Wells Fargo Bank, N.A. v. United Servs. Auto Assoc.*, CMB2019-00004, Decision Denying Institution, Paper 22, at 28-29 (P.T.A.B. May 15, 2019); *Wells Fargo Bank, N.A. v. United Servs. Auto Assoc.*, CMB2019-00005, Decision Denying Institution, Paper 25, at 22 (P.T.A.B. Jun. 3, 2019).

## II. Legal Standard

### a. Summary Judgment

Summary judgment should be granted if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-55 (1986). A "material fact" is one that "might affect the outcome" of the case, and a dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Any evidence must be viewed in the light most favorable to the nonmovant. *See id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). "If the moving party does not have the ultimate burden of persuasion at trial, the party 'must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Intellectual Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-cv-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000)).

### b. 35 U.S.C. § 101

The Court determines whether patent claims cover ineligible subject matter using a two-step analytical framework set out by the Supreme Court in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*

3

*et al.*, 573 U.S. 208 (2014). At the first step, the Court evaluates whether the claims are directed to ineligible subject matter, such as an abstract idea. *Id.* at 217. To do so, the Court looks to the claims' "character as a whole." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Although all claims embody abstract ideas and other ineligible subject matter at some level, the Court's task is to examine "whether the claims [] focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). Furthermore, the step one analysis must be "directly tethered to the claim language" and avoid recasting specific elements "at a high level of abstraction." *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019). If a Court determines that the claims are not directed to an abstract idea, the claims are patent-eligible and there is no need to proceed to *Alice* step two. *See, e.g., SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1304 (Fed. Cir. 2019).

At *Alice* step two, if the claims are directed to ineligible subject matter, the Court then determines whether the claims contain an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217–18 (internal citations and quotes omitted). "[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces," *BASCOM Glob. Internet Svcs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349–50 (Fed. Cir. 2016), but must be more than mere "'well-understood, routine, conventional activit[ies].'" *Alice*, 573 U.S. at 225 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)).

4

### III.   Analysis

#### a.  USAA's Motion for Summary Judgment

##### i.  MRDC Patents

USAA argues that PNC over-generalized the claims and makes the same arguments that were found unpersuasive in *Wells Fargo II*. Therefore, the Court should again find the claims of the MRDC Patents eligible at *Alice* step 1. Dkt. No. 323 at 6-13. In *Wells Fargo II*, the Court found that the claims of the patents-in-suit, which included the '605 and '681 patents, were directed towards inventions that "improve specialized check processing machines by enabling the function of those machines to be performed without specialized equipment." *Wells Fargo II*, Dkt. No. 182 at 13. As stated in the specification of the '605 Patent, "a particular advantage of embodiments of the invention is its ability to operate in conjunction with electronics that today's consumers actually own." *Id.* Furthermore, the Court found that the claims "improve check depositing technology, not simply by reciting check deposit using a computer, but by enabling, via enumerated specific steps, to deposit checks remotely and quickly without the need for specialized equipment . . . ." *Id*. at 13-14.

Relying on this Court's decision in *Wells Fargo II*, USAA argues that the claims of the MRDC patents "claim a technological solution to specific problems with prior art methods of check deposit, which involved paper checks or specialized check equipment that was often very expensive and was not readily available to ordinary consumers." Dkt. No. 323 at 7. Citing to the specification of the '681 Patent, the patents describe that the prior art required specialized equipment to create and process an image of check that satisfied the requirements of the Check 21 Act. *Id.* To solve this problem, the claimed system turns "an ordinary, general-purpose computer

into a device capable of capturing and processing check images that meet the technical image quality requirements for check deposit." *Id.* at 8.

In response, PNC generally argues that the claims of the MRDC Patents do not claim a specific technical improvement that solves any technological problem. Dkt. No. 385 at 1-4. According to PNC, "substituting a consumer device for a specialized device is a business strategy, not a technical solution." *Id.* at 2. PNC further argues that the claims do not recite any specific improvements to check processing equipment, nor any improvements to the consumer computers and cameras that replace the "specialized" scanner and that the specification fails to clearly identify the technological problem that the claims allegedly solve. *Id.* at 3-4.

In addition to these general challenges to the claims, PNC argues specifically that two claimed features are directed towards ineligible subject matter themselves and therefore cannot confer eligibly: (1) user instructions for taking a photo of a check and (2) the use of Optical Character Recognition (OCR). *Id.* at 5-11. Beginning with user instructions, PNC, citing Claim 1 of the '605 Patent, argues that the claims merely recite, at a high level, the functional steps of displaying an image with static instructions on a screen to guide the user in taking a photo of a check and then having the user review that image of the check *Id.* 6-7. PNC argues that not only are the user instructions ineligible subject matter but also that the user instructions are claimed at such a high level that they cannot provide a specific means of solving a technological problem.

Next, PNC argues the claims' use of OCR cannot confer eligibility. PNC states that the claims' use of OCR to extract specific information from the image of a check has been found ineligible by the Federal Circuit: "Federal Circuit has already held that extracting and processing information from documents such as checks using OCR is an implementation of the abstract idea of collecting, recognizing, and storing data." Dkt. No. 385 at 9 (citing *Content Extraction and*

6

*Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1345 (Fed. Cir. 2014)). Furthermore, because the specification "merely discusses information on the check that OCR might be used to read, without any suggestion that the invention advances image acquisition technology or OCR technology in any way," PNC argues that "there is no basis to distinguish the claimed OCR step from the OCR step already found abstract in *Content Extraction*." Dkt. No. 385 at 9.

PNC also attempts to distinguish this case from *Wells Fargo II*, arguing that the Court's ruling in *Wells Fargo II* "is based on an incorrect factual assumption, namely, that the prior art specialized check scanning equipment didn't already routinely use OCR, in addition to magnetic readers." *Id.* at 9-10. PNC then proceeds to cite evidence showing OCR was routinely used prior to the priority date of the MRDC Patents. *Id.*

The Court finds that PNC's arguments are unpersuasive and that the claims, as a whole, are directed towards eligible subject matter. As an initial matter, the only claims of the MRDC Patents specifically addressed in PNC's arguments are Claim 1 of the '605 Patent and the Claim 1 of '681 Patent. The Court finds that these claims are representative and will specifically address these claims. Claim 1 of the '605 Patent is as follows:

> An image capture and processing system for use with a digital camera, the image capture and processing system comprising:
>   a portable device comprising a general purpose computer including a processor coupled to a memory, the memory storing:
>     camera software comprising instructions that, when executed by the processor, control the digital camera;
>     a downloaded software component configured to control the camera software and to manage capturing electronic images, the software component comprising instructions that, when executed by the processor, cause the portable device to perform operations including:
>       instructing a user of the portable device to place a check in front of the digital camera and have the digital camera capture electronic images of front and back sides of the check;
>       displaying an instruction on a display of the portable device to assist the user in having the digital camera capture the electronic images of the check;

>> assisting the user as to an orientation for capturing the electronic images of the check;
>> presenting the electronic images of the check to the user after the digital camera captures the electronic images;
>> transmitting, using a wireless network, a copy of the electronic images over a public electronic communications network from the portable device, wherein the transmitted copy of the electronic images is a modified version of the electronic images captured with the digital camera, the modified version having a different electronic format than the images captured with the digital camera; and
>> submitting the check for deposit after the system authenticates the user and after presenting the electronic images of the check to the user;
> a plurality of processors coupled to a plurality of memory devices storing instructions that, when each instruction of the instructions is executed by a processor of the plurality of processors coupled to a memory device of the plurality of memory devices storing that instruction, cause the system to perform additional operations including:
>> confirming that the deposit can go forward after performing an optical character recognition on the check, the optical character recognition including determining an amount of the check, comparing the determined amount to an amount entered by the user into the portable device, and reading a MICR line of the check;
>> initiating the deposit after the confirming; and
>> generating a log file for the deposit, the log file including a bi-tonal image of the check; and
> another computer, remote from the portable device, comprising a processor coupled to a memory storing instructions that, when executed by the processor, cause the other computer to update a balance to reflect the amount of the check submitted for deposit by the portable device.

The Court finds that this claim is directed towards eligible subject matter, because as this Court stated in *Wells Fargo II*, the claim "improve[s] specialized check processing machines by enabling the function of those machines to be performed without specialized equipment." *Wells Fargo II*, Dkt. No. 182 at 13. This is shown by the claim specifically reciting a "general purpose computer" and then providing features that enable the recited general purpose computer to perform the same functions as the specialized check processing machines of the prior art.

Similarly, the Court finds that Claim 1 of the '681 Patent enables a general purpose computer to perform functions previously performed only by specialized check processing machines, with Claim 1 reciting:

> An image capture and processing system for use with optical character recognition (OCR), the image capture and processing system comprising:
> - a portable device comprising a general purpose computer including a processor coupled to a memory, the memory storing:
>   - camera software comprising instructions that, when executed by the processor, control a digital camera;
>   - a downloaded software component to control the camera software and to handle capturing electronic images, the software component comprising instructions that, when executed by the processor, cause the portable device to perform operations including:
>     - instructing a user of the portable device to have the digital camera capture electronic images of front and back sides of a check;
>     - displaying a graphical illustration to assist the user in having the digital camera capture the electronic images of the check;
>     - giving an instruction to assist the user in placing the digital camera at a proper distance away from the check for capturing the electronic images;
>     - presenting the electronic images of the check to the user after the electronic images are captured;
>     - confirming that a deposit can go forward after optical character recognition (OCR) is performed on the check, the optical character recognition (OCR) determining an amount of the check, comparing the determined amount to an amount indicated by the user, and reading a Magnetic Ink Character Recognition (MICR) line of the check;
>     - checking for errors; and
>     - using a wireless network, transmitting a copy of the electronic images over a public communications network from the portable device and submitting the check for deposit after the user is authenticated, the electronic images of the check are presented to the user, and the portable device checks for errors;
> - a plurality of processors coupled to a plurality of memory devices storing instructions that, when each instruction of the instructions is executed by a processor of the plurality of processors coupled to a memory device of the plurality of memory devices storing that instruction, cause the system to perform one or more additional operations including generating a log file for the deposit, the log file including a bi-tonal image of the check; and
> - an other computer, remote from the portable device, comprising a processor coupled to a memory storing instructions that, when executed by the processor, cause the other computer to update a balance to reflect the check submitted for deposit by the portable device,

> wherein the transmitted copy of the electronic images is a modified version of the electronic images captured with the digital camera, the modified version having a different electronic format than the images captured with the digital camera.

Although PNC argues that the Court's *Wells Fargo II* decision hinged on the use of OCR technology and that this was error, Dkt. No. 477 at 4, the Court rejects this characterization of the past ruling. Under *Alice* step 1, the Court found that the claims' use of OCR was one of the specific features that enabled general purpose computers to recognize certain check information because the specialized check processing equipment traditionally relied on reading the Magnetic Ink Character Recognition (MICR) lines of the physical checks. *Wells Fargo II*, Dkt. No. 182 at 17. Therefore, the Court did not state that the claims were eligible because it used OCR in a new or innovative way, but rather, the claims' use of OCR was part of the technical solution that imbues a general purpose computer with similar functionality as the specialized devices of the prior art.

Additionally, this argument, which was also raised by Wells Fargo, improperly conflates *Alice* step 2 with step 1. *Id.* at 18-19. Therefore, not only are PNC's arguments an inaccurate characterization of what this Court held in *Wells Fargo II*, but also improper under *Alice* step 1. The arguments also raise issues of anticipation and obviousness even though both of those defenses have recently been abandoned by PNC. In sum, the Court finds, for the same reasons as it did in *Wells Fargo II*, that the claims of the MRDC patents are directed towards eligible subject matter under *Alice* step 1 and our analysis does not proceed to step 2.

### ii. Autocapture Patents

In *Wells Fargo I*, the Court found, and USAA again argues in this case, that the Autocapture Patents claim a technological solution to the problem of "[c]apturing a digital image at a mobile device that allows for subsequent detection and extraction of the information from the digital image . . . ." *Wells Fargo I* at 954. Furthermore, the Court in *Wells Fargo I* found that the

claims of the '571 Patent addressed this problem because the claims were "directed to a machine-implemented process for detecting and capturing an image of sufficient quality to detect and extract relevant information from the image by a machine. Such claims are not directed to an abstract idea, even if the claimed invention replaces a prior human process. This is true because the claims improve that prior process in a technologically inventive way." *Id.* at 957. Thus, USAA argues that the claims of the Autocapture Patents "fall squarely in the class of patents that the Federal Circuit has found eligible because they claim a technological improvement." Dkt. No. 323 at 16.

In response, PNC argues that the claims of the Autocapture Patents are directed towards the abstract idea of comparing an image to some generic criterion and, if the image satisfies the criterion, capturing the image and submitting it for deposit. Furthermore, PNC argues that the claims "merely automate data analysis steps previously performed by humans, without providing any specific technological solution." *Id.* at 12. PNC further argues that the claims do not claim any specific means of implementing the purported technological solution but only claim general results. *Id.* at 13-15. Specifically, PNC argues that, at the "functional level at which the claims are written, the system they describe is insufficient to achieve the claimed result of producing a depositable check image." *Id.* at 14. Finally, PNC argues that many of the features the Court found relevant in *Wells Fargo I* are only contained in the specification and not claimed, and therefore, irrelevant under *Alice* step 1. *Id.* at 16 (citing *Yu v. Apple*, 1 F.4th 1040, 1043-45 (Fed. Cir. 2021)).

The Court finds that PNC arguments are unpersuasive and that the claims, as a whole, are directed towards eligible subject matter. The Court will focus its analysis on Claims 1 and 9 of the '571 Patent and Claim 1 of the '779 Patent because PNC's arguments were directed toward these representative claims. Beginning with '571 Patent, the Claim 1 recites:

> A non-transitory computer-readable medium comprising computer-readable instructions for depositing a check that, when executed by a processor, cause the processor to:
>> monitor an image of the check in a field of view of a camera of a mobile device with respect to a monitoring criterion using an image monitoring and capture module of the mobile device;
>> capture the image of the check with the camera when the image of the check passes the monitoring criterion; and
>> provide the image of the check from the camera to a depository via a communication pathway between the mobile device and the depository.

Claim 9 recites:

> A non-transitory computer-readable medium comprising computer-readable instructions for depositing a check that, when executed by a processor, cause the processor to:
>> initialize a software object on a mobile device operated by a user, the software object configured to communicate with a camera;
>> monitor an image of the check in a field of view of the camera with respect to a monitoring criterion using an image monitoring and capture module associated with the camera;
>> capture the image of the check using the camera when the image of the check in the field of view passes the monitoring criterion; and
>> transmit the image of the check from the mobile device to a deposit system configured to clear the check and deposit funds of the check into a deposit account of the user.

As stated above, the Court found in *Wells Fargo I* that the problem the '571 Patent seeks to solve is capturing images of sufficient quality to allow for subsequent detection and extraction of the information. After reviewing the claims of the '571 Patent, it is clear that the technical solution to this problem is to capture images of checks using a processor configured to automatically capture an image once certain criteria are met.

These criteria are clearly outlined in the specification. As stated in *Wells Fargo I*, the criteria utilized by the processor "are not akin to human photo evaluation" because the process uses information not "readily assessed in real-time by a human user looking at the image on a mobile device screen." *Wells Fargo I* at 954. The Court goes on to cite examples from the specification of the '571 Patent including: "(1) monitoring skew by 'measuring the distance from

the edge(s) of the check 208 in the image to an alignment guide or the edge of the field of view'; (2) measuring the spacing of the MICR line to determine if "the spacing is outside of a certain range corresponding to valid spacing between number[s] in a MICR line"; or (3) generating "one or more histograms" to be "used in the determination of light contrast and/or light brightness monitoring criteria' . . . ." *Id.* at 955 (internal citations omitted). Based on this Court's ruling in *Wells Fargo I* and the above analysis, the Court agrees with USAA that the claims of the '571 Patent clearly fall within the class of inventions the Federal Circuit has found eligible.

  As to the '779 Patent, Claim 1 recites:

> A system for depositing a check, comprising:
>  a mobile device having a camera, a display and a processor, wherein the processor is configured to:
>  project an alignment guide in the display of the mobile device, the display of the mobile device displaying a field of view of the camera;
>  monitor an image of the check that is within the field of view;
>  determine whether the image of the check aligns with the alignment guide;
>  automatically capture the image of the check when the image of the check is determined to align with the alignment guide; and
>  transmit the captured image of the check from the camera to a depository via a communication pathway between the mobile device and the depository.

Although the '779 Patent was not asserted in *Wells Fargo I*, the Court finds that Claim 1 also recites a technological solution to the problem of capturing images of sufficient quality to allow for subsequent detection and extraction of the information. Therefore, for the same reasons stated above, the Court finds that Claim 1 of the '779 Patent is directed towards eligible subject matter.

  As to PNC's argument that the claims recite a system that is "insufficient to achieve the claimed result of producing a depositable check image," the thrust of this argument is that relying on a single criterion, as recited in the claims, does not ensure a depositable check image. Thus, the system is ineligible because it does not provide a specific means of solving the technological problem it seeks to solve. *See* Dkt. No. 477 at 6-7. The Court finds that the claims recite features

with enough specificity to be considered eligible subject matter. PNC's argument appears to conflate eligible subject matter with enablement. The Court sees no reason to require that the claimed processor or system generate a depositable image every time to be considered eligible subject matter.

Finally, PNC's remaining arguments are unpersuasive. PNC argues that the claims of the Autocapture Patents do not require nor claim the "asserted advance" over the prior art and that USAA improperly relies on the specification to provide the necessary details of the advance over the prior art. Dkt. No. 385 at 16 (citing *Yu*, 1 F.4th at 1044-45). However, unlike the claims in *Yu*, the claims of the Autocapture Patents specifically claim the asserted advance over the prior art— the use of monitoring criteria that enable a processor to determine when to automatically capture an image of the check. Therefore, *Yu* does not apply in this case.

Next, PNC argues that the claims are ineligible because they are directed towards data comparison and analysis. Dkt. No. 385 at 17 (citing *Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*, 955 F.3d 971 (Fed. Cir. 2020); *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016)). This argument is unpersuasive because it is predicated on a gross over-generalization of the claims.

Thus, the Court finds, as it did in *Wells Fargo I and II*, that the claims of the Asserted Patents are eligible under *Alice* step 1.

### b. USAA's Motion to Strike

In addition to seeking summary judgment on the issue of § 101, USAA filed a motion to strike portions of Mr. Mark Webster's opening report. Dkt. No. 310. The motion contained four sections, with the first two sections specific to Mr. Webster's opinions concerning *Alice* step 2. *Id.* 1-12. Given the Court's recommendation that summary judgment be granted in favor of USAA at

*Alice* step 1, the Court finds that Mr. Webster's opinions that the claims of the Asserted Patents are ineligible under *Alice* step 2 are no longer relevant. Thus, the Court **STRIKES** ¶¶ 53-88 from Mr. Webster's report due to the fact in these paragraphs he offers opinions as to whether the claimed features are well-understood, routine, and conventional under *Alice* step 2.

The remaining two portions seek to strike specific paragraphs or information contained in Mr. Webster's opening report. In the first remaining portion, USAA seeks to strike ¶¶ 38, 49, which discusses Spanish bank BankInter's use of a mobile check deposit system; ¶ 51, which discusses West Virginia United Federal Credit Union's use of an iPhone-based check scan; and ¶ 50, which discusses a public use of Mitek's ImageNet system. *Id.* at 12-14. USAA argues that these discussions are irrelevant, unfairly prejudicial to USAA, and based on hearsay. *Id.* The Court finds that the opinions as to BankInter are irrelevant because BankInter relates to a system in use solely in a foreign country. Additionally, the Court finds that Mr. Webster's opinions regarding the West Virginia United Federal Credit Union are not sufficiently reliable because of the underlying document's lack of probative value.

Next, after the briefing on this motion to strike concluded, PNC withdrew all invalidity arguments based on §§ 102 or 103. Based on the Court's ruling on § 101 above, the Court finds that the documents related to Mitek's ImageNet system have limited relevant probative value. This limited probative value is outweighed by the risk of jury confusion, especially given that the ImageNet system was previously asserted prior art. Therefore, the Court excludes Mr. Webster's opinions related to the Mitek ImageNet system. Thus, the Court **GRANTS** the motion as to these paragraphs and **STRIKES** ¶¶ 38, 49-51.

In the second remaining portion, USAA argues that PNC will introduce hearsay statements contained in third-party documents through Mr. Webster's testimony. *Id.* at 15. "USAA therefore

respectfully requests that the Court strike and exclude publication of statements from these third party documents unless the document itself is deemed admissible at trial." *Id.* The Court **DENIES** the motion as to these paragraphs. If USAA is believes that PNC introducing hearsay statements into evidence, a contemporaneous objection is the appropriate remedy, not striking Mr. Webster's opinions.

### IV. Conclusion

The Court finds that the asserted claims are eligible at *Alice* step 1. Therefore, the Court recommends **GRANTING** USAA's motion for summary judgment (Dkt. No. 323). By granting USAA's Motion for Summary Judgment, it renders moot PNC's Motion for Summary Judgement and therefore, the Court recommends denying as moot PNC's Motion for Summary Judgement (Dkt. No. 322). Finally, the Court **GRANTS IN PART** USAA's Motion to Strike (Dkt. No. 310).

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report **by no later than noon on May 6, 2022** bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 3rd day of May, 2022.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE