**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, a Texas reciprocal inter-insurance exchange, | ) ) ) | |
| | ) | Civil Action No. 2:20-cv-319-JRG (Lead) |
| Plaintiff, | ) | No. 2:21-cv-110-JRG |
| | ) | |
| vs. | ) | JURY TRIAL DEMANDED |
| | ) | |
| PNC BANK N.A., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## USAA'S RESPONSE TO PNC BANK'S POST-TRIAL OPENING BRIEF ON ITS EQUITABLE DEFENSES

11123830

**TABLE OF CONTENTS**

**Page**

I.    PNC'S PROSECUTION HISTORY ESTOPPEL ARGUMENT IS
      BASELESS...............................................................................................................1

      A.    Prosecution History Estoppel Does Not Apply to "Checking for
            Errors" ..........................................................................................................1

            1.    "Checking for Errors" Was Not Added to Secure the '432
                  Patent And Did Not Narrow The Patent's Scope ............................2

            2.    The Amendment is Tangential to the Alleged Equivalent............................5

      B.    Prosecution History Estoppel Does Not Apply to "Presenting the
            Photos" ..........................................................................................................7

            1.    PNC Has Not Met its Burden to Show A Narrowing
                  Amendment ...............................................................................................7

            2.    The "Presenting" Limitation Was Not Added to Secure the
                  Patent ..................................................................................................10

            3.    Any Amendment Was Tangential...............................................................10

            4.    Even if Prosecution History Estoppel Applied, There Would
                  Be No Basis To Vacate the Verdict ..................................................11

II.   PNC'S UNCLEAN HANDS DEFENSE IS WITHOUT MERIT .......................................16

      A.    USAA Did Not Have A Preservation Obligation From 2014 To
            2017. .............................................................................................................17

      B.    USAA Fully Satisfied Its Preservation Obligation Once A Duty
            Arose..............................................................................................................20

            1.    PNC Has Not Identified Any Relevant Documents That
                  Were Destroyed  After A Duty To Preserve Arose.......................20

            2.    There Is No Evidence Of The Requisite Bad Faith ......................24

      C.    PNC Has Not Established Any Cognizable Prejudice .................................28

      D.    PNC's Provides No Authority For Its Proposed Remedy...........................29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Labs. v. Dey, L.P.*,
  287 F.3d 1097 (Fed. Cir. 2002) ..................................................................................... 7

*In re Abilify (Aripiprazole) Prods. Liab. Litig.*,
  2018 U.S. Dist. LEXIS 172536 (N.D. Fla. Oct. 5, 2018) .......................................... 23

*Allergan, Inc. v. Teva Pharms. USA, Inc.*,
  2017 WL 119633 (E.D. Tex. Jan. 12, 2017) ............................................................. 16

*Allstate Tex. Lloyd's v. McKinney*,
  964 F. Supp. 2d 678 (S.D. Tex. 2013) ...................................................................... 27

*Amgen Inc. v. Amneal Pharms. LLC*,
  945 F.3d 1368 (Fed. Cir. 2020) .................................................................................. 5

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
  457 F.3d 1293 (Fed. Cir. 2006) .................................................................................. 4

*Ashton v. Knight Trasp., Inc.*,
  772 F. Supp. 2d 772 (N.D. Tex. 2011) ...................................................................... 27

*Bio-Rad Labs., Inc. v. 10X Genomics Inc.*,
  967 F.3d 1353 (Fed. Cir. 2020) .................................................................................. 6

*Blunt Wrap U.S.A., Inc. v. Royal Blunts, Inc.*,
  2003 WL 30422 (E.D. La. Jan. 2, 2003) .................................................................... 3

*Bose Corp. v. JBL, Inc.*,
  274 F.3d 1354 (Fed. Cir. 2001) .................................................................................. 4

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
  289 F.3d 801 (Fed. Cir. 2002) .................................................................................... 7

*CMFT Inv. Inc. v. YieldUp Int'l Corp.*,
  349 F.3d 1333 (Fed. Cir. 2003) ........................................................................... 24, 29

*Cordis Corp. v. Medtronic Ave, Inc.*,
  511 F.3d 1157 (Fed. Cir. 2008) ................................................................................ 15

*Davis S R Aviation, LLC v. Rolls-Royce Deutschland Ltd.*,
  2012 WL 175966 (W.D. Tex. Jan. 20, 2012) ............................................................ 20

*DR Distribs., LLC v. 21 Century Smoking, Inc.*,
    513 F. Supp. 3d 839 (N.D. Ill. 2021)........................................................................28

*DSU Med. Corp. v. JSM Co.*,
    471 F.3d 1293 (Fed. Cir. 2006)..................................................................................1

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
    2017 U.S. Dist. LEXIS 7814 (E.D. Tex. Jan. 20, 2017) ........................................30

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
    535 U.S. 722 (2002)........................................................................................1, 2, 5, 10

*Festo Corp. v. Shoketsu Kogyo Kabushiki Co.*,
    344 F.3d 1359 (Fed. Cir. 2003)....................................................................................3

*Genband US LLC v. Metaswitch Networks Corp.*,
    2015 U.S. Dist. LEXIS 176746 (E.D. Tex. Sept. 30, 2015) ..................................30

*GN Netcom, Inc. v. Plantronics, Inc.*,
    2016 WL 3792833 (D. Del. July 12, 2016) ............................................................28

*I4i Ltd. P'Ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010)..................................................................................15

*In Micron Tech., Inc. v. Rambus Inc.*,
    917 F. Supp. 2d 300 (D. Del. 2013).........................................................................26

*Insta-Foam Prods., Inc. v. Univ. Foam Sys., Inc.*,
    906 F.2d 698 (Fed. Cir. 1990)....................................................................................3

*Intervet Inc. v. Merial Ltd.*,
    617 F.3d 1282 (Fed. Cir. 2010)..................................................................................5

*Livingston v. Isuzu Motors, Ltd.*,
    910 F. Supp. 1473 (D. Mont. 1995).........................................................................19

*Loral Fairchild Corp. v. Sony Corp.*,
    181 F.3d 1313 (Fed. Cir. 1999)..................................................................................3

*M & T Mortg. Corp. v. Miller*,
    2007 WL 2403565 (E.D.N.Y. Aug. 17, 2007) .......................................................19

*Marines v. UPS Ground Freight Inc.*,
    2011 WL 13175785 (W.D. Tex. Mar. 31, 2011) ....................................................26

*Mark I Marketing Corp. v. R.R. Donnelly & Sons Co.*,
    66 F.3d 285 (Fed. Cir. 1995)..................................................................................8, 9

*Masco Corp. v. United States,*
   56 Fed. Cl. 400 (2003) ...................................................................................6

*MasterObjects, Inc. v. eBay, Inc.,*
   2013 WL 4404123 (N.D. Cal. Aug. 13, 2013) ...............................................3

*McRO, Inc. v. Bandai Namco Games Am., Inc.,*
   959 F.3d 1091 (Fed. Cir. 2020).....................................................................29

*MHL Tek, LLC v. Nissan Motor Co.,*
   691 F. Supp. 2d 698 (E.D. Tex. 2010) ...........................................................3

*Micron Technology, Inc. v. Rambus Inc.,*
   645 F.3d 1311 (Fed. Cir. 2011)...............................................................17, 25

*OPTi, Inc. v. VIA Techs., Inc.,*
   65 F. Supp. 3d 465 (E.D. Tex. 2014) .........................................................1, 11

*Oxbo Intl. Corp. v. H&S Mfg. Co., Inc.,*
   2017 WL 2272060 (W.D. Wis. May, 23, 2017) ...........................................16

*PACT XPP Techs., AG v. Xilinx, Inc.,*
   2013 WL 4736238 (E.D. Tex. Sep. 3, 2013) .....................................16, 25, 30

*PersonalWeb Techs., LLC v. Google Inc.,*
   2014 U.S. Dist. LEXIS 18593 (N.D. Cal. Feb. 13, 2014)..............................17

*Phillip M. Adams & Assocs., LLC v. Winbond Elecs. Corp.,*
   2010 WL 3767318 (D. Utah Sept. 16, 2010) ................................................19

*Pioneer Magnetics, Inc. v. Micro Linear Corp.,*
   330 F.3d 1352 (Fed. Cir. 2003).......................................................................5

*Primos, Inc. v. Hunter's Specialties, Inc.,*
   451 F.3d 841 (Fed. Cir. 2006).........................................................................6

*Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.,*
   264 F.R.D. 517 (N.D. Cal. 2009) ..................................................................17

*Recro Gainesville LLC v. Actavis Labs Fl, Inc.,*
   2017 WL 1064883 (D. Del. Feb. 24, 2017) ....................................................8

*In re Rembrandt Techs. LP Pat. Litig.,*
   899 F.3d 1254 (Fed. Cir. 2018)......................................................................26

*Rimkus Consulting Grp. v. Cammarata,*
   688 F. Supp. 2d 598 (S.D. Tex. 2010) .....................................................26, 28

*Smith Eng'g Co., Inc. v. Eisenmann Corp.*,
    28 Fed. App'x 958 (Fed. Cir. 2002) ............................................................ 11

*Stinson v. City of N.Y.*,
    2016 WL 54684 (S.D.N.Y. Jan. 5, 2016) .................................................... 19

*Town of Westport v. Monsanto Co.*,
    2015 U.S. Dist. LEXIS 192495 (D. Mass. Nov. 5, 2015) ............................. 23

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
    269 F.R.D. 497 (D. Md. 2010) .................................................................... 26

*Williams v. Basf Catalysts LLC*,
    2016 WL 1367375 (D.N.J. Apr. 5, 2016) .................................................... 19

**Statutes**

35 U.S.C. § 101 ............................................................................................ 4, 9, 10

**Rules**

Fed. R. Civ. P. 37(e) ............................................................................................ 16

Fed. R. Civ. P. 37(e)(2) ........................................................................................ 20

Fed. R. Civ. P. 37(e)(2)(B) .................................................................................... 30

PNC's request that the Court overturn the jury verdict based on PNC's equitable defenses of prosecution history estoppel and unclean hands should be denied. PNC's defenses are substantively without merit, and would not warrant setting aside the verdict in any event.

## I.     PNC'S PROSECUTION HISTORY ESTOPPEL ARGUMENT IS BASELESS

As discussed below, PNC has not established that prosecution history estoppel applies to the claim limitations at issue. Further, PNC's argument are moot in any event. Even if estoppel applied to any limitation (and it does not), there was substantial and ultimately undisputed evidence of literal infringement at trial as to the each of the elements addressed in PNC's motion that would independently support the verdict. *See OPTi, Inc. v. VIA Techs., Inc.*, 65 F. Supp. 3d 465, 477 (E.D. Tex. 2014) ("a new trial . . . is *only* required if [defendant] demonstrates that the evidence supports *neither* literal direct infringement *nor* infringement under the doctrine of equivalents, since the Court must uphold the jury's verdict if it has any reasonable basis to do so from the evidence."). And even if there were estoppel as to some of the 2006 Patent claims and there were not evidence of literal infringement, the verdict would still stand based on the other 2006 Patents ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ *DSU Med. Corp. v. JSM Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (denial of new trial appropriate where there is "any basis that supports the verdict").

### A.     Prosecution History Estoppel Does Not Apply to "Checking for Errors"

PNC's motion as to the '432 Patent fails at the outset because PNC has not established estoppel as to the "checking for errors" limitation. A presumption of "[e]stoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 736 (2002). Here, the "checking for errors" limitation was not a narrowing amendment made to secure the patent. It is the original language in a

set of claims presented via preliminary amendment before any prosecution. There was nothing new or narrowing about the "checking for errors" part of the claims; to the contrary, a similar limitation appeared in an original 2006 claim set. Nor is there any suggestion in the record that it was added to avoid an anticipated rejection. "Checking for errors" was never specifically discussed during the '432 Patent's prosecution. Moreover, multiple parents to the '432 Patent previously had issued without that language present. Thus, the *Festo* presumption is inapplicable. Further, even if the *Festo* presumption applied, it would be readily rebutted in this case because the language has no more than a tangential relation to the equivalent in question.

### 1. "Checking for Errors" Was Not Added to Secure the '432 Patent And Did Not Narrow The Patent's Scope

PNC has failed to establish the threshold requirement for estoppel: that the "checking for errors" limitation was an amendment "made to secure the patent and the amendment narrows the patent's scope." *Festo*, 335 U.S. at 736. Put another way, for the presumption of estoppel to apply, the amendment must be made "as a condition for obtaining [the] patent." *Id.* at 737.

Here, the entire record makes clear that "checking for errors" was not added as a condition to secure allowance of the '432 Patent. USAA filed the application for the '432 Patent on May 18, 2018 with a set of placeholder claims. Three days later, before any prosecution, USAA filed a preliminary amendment cancelling and replacing the claims in full. The claims included, in addition to all other elements, the "checking for errors" limitation. Ex. 2 ('432 File History) at PX1173.92-1173.105. No amendment was made in response to a rejection. Nor it is there any suggestion in the record that the purpose of the language was to preempt a rejection or to otherwise to secure allowance. There was no specific discussion of the "checking for errors" limitation during prosecution, and several of the parent applications to the '432 Patent had already issued without the limitation present. *See, e.g.*, Ex. 4 ('136 Patent); Ex. 5 ('681 Patent); Ex. 6 ('200 Patent).

Further, PNC has not even met its burden to show the preliminary amendment was narrowing,

because substantively the same limitation appeared in USAA's original 2006 claims. *Festo Corp. v. Shoketsu Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366 (Fed. Cir. 2003) ("If the amendment was not narrowing, then prosecution history estoppel does not apply."); *MasterObjects, Inc. v. eBay, Inc.*, 2013 WL 4404123, at *6 (N.D. Cal. Aug. 13, 2013) ("The burden is on the accused infringer. . .to show that the amendment was narrowing."). The '432 Patent expressly incorporates U.S. App. No. 11/591,247 by reference, Ex. 3 ('432 Pat.) at 1:18-21, which, in turn, states on its face that it "is related by subject matter to . . . U.S. patent application Ser. No. 11/590,974." Ex. 6 ('200 Pat.) at 1:7-14. The original 2006 claims of related U.S. App. No. 11/590,974 included "**_determining if there is an error in said deposit_** of said check." Ex. 7 ('227 File History, 10-31-06 Claims) at 23 (emphasis added). Federal Circuit law is clear that the prosecution of related patents must be considered in determining whether a narrowing amendment occurred. *MHL Tek, LLC v. Nissan Motor Co.*, 691 F. Supp. 2d 698, 708–709 (E.D. Tex. 2010) (Federal Circuit "considers the prosecution histories of **_related applications_** and patents broadly and inclusively, avoiding purely formalistic distinctions.") (emphasis added), *vacated on other grounds* 655 F.3d 1266; *Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313, 1327 (Fed. Cir. 1999) ("the entire record must be analyzed using an objective standard to determine what has been surrendered during prosecution"); *Blunt Wrap U.S.A., Inc. v. Royal Blunts, Inc.*, 2003 WL 30422, at *10 (E.D. La. Jan. 2, 2003) (claims "were not narrower than the claims set forth in the parent application with respect to the subject element/limitation"). PNC simply ignores this portion of the prosecution history.

PNC likewise identifies nothing in the prosecution history for the '432 Patent itself that narrowed the scope of this limitation. To the contrary, the language of this limitation in the issued claim is identical to the language presented in the original preliminary amendment. *Compare* Ex. 3 '432 Pat. cl. 1, *with* Ex. 2 at PX1173.100. That the limitation was moved verbatim from a dependent to an independent claim is not relevant, as this does not trigger estoppel. *Insta-Foam Prods., Inc. v. Univ. Foam Sys., Inc.*, 906 F.2d 698, 703 (Fed. Cir. 1990) (no estoppel where, as here, independent claim was

amended "by incorporating the language of" dependent); *Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1359 (Fed. Cir. 2001) (rewriting "dependent claim 2" as independent claim was not narrowing).

PNC identifies no evidence at all that the "checking for errors" limitation was added for reasons related to patentability. Instead, PNC argues that such reasons should be assumed because the file purportedly "does not disclose the reason for an amendment." Mot. at 3. But as discussed above, it is clear that the applicant simply replaced all of the claims as a procedural matter three days after filing, well before any prosecution. The *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 457 F.3d 1293 (Fed. Cir. 2006) case cited by PNC is readily distinguishable; in that case, "the [preliminary] amendments to the '556 application were made to preempt a double-patenting rejection based on claim 1 of the '933 patent." *Id.* at 1310. The patentee in that case did not dispute that the amendments were made to preempt rejection. *Id.* at 1310–12. Here, there is no similar evidence, nor would it make sense for USAA to have any patentability-related reason to amend the claims in the three days between the original application filing and the preliminary amendment. In fact the record shows the opposite – USAA had no reason to add this limitation to secure the patent because as discussed above, several related applications had already issued without it. Exs. 4-6.

PNC's conclusory argument that the limitation was to "overcome prior art and 35 U.S.C. § 101" makes no sense. Mot. at 4. The "checking for errors" limitation was part of the claims that became part of the application in May 2018, before any examination, while the 101 rejection PNC refers to occurred three months *later* in August 2018. Ex. 2 ('432 File History) at PX1173.117-1173.127. Further, the '432 Patent claims were never rejected over prior art; the only grounds of rejection during prosecution were based on sections 101 and 112. *Id.*

PNC's quotation of an examiner statement regarding § 101 in the notice of allowance has no connection to the "checking for errors" limitation. The examiner's reasons for allowance do not mention "checking for errors" as a basis for overcoming the 101 rejection, nor would that make sense,

as the limitation was present before the rejection. Ex. 2 ('432 File History) at PX1173.455-1173.456., 8-8-18 Office Action at 1173.117 (rejecting Claim 22). USAA's response did not argue the "checking for errors" limitation was a basis to overturn the rejection, rather, USAA's argument focused on seven other elements. *Id.* at 11-8-18 Amendment, Remarks at pp. 7-17. USAA's statement in response to the notice of allowance similarly did not reference "checking for errors" as the basis for allowance, instead confirming that allowance was for "the reasons provided in Applicant's" November 8 statement, which also did not address "checking for errors." Ex. 2 ('432 File History) at PX1173.508-1173.510. Nor is it the case that adding "checking for errors" to the independent claim was a basis for overcoming prior art – the examiner already found that the closest prior art (Dutta) "fails to teach or suggest" the elements of the independent claim ***before*** "checking for errors" was incorporated verbatim from the dependent claim. Ex. 2 at 8-8-18 Non-Final Rejection, PX1173.124.

PNC's cited cases are not on point, as both concern amendments made to overcome rejections over prior art. In *Amgen Inc. v. Amneal Pharms. LLC*, 945 F.3d 1368, 1382 (Fed. Cir. 2020), the limitation in question was specifically added to overcome an obviousness rejection by the examiner. And in *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352 (Fed. Cir. 2003), the Court found that the prosecution history established "that the examiner rejected claims 1–5 and 8–9 in light of the Carpenter reference" and the amendment was made specifically to "avoid" that reference. *Id.* at 1357.

## 2. The Amendment is Tangential to the Alleged Equivalent

Even if the *Festo* presumption applies (it does not), it is not the case that any narrowing amendment made for the purposes of patentability bars DOE. *See Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1291 (Fed. Cir. 2010) ("There is no reason why a narrowing amendment should be deemed to relinquish equivalents . . . beyond a fair interpretation of what was surrendered."). Even when the *Festo* "presumption" applies, it may be rebutted by showing the "the rationale underlying the amendment may bear no more than a tangential relation to the equivalent in question." *Festo*, 535 U.S. at 740-41.

USAA is not asserting in this case that a system that does not check for errors is equivalent to a system that does. There is no dispute that PNC's system checks for errors, rather, the alleged equivalent in this case related to an argument that PNC had made at one time that checking for errors allegedly was completely performed on PNC's server as opposed to on the mobile device. Ex. 1 (Trial Tr.) at 417:24-418:3 ("Q. Now, do you have an understanding of whether PNC has ever disputed this element? A. Yes. My understanding is that PNC has said all their errors are completely checked on the server, and the phone doesn't do any work."). PNC does not argue that anything in the prosecution history suggests that the extent of involvement of a server in error-checking was relevant to prosecution, such that USAA's amendment could fairly be said to have disclaimed the asserted equivalent. PNC does not even argue that the location where error checking is performed was relevant to overcoming the 101 or 112 rejections or a basis for distinguishing prior art.

*Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353 (Fed. Cir. 2020) is illustrative. There, the limitation at issue required "non-fluorinated microchannels," added "to distinguish microchannels that reacted with carrier fluids" (i.e., to distinguish reactive systems from non-reactive systems). *Id.* at 1365. The Federal Circuit held that the proposed equivalent (a non-reactive microchannel with negligible levels of fluorine) "'[bore] no more than a tangential relation to the equivalent in question'— here, microchannels containing negligible amounts of fluorine, which cannot react with the carrier fluid." *Id.* Similarly, in *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 849 (Fed. Cir. 2006), the limitation was for a "plate" that was "differentially spaced." The court held that estoppel did not apply where the equivalent was a spaced "dome" structure, because the "differentially spaced" limitation was added to distinguish structures "without any spacing," not to change the shape of the structure.

PNC largely ignores the tangential relation issue, merely repeating its faulty argument, discussed above, that the amendment was "necessary to overcome rejections." Mot. at 5. Further, PNC's citation to *Masco Corp. v. United States*, 56 Fed. Cl. 400, 413 (2003) is not on point, as PNC

concedes this case involved an amendment made in response to a rejection.

**B.      Prosecution History Estoppel Does Not Apply to "Presenting the Photos"**

PNC's arguments as to the '605 and '681 Patents fail to state a prima facie case for prosecution history estoppel, much less show that the legal requirements for estoppel are met. PNC concedes that the "presenting the photos/electronic images" limitations were present in the originally filed claims of the '605 and '681 Patents. This ends the inquiry. But even if PNC could show a narrowing amendment made to secure the patent (it cannot), estoppel still would not apply because the alleged equivalent here is merely tangential to the claim element.

**1.      PNC Has Not Met its Burden to Show A Narrowing Amendment**

PNC's argument that the "presenting the photos/electronic images" limitations in the '605 and '681 Patents are subject to estoppel fails at the outset, because PNC admits that these limitations were present in the originally filed claims. The applications for the '681 and '605 Patents were filed on July 28, 2017. Original claim 12 of the '681 application included "presenting the photos of the check to the customer after the photos are taken." Ex. 8 ('681 File History) at PX0100.567-100.568. This limitation appears verbatim in issued Claim 12. Ex. 5 at cl. 12 ("presenting the photos of the check to the customer after the photos are taken"). Similarly, original claim 30 of the '605 application included "having the digital camera take the photos of the check [and] . . . presenting the photos of the check to the customer after the photos are taken." Ex. 9 ('605 File History) at PX0101.452, *see also id.* at PX0101.447, PX0101.449 (similar limitations). This limitation appears in issued Claim 12 without substantive change ("presenting the photos of the check to the customer after the digital camera takes the photos").

Where a limitation "was not amended during prosecution" "there can be no amendment-based estoppel with respect to this claim limitation." *Abbott Labs. v. Dey, L.P.*, 287 F.3d 1097, 1103 (Fed. Cir. 2002); *see also Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 813 (Fed. Cir. 2002) (reversing finding of prosecution history estoppel where "the applicants did not amend this language regarding

the location of the terminals"). This black-letter law is dispositive here.

PNC identifies no amendment during prosecution of the '605 or '681 Patents that it claims gives rise to estoppel. Rather, PNC argues that the original claims should be deemed a narrowing amendment because a parent application of each patent did not contain the "presenting the photos of the check" limitation. Mot. at 6. PNC cites no authority that the original claims of a continuation are a narrowing amendment merely because they contain a limitation not found in a parent. The case PNC cites, *Mark I Marketing Corp. v. R.R. Donnelly & Sons Co.*, 66 F.3d 285 (Fed. Cir. 1995), found estoppel in the specific circumstance where the grandparent application was "rejected over prior art that suggested replicating a color image using two printing plates and two inks. Instead of responding to the rejection, Mark I filed the '815 continuation-in-part application with new claims." *Id.* at 291. When the first continuation was itself rejected (after further narrowing amendments), the applicant filed a second continuation with claims "even narrower than the '815 claims." *Id.* The Court found estoppel in this specific case because "Mark I was unsuccessful in obtaining allowance of the claims until they were narrowed to require that both the first and the second printing plates be made by sequentially interposing particular combinations of colored filters" and also "asserted that the claims were patentably distinguishable over the prior art based on these process steps." *Id.* at 292.

None of these factors apply here. PNC identifies no evidence that the '605 or '681 Patents were filed in response to a rejection or that the "presenting the photos" limitation was ever asserted as a basis for overcoming prior art.

***'605 Patent.*** PNC's argument as to the '605 Patent centers on a related application, No. 14/225,090. As an initial matter, this application is ***not*** the ultimate parent of the '605 Patent. The parent of the '605 Patent is No. 11/590,974, which was filed in 2006 and ***issued*** as U.S. Patent No. 8,708,227. Ex. 7 ('227 Patent.). The '605 application was filed three years later and after the '227 Patent had already issued, meaning it cannot have been filed to overcome a rejection. *See Recro Gainesville LLC*

*v. Actavis Labs Fl, Inc.*, 2017 WL 1064883, at *9 (D. Del. Feb. 24, 2017) (statements "clearly were not made to secure the patent considering they were made after the [related] '742 patent issued").

With respect to related App. No. 14/225,090 discussed by PNC, the record demonstrates that the "presenting the photos" limitation was not added in response to a rejection of that application.

First, (unlike in *Mark*) the '605 application was not filed "[i]nstead of responding to the rejection" in the '090 file. Rather, USAA challenged the rejection of the '090 application as part of the prosecution of that file, and the PTAB did not issue a final decision until August 2019. Ex. 10 ('090 File History) at 8-22-19 Board Decision. The application for the '605 Patent was filed in July 2017 and issued on July 3, 2018, a year **before** prosecution of the parent '090 file had even ended.

Second, the 2017 rejection of the '090 application that PNC cites had no connection to the "presenting the photos" limitation, and PNC does not even attempt to identify one. The '090 application was not rejected over prior art, rather, it was rejected as allegedly directed to an abstract idea under § 101. Nothing in the prosecution file of either the '090 or the '605 applications identifies the absence of a "presenting the photos" limitation as the reason for the § 101 rejection – in fact the prosecution history conclusively shows the opposite. Specifically, the examiner of the '605 application initially rejected the original claims under § 101 even though they **already contained** the "presenting the photos" limitation. Ex. 9 ('605 File History) at PX0101.375-101.397. The examiner ultimately withdrew the rejection based on (1) arguments by the applicant, none of which identified the "presenting the photos" limitation as a basis for overturning the rejection, and (2) an examiner's amendment that did not impact these limitations. Ex. 9 ('605 File History) at PX0101.38-101.54. The examiner's remarks in the Notice of Allowance likewise did not identify "presenting the photos" as a basis for overcoming the rejection. To the contrary, the examiner noted a prior art reference that the examiner believed disclosed that limitation. *Id.* at PX0101.52 (discussing "prior art of record" that allegedly disclosed "presenting the photos" limitation).

**'681 Patent**.  PNC's argument as to the '681 Patent does not even get off the ground. PNC does not identify any rejection, even of a parent patent, that allegedly prompted USAA to file the '681 Patent. PNC's inability to identify any relevant rejection is for good reason -- **all** of the related applications listed on the face of the '681 Patent **issued** as U.S. Patents. Ex. 5 ('681 Patent) at Related U.S. Application Data.[1] This conclusively demonstrates the '681 Patent application was not filed to evade a rejection or secure allowance of the claims, the exact opposite of the situation in *Marks*.

### 2.   The "Presenting" Limitation Was Not Added to Secure the Patent

Even if the mere filing of the '605 and '681 applications could somehow constitute a narrowing amendment (it cannot), PNC's estoppel argument still fails because the "presenting the photos" limitations were not added for a reason related to patentability. As discussed above, the '605 file history conclusively shows that "presenting the photos" was not added to secure allowance, to the contrary, the examiner found it was disclosed in the prior art and neither the examiner nor applicant identified it as relevant to § 101. Similarly, all of the '681 Patent parent applications issued **without** a "presenting the photos" limitation (including the original parent '200 Patent issued in 2011), conclusively demonstrating that it was not added to secure allowance of the patent. *See, e.g.*, Ex. 6 ('200 Patent).

### 3.   Any Amendment Was Tangential

Further, even if the *Festo* presumption applied, the amendment is at most tangential to the equivalent at issue. USAA is not asserting that a system that does not present the photos is equivalent to a system that does. Rather, the alleged equivalent relates to whether the two photos are both taken and then both displayed, or whether they are taken and displayed one at a time. While this "equivalent" literally infringes for the reasons below, even assuming DOE is required, PNC does not argue that the exact sequence of displaying the front and back photos after they are taken was important to this

---

[1] The face of the '681 Patent does not identify the outcome of then-pending application No. 14/952,625. That application ultimately issued as U.S. Patent No. 10,460,295. Ex. 11.

limitation, such that the amendment could fairly be said to have disclaimed the asserted equivalent.

### 4. Even if Prosecution History Estoppel Applied, There Would Be No Basis To Vacate the Verdict

Even if estoppel applies to any of the limitations at issue, it would not support setting aside the verdict and holding a new trial in any event. Where, as here, evidence is presented on both literal infringement and the doctrine of equivalents "a new trial . . . is *only* required if [defendant] demonstrates that the evidence supports *neither* literal direct infringement *nor* infringement under the doctrine of equivalents, since the Court must uphold the jury's verdict if it has any reasonable basis to do so from the evidence." *OPTi*, 65 F. Supp. 3d at 477; *see also Smith Eng'g Co., Inc. v. Eisenmann Corp.*, 28 Fed. App'x 958, 965 (Fed. Cir. 2002) ("Because we uphold the jury verdict of literal infringement of claim 1, we need not consider Eisenmann's arguments that the jury verdict for infringement of claims 6 and 8 under the doctrine of equivalents is procedurally flawed."). Further, the verdict in this case may be upheld not only based on the evidence of literal infringement, but also (if there were estoppel as to some of the claims) the evidence of infringement of the other claims in the 2006 family.

Here, literal infringement of the limitations addressed by PNC not only was supported by substantial evidence, but undisputed at trial based on the admissions of PNC's expert Dr. Bovik.

*'432 Patent*. As to Claim 1 of the '432 Patent, PNC's own expert, Dr. Bovik,



███████████████████████████████████████████████████
███████████████

██████████████████████████████████
██████████████████████

Ex. 1 (Trial Tr.) at 853:21-854:20. USAA likewise presented substantial evidence that this element is literally infringed. For example, USAA's expert Dr. Conte testified ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████

Ex. 1 (Trial Tr.) at 415:12-19 (discussing PX 362); *see also id.* 415:22-417:8. ██████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████

    In short, both sides' experts testified that PNC's system does what is literally required by the claim: checking for errors on the mobile device. The jury therefore did not need to reach DOE at all.

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████   ██████████████████████████

████████████████████████████████████████████████████████████████ .

***'605 and '681 Patents***.  Similarly, there was no dispute at trial that PNC's system presents photos of the front and back of the check to the user after they are taken, exactly what the '605 and '681 claims require. *See* Ex. 5 ('681 Pat) cl. 12 ("presenting the photos of the check to the customer after the photos are taken"); Ex. 12 ('605 Pat.) cl. 12 ("presenting the photos of the check to the customer after the digital camera takes the photos"); Ex. 1 (Trial Tr.) at 832:3-6 (PNC expert Dr. Bovik testifying ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

PNC argues that this does not literally infringe, claiming the patent requires that both the front and back photos be taken before either photo is displayed. But PNC's expert Dr. Bovik conceded that

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Ex. 12 ('605 Pat.) at 14:7-27. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████



*Id.* at 832:3-6. USAA's expert Dr. Conte similarly testified ███████████████

Ex. 1 (Trial Tr.) at 426:24-427:10.

As with the "checking for errors" limitation, ████████████████████

████████████████████████████████████████████████████████
███████████████████████████████████████████████

*Id.* at 427:11-21. ████████████████████████████████████████████████

████████████████████████████ there was no need for this analysis and no dispute about literal infringement. The verdict therefore stands regardless of whether prosecution history estoppel applies.

Further, even if the Court were to conclude that estoppel applies to some of the 2006 patents, there was substantial evidence at trial that PNC infringed all three 2006 patents. PNC does not even attempt to address this evidence, all of which is sufficient to support the verdict of infringement. There also would be no need to revisit the damages verdict if prosecution history estoppel were found to apply to some of the claims because, as discussed above, both sides' experts agreed that damages would be the same regardless of the number of claims in the 2006 family that were infringed. *See* Ex. 1 (Trial Tr.) at 633:5-7 (Kennedy) ████████████████████████████████████████
████████████████████████████████████████████████████████

PNC's cited case of *I4i Ltd. P'Ship v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010) supports USAA's position, not PNC's. There, the Federal Circuit confirmed that where there is evidence of infringement under multiple legal theories "the verdict must be upheld if substantial evidence supports either legal theory." *Id.* at 850 (affirming verdict of infringement). *Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157 (Fed. Cir. 2008), which also upheld a verdict of infringement, did not consider (much less address) the situation here. Rather, the issue in *Cordis* was whether the jury should have been instructed regarding prosecution disclaimer where it had returned "a general verdict of infringement under the doctrine of equivalents." *Id.* at 1176–77. There was no claim of amendment-based estoppel. *Id.* The Court reached the question but found no defect in the verdict. *Id.* at 1177–78. So too here, the verdict should be upheld even if the Court finds that estoppel applies to any of the limitations at issue.

## II.     PNC'S UNCLEAN HANDS DEFENSE IS WITHOUT MERIT

PNC's unclean hands defense is dead on arrival because it is based solely on unsubstantiated allegations of spoliation, which have already been rejected by this Court. Contrary to the Court's directive in its Order on PNC's sanctions motion, PNC has simply reasserted the same theory without "new evidence" concerning the Court's prior findings that (1) "there was no anticipation of litigation between the *Mitek* litigation and the *Wells Fargo* litigation," and (2) "USAA's conduct did not rise to a level of bad faith as required by Fed. R. Civ. P. 37(e)." Dkt 279 (Order on Sanctions Motion) at 2. Without new evidence, there is no possible basis to disturb the Court's prior rulings on these issues.

Unclean hands is an "equitable issue[] for the Court to decide." *Allergan, Inc. v. Teva Pharms. USA, Inc.*, 2017 WL 119633, at *6 n. 2 (E.D. Tex. Jan. 12, 2017). Spoliation may give rise to an unclean hands defense "only in particularly egregious situations where 'a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings.'" *PACT XPP Techs., AG v. Xilinx, Inc.*, 2013 WL 4736238, at *11 (E.D. Tex. Sep. 3, 2013) (citing *Micron Technology, Inc. v. Rambus Inc.*, 645 F.3d 1311, 1328–29 (Fed. Cir. 2011)). Specifically, "[d]ismissal should only be imposed if there is 'clear and convincing evidence of both bad faith spoliation and prejudice to the opposing party.'" *Id.* Similarly, Federal Rule of Civil Procedure 37(e) permits a dispositive sanction for spoliation only if the Court finds that (1) "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it," (2) there is "prejudice to another party from loss of the information," and (3) "that the party acted with the intent to deprive another party of the information's use in the litigation." PNC falls far short of proving that any spoliation occurred, much less that it rises to the level required for the remedy that it seeks—i.e., dismissal of USAA's claims. As such, its unclean hands defense fails. *See, e.g.*, *Oxbo Intl. Corp. v. H&S Mfg. Co., Inc.*, 2017 WL 2272060, at *7–8 (W.D. Wis. May, 23, 2017) (rejecting unclean hands defense based on prior findings that undermined "sham litigation" argument).

## A.    USAA Did Not Have A Preservation Obligation From 2014 To 2017.

PNC's unclean hands defense based on spoliation fails from the outset because it is based on a false presumption (already rejected by the Court) that USAA has had a continuing duty to preserve all RDC-related evidence since 2012. The Court previously rejected this argument:

> It is clear in my mind that post the Mitek litigation until the licensing program started again in 2017 and into 2018, that there really was no basis upon which USAA should have had an anticipation of litigation. And the gap between 2012 and 2014 seems to me to be adequately filled by the movement of these three particular gentlemen away from RDC.

Ex. 13 (Nov. 23 Hearing Tr.) at pp. 61–63; Dkt. 279 at 2 (holding that "there was no anticipation of litigation in the period between the *Mitek* litigation and the *Wells Fargo* litigation"). PNC has not identified any new facts or evidence that would warrant a different result. Instead, it merely rehashes the same arguments it raised in its sanctions motion. Those arguments were—and still are—wrong.

Whether a duty to preserve exists is an "objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Micron*, 645 F.3d at 1320. "A general concern over litigation does not trigger a duty to preserve evidence." *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517, 526 (N.D. Cal. 2009). Rather, a duty arises when "a potential claim [is] identified or future litigation [is] probable." *Id.*

PNC's continued insistence that USAA anticipated this litigation in 2012, years before the patents-in-suit issued, has no basis in reality. "[I]t is difficult to say that litigation was reasonably foreseeable before [the patentee] even acquired the thing which would give it standing to sue." *PersonalWeb Techs., LLC v. Google Inc.*, 2014 U.S. Dist. LEXIS 18593, *8-9 (N.D. Cal. Feb. 13, 2014) ("acquisition of the patents was a condition precedent to its ability to even initiate the litigation, the Court thinks it was likewise a condition precedent to PersonalWeb's duty to preserve evidence"). Rather, USAA did not "reasonably foresee" litigation involving its RDC patents until at least 2017, when it launched its licensing program ███████████████████████████████████ ███.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████

     PNC's reliance on Mr. Epstein's testimony—the same testimony it cited in its original motion for sanctions—is unavailing. As ████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

     ██████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

     PNC also takes Mr. Epstein's testimony out of context. ████████████████

███████████████████████████████████████████████████████████

██████████████████████/███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████.

     PNC's reliance on USAA's privilege log is likewise unavailing. ██████████████

███████████████████████████████████████████████████████████

11123830



Finally, PNC grossly mischaracterizes the *Mitek* litigation as USAA's "opening salvo" for litigation regarding USAA's RDC patents. The *Mitek* case did not involve any USAA patents, much less the patents asserted in this case (which had not even issued at the time). Rather, it involved five Mitek patents that Mitek had argued that USAA was infringing, as well as claims that Mitek had misappropriated trade secrets from USAA and breached a contract. *United Servs. Automobile Ass'n v. Mitek Sys., Inc.*, No. 5:12-cv-00282-FB, Dkt. 1 (W.D. Tex. Mar. 29, 2012).

PNC's cited cases do not support its contention that USAA somehow had a duty to preserve during the time period between the *Mitek* and *Wells Fargo* litigations. In *Williams v. Basf Catalysts LLC*, 2016 WL 1367375, at *7 (D.N.J. Apr. 5, 2016), the defendant was aware that other plaintiffs existed at the time the documents were destroyed. Similarly, in *Stinson v. City of N.Y.*, 2016 WL 54684, at *4 (S.D.N.Y. Jan. 5, 2016) and *M & T Mortg. Corp. v. Miller*, 2007 WL 2403565, at *5 (E.D.N.Y. Aug. 17, 2007), the prior lawsuits involving overlapping issues were still pending when subsequent lawsuits were filed, and thus there was no gap in the duty to preserve.[2] By contrast, there is no evidence that,

---

[2] The other cases cited by PNC are also inapposite. *Livingston v. Isuzu Motors, Ltd.*, 910 F. Supp. 1473, 1494 (D. Mont. 1995) addressed the admissibility of evidence regarding destruction of data at trial, not a spoliation claim. And, in *Phillip M. Adams & Assocs., LLC v. Winbond Elecs. Corp.*, 2010 WL 3767318, at *4 (D. Utah Sept. 16, 2010), a duty to preserve existed because the industry as a whole had been put on notice of potential litigation involving defects in products offered by defendant.

11123830

██████████████  ████████████████████████████████████████████████████████████

████████████████████████████████████████████  ████  ███████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████ Notably, the only documents at issue on this motion relate to autocapture, ████████████████████████ and the '571 Patent, which issued in 2015. PNC does not even attempt to explain how USAA could have anticipated litigation with PNC over its autocapture patents before those patents even issued ████████████████████████████████.

In sum, PNC has not met its burden to show by clear and convincing evidence that USAA had a duty to preserve evidence during the time frame that it contends evidence was lost. Because the duty to preserve is a precursor to PNC's unclean hands defense based on spoliation, its defense fails.

### B.      USAA Fully Satisfied Its Preservation Obligation Once A Duty Arose

#### 1.      PNC Has Not Identified Any Relevant Documents That Were Destroyed After A Duty To Preserve Arose

PNC's accusations of spoliation fail for another key reason:  it has not identified any relevant information that was allegedly destroyed after USAA's preservation obligations arose. This alone defeats PNC's spoliation argument. Fed. R. Civ. P. 37(e)(2) (requiring information "is lost"); *Davis S R Aviation, LLC v. Rolls-Royce Deutschland Ltd.*, 2012 WL 175966, at *3 (W.D. Tex. Jan. 20, 2012) ("to demonstrate spoliation a party must prove relevant evidence was destroyed").

***Emails***: ███████████████████████████████████████████████  ███████████████

████████████████████████████████████████████  ████████████████████████████████

at 18. PNC's argument is both factually inaccurate and misleading.

*First*, PNC's assertion is not supported by the record. ███████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████-

11123830



PNC did not introduce a single Easley email into evidence at trial. Nor did it even play any testimony from Mr. Easley.

**Litigation Holds**: PNC next disputes the adequacy of USAA's litigation holds. But PNC's argument is based on the false assertion that USAA continuously anticipated litigation since 2012. As detailed above, the Court already rejected that argument, and found that USAA did not have a duty

of preservation between the *Mitek* and *Wells Fargo* litigations.

PNC's specific arguments about Messrs. Oakes, Easley and Bueche are also wrong. ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████

*Development Code:* ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[3] To the extent PNC is arguing that USAA's holds from its prior litigations were inadequate, that does not justify its argument for spoliation or unclean hands in this case. *Town of Westport v. Monsanto Co.*, 2015 U.S. Dist. LEXIS 192495, *8-9 (D. Mass. Nov. 5, 2015) ("The duty to preserve evidence runs to a specific opposing party."); *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 2018 U.S. Dist. LEXIS 172536, *16-17 (N.D. Fla. Oct. 5, 2018)("Even assuming that OAPI failed to maintain adverse event records for 10 years, such a failure relates to a duty OAPI owed to the FDA and not a duty OAPI owed to the Plaintiffs.").

██████████ PNC fails to explain why it would even be relevant, given the settled law that enablement concerns the ability of a POSA to make the invention, not the specific development of a commercial product after the patent issues. *See* Dkt. 387 at 8-9; *CMFT Inv. Inc. v. YieldUp Int'l Corp.*, 349 F.3d 1333, 1338–39 (Fed. Cir. 2003). Indeed, PNC never sought additional deposition testimony regarding source code, asked USAA to search for and produce additional code, or filed any renewed motion for spoliation sanctions based on Mr. Backlund's testimony, thus confirming it is not relevant.

PNC's argument is also based on a fundamental mischaracterization of how a source code repository works. When a developer writes code, the developer checks out the code from the repository, makes edits, and then the revised code is saved back to the repository as a new version (or "snapshot"). Both the original and new versions are preserved and it is possible to compare all edits made between versions. Whether the code was "released" to customers does not affect how it is preserved. This is analogous to creating and saving a Word document, opening and editing it, and then saving it as a new version. Both the original Word document and the new one exist, and it is possible to compare the two to see the edits. ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████ .

## 2. There Is No Evidence Of The Requisite Bad Faith

PNC's unclean hands defense also fails because there is no evidence that USAA intentionally destroyed any evidence or that it acted in bad faith. Even where information was lost, unclean hands

requires that the spoliation *itself* be intentional and bad faith (i.e., specifically with the intent to deprive the other party of use in litigation). *See PACT*, 2013 WL 4736238, at *11 (unclean hands defense based on spoliation requires bad faith). PNC has not identified a shred of evidence to suggest USAA acted in bad faith, and the Court already found otherwise. Dkt 279 (Order).

*First*, PNC's assertion that USAA's standard document retention policy for emails constitutes "bad faith" is unfounded. As the Federal Circuit recognizes, where "a party has a long-standing policy of destruction of documents on a regular schedule, with that policy motivated by general business needs, . . . destruction that occurs in line with the policy is relatively unlikely to be seen as spoliation." *Micron*, 645 F.3d at 1322. ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ PNC has not identified any evidence to suggest that any of the employees subject to these holds failed to comply.

*Second*, ████████████████████████████████████████████████ ████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

*Third*, PNC wrongly contends that USAA has not explained ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████. ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████ This does not show bad faith.

Rather, it shows that USAA diligently investigated which employees were working on MRDC at the

relevant time, and made reasoned decisions about who should be subject to the litigation hold.[4]

    *Fourth*, as explained above, PNC's allegations about development code are fabricated and

███████████████████████████████████████████████████████████████

███████████████████

    *Fifth*, PNC identifies no evidence whatsoever that anything was done to intentionally deprive

PNC of use of those documents in litigation (which was then years in the future). The Federal Rules

do not demand perfection, and oversights can occur, especially in hindsight. USAA's substantial

efforts to preserve documents through this entire period and produce them in this case – ████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████ – contradict the claim that USAA intended to delete anything.

    PNC's cases finding bad faith are inapposite. In *In re Rembrandt Techs. LP Pat. Litig.*, 899 F.3d

1254, 1270-71 (Fed. Cir. 2018), Rembrandt failed to issue *any* hold at all, even after litigation ensued.

███████████████████████████████████████████████████████████████

████████████████████████████████████████. In *In re Micron Tech., Inc. v.*

*Rambus Inc.*, 917 F. Supp. 2d 300, 316-17 (D. Del. 2013), the documents were destroyed pursuant to a

---

[4] The facts here stand in sharp contrast to the cases cited by PNC. *See Marines v. UPS Ground Freight Inc.*, 2011 WL 13175785, at *6-7 (W.D. Tex. Mar. 31, 2011) (UPS claimed to have document retention policy that justified the destruction of documents, but was unable to produce it or provide a witness to explain it); *Rimkus Consulting Grp. v. Cammarata*, 688 F. Supp. 2d 598, 643-44 (S.D. Tex. 2010) (defendants deleted relevant emails after litigation ensued, and not according to any standard document destruction policy); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 531 (D. Md. 2010) (defendant deleted documents "despite his knowledge of the lawsuit, and provided wildly inconsistent explanations of his ESI deletions").

document destruction policy instituted for the express purpose of "prevent[ing] them from being discovered in the 'upcoming battle'" of patent litigation, not for any legitimate business purpose. ███

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████. And in *Ashton* and *Allstate,* the record showed that evidence was intentionally and knowingly destroyed. *Ashton v. Knight Trasp., Inc.*, 772 F. Supp. 2d 772, 802 (N.D. Tex. 2011) (truck driver fled scene of accident and replaced tires); *Allstate Tex. Lloyd's v. McKinney*, 964 F. Supp. 2d 678, 685 (S.D. Tex. 2013) (insurer knowingly and intentionally destroyed evidence related to denied claim).

Finally, PNC's allegations that USAA engaged in litigation misconduct is baseless. Contrary to PNC's suggestion, █████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████ PNC's attempt to resurrect this discovery dispute which it chose not to pursue as a basis for a finding of bad faith is improper. PNC's assertion that USAA "sought to delay Mr. Bueche's deposition for as long as possible" is also false. Mr. Bueche is a third party witness. His deposition was initially scheduled for November 7, 2021, but was postponed ███████████

████████████████████████. It was rescheduled for Sunday, November 21, 2021, ███████████

███████████████████████████ Obviously, USAA has no control over scheduling conflicts for a third party witness, and PNC's attempt to impute bad faith on this basis is inappropriate.

PNC's allegations regarding the adequacy of Mr. Backlund's declaration and deposition regarding USAA's source code are baseless. ████████████████████████████████████████



The baselessness of PNC's argument is confirmed by the fact that PNC never requested additional discovery on this issue, much less raised it with the Court.

. PNC also ignores the fact that USAA produced another witness— Ms. Reeder—for an entire day of deposition to address PNC's questions on document preservation.

PNC's cited cases are distinguishable. For example, *GN Netcom, Inc. v. Plantronics, Inc.*, 2016 WL 3792833, at *8 (D. Del. July 12, 2016), counsel stated it was "incorrect to assume deletion" even though he knew that employees had violated a hold by deleting emails. In *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 905 (N.D. Ill. 2021), the court determined that counsel had violated the duty of candor. And, in *Rimkus*, 688 F. Supp. 2d at 644, defendants failed to disclose the existence of personal email accounts used to commit trade secret offenses. In Here, PNC has not pointed to any evidence that USAA or its counsel concealed anything. Rather, USAA has been upfront and honest about its preservation efforts at all times.

### C.   PNC Has Not Established Any Cognizable Prejudice

PNC's prejudice arguments also fail. PNC's claim of prejudice relates solely to its non-enablement defense regarding the '571 Patent; it identifies no prejudice as to the other three asserted patents.



PNC's argument that USAA's commercial development activities are crucial to its enablement defense is also legally misplaced. Enablement concerns whether "the specification" of the patent "teach[es] those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 959 F.3d 1091, 1100 (Fed. Cir. 2020). The Federal Circuit "gauges enablement at the date of the filing, not in light of later developments." *CFMT*, 349 F.3d at 1339. The performance of a commercial product developed after the invention has no bearing on enablement, and the details of USAA's work several years later to launch its commercial product is thus irrelevant (and, in any event, illustrated by the many technical files USAA produced). *Id.* at 1338 ("Enablement does not require an inventor to meet lofty standards for success in the commercial marketplace.").

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████. As noted above, USAA produced a complete set of all source code and all failure rate data.

### D.      PNC's Provides No Authority For Its Proposed Remedy

Even if PNC had proven by clear and convincing evidence that USAA engaged in spoliation

(which it has not even come close to doing), PNC's proposed remedy of vacatur is contrary to law. PNC's request is especially unwarranted given that, as discussed above, PNC's unclean hands theory relates to only one of the four Asserted Patents (the autocapture '571 Patent). Courts make clear that dispositive remedies are reserved for "particularly egregious" misconduct, such as instances where the plaintiff engaged in fraud or perjury. *Pact*, 2013 WL 4736238, at \*11 (rejecting unclean hands defense: "the Federal Circuit has explained that "[d]ismissal is a 'harsh sanction,' to be imposed only in particularly egregious situations where 'a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings.'"). Indeed, PNC does not cite a single case where a jury verdict was vacated due to unclean hands based on spoliation.

PNC's alternate argument that it is entitled to a new trial with a negative inference instruction is also inappropriate. An adverse inference instruction requires proof of intentional spoliation – proof utterly lacking here. Fed. R. Civ. P. 37(e)(2)(B). As noted above, the Court rejected PNC's spoliation argument based on USAA's litigation holds and email retention policy. PNC's new argument related ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Moreover, PNC has not established that any development code was actually lost, much less that it was intentionally deleted.

Finally, PNC's suggestion that the Court should have allowed it to present its unclean hands defense to the jury is nonsense. "[T]he defense of unclean hands . . . is an equitable issue for the court." *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 2017 U.S. Dist. LEXIS 7814, \*43 (E.D. Tex. Jan. 20, 2017); *Genband US LLC v. Metaswitch Networks Corp.*, 2015 U.S. Dist. LEXIS 176746, \*12 (E.D. Tex. Sept. 30, 2015) ("Evidence and argument relevant only to equitable issues is precluded in the presence of the jury absent agreement of counsel.").

Respectfully submitted,

Dated: July 21, 2022

/s/ *Robert Christopher Bunt*

Jason G. Sheasby (CA #205455) (*Pro Hac Vice*)
Lead Attorney
Lisa S. Glasser (CA #223406) (*Pro Hac Vice*)
Rebecca L. Carson (CA #254105) (*Pro Hac Vice*)
Stephen M. Payne (CA#310567) (*Pro Hac Vice*)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Tel.: (310) 203-7096
Fax: (310) 203-7199
jsheasby@irell.com
lglasser@irell.com
rcarson@irell.com
spayne@irell.com

Robert Christopher Bunt
PARKER, BUNT & AINSWORTH, P.C.
Texas State Bar No. 00787165
100 E. Ferguson Suite 418
Tyler, Texas 75702
Tel.: (903) 531-3535
rcbunt@pbatyler.com

**ATTORNEYS FOR PLAINTIFF UNITED SERVICES AUTOMOBILE ASSOCIATION**

11123830

- 31 -

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 21, 2022 a copy of the foregoing was served to all counsel of record.

*/s/ Robert Christopher Bunt* _____

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Robert Christopher Bunt* _____
Robert Christopher Bunt

11123830