IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, <br><br> *Plaintiff,* <br><br> v. <br><br> PNC BANK N.A., <br><br> *Defendant.* | § § § § § § § § § § § § § CIVIL ACTION NO. 2:20-CV-00319-JRG |

**MEMORANDUM OPINION AND ORDER
SUPPORTED BY FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Before the Court are Defendant PNC Bank, N.A.'s ("PNC") equitable defenses of: (1) prosecution history estoppel; and (2) unclean hands. (Dkt. No. 734). PNC contends that these equitable defenses "require setting aside the jury's verdict and, at the very least, a new trial." (*Id.* at 1). In order to resolve PNC's equitable defenses before the August 22, 2022 trial setting in another case between Plaintiff United Services Automobile Association ("USAA") and PNC in this Court,[1] the parties agreed to forego a bench trial on PNC's equitable defenses indicating that said defenses should be resolved by the Court on the papers. (Dkt. No. 728 at 1; Dkt. No. 731). The Court has considered the totality of the evidence presented at the jury trial and in the written record, including the post-trial submissions from the parties (Dkt. Nos. 734, 738, 740, 743). The Court now issues this opinion concerning prosecution history estoppel and unclean hands which are supported by the following Findings of Fact ("FF") and Conclusions of Law ("CL") pursuant to Fed. R. Civ. P. 52(a)(1) and 52(c). In view hereof and as discussed herein, the Court rejects

---

[1] *United Servs. Auto. Ass'n. v. PNC Bank N.A.*, 2:21-cv-246 (E.D. Tex.) (the "-246 Case").

PNC's prosecution history estoppel and unclean hands arguments and finds that PNC has failed to show by clear and convincing evidence that the jury's verdict should be set aside or that a new trial is warranted.

## I. FINDINGS OF FACT

### A. Procedural History

**[FF 1]** This is an action for patent infringement. USAA sued PNC on September 30, 2020 asserting infringement of, *inter alia*, U.S. Patent No. 10,482,432 (the "'432 Patent"), U.S. Patent No. 10,013,605 (the "'605 Patent"), U.S. Patent No. 10,013,681 (the "'681 Patent"), and U.S. Patent No. 8,977,571 (the "'571 Patent") (collectively, the "Asserted Patents"). The Asserted Patents generally relate to mobile check deposit technology.

**[FF 2]** A jury trial was held the week of May 9, 2022. (Dkt. No. 685). On May 13, 2022, the jury returned a verdict finding that USAA had proven by a preponderance of the evidence that PNC infringed at least one of Claims 1, 3, 5, and 21 of the '432 Patent; Claims 12, 13, 22, 26, and 30 of the '681 Patent; Claims 12, 13 and 22 of the '605 Patent; and Claims 1, 2, 9, 12, and 13 of the '571 Patent (the "Asserted Claims") and that USAA had proven by a preponderance of the evidence that such infringement was willful. (Dkt. No. 710). USAA argued that PNC infringed the Asserted Claims literally and under the doctrine of equivalents. (Dkt. No. 721 at 1228:15–21; *see also* Dkt. No. 721 at 1205:6–10).

**[FF 3]** The jury also found that PNC had not proven by clear and convincing evidence that any of the Asserted Claims were invalid. (*Id.*).

**[FF 4]** After the trial, the parties agreed to forego a bench trial on PNC's equitable defenses. The parties agreed that said defenses could be resolved on the papers in order to facilitate the Court's resolution before trial in the -246 Case. (Dkt. No. 728 at 1; Dkt. No. 731).

B.     **Prosecution History of the '432 Patent**

**[FF 5]**     Claim 1 of the '432 Patent recites:

A system comprising:

a customer's mobile device including a downloaded app,

> the downloaded app provided by a bank to control check deposit by causing the customer's mobile device to perform:
>
>> instructing the customer to have a digital camera take a photo of a check;
>>
>> giving an instruction to assist the customer in placing the digital camera at a proper distance away from the check for taking the photo;
>>
>> presenting the photo of the check to the customer after the photo is taken with the digital camera;
>>
>> using a wireless network, transmitting a copy of the photo from the customer's mobile device and submitting the check for mobile check deposit in the bank after presenting the photo of the check to the customer; and

a bank computer programmed to update a balance of an account to reflect an amount of the check submitted for mobile check deposit by the customer's mobile device;

wherein the downloaded app causes the customer's mobile device to perform additional steps including:

>> confirming that the mobile check deposit can go forward after optical character recognition is performed on the check in the photo; and
>
> checking for errors before the submitting step.

(Dkt. No. 738-4 at PX0004.32). The "checking for errors before the submitting step" limitation is central to PNC's prosecution history estoppel defense.

**[FF 6]**     USAA filed the application for the '432 Patent on May 18, 2018. (Dkt. No. 738-3 at PX1173.1; Dkt. No. 738-4 at PX0004.2). Three days later, on May 21, 2018, USAA filed a preliminary amendment cancelling and replacing the claims in full. (Dkt. No. 738-3 at PX1173.92, PX1173.100). The claims included, in addition to all other elements, the limitation "checking for errors before the submitting step" in proposed dependent claim 22. (*Id.* at

3

PX1173.100). This amendment was made before any prosecution or action by the Patent Office. (*Id.*). No rejection of the application had occurred at the time of the amendment. (*Id.*).

[FF 7]   The "checking for errors" limitation was not amended, narrowed, or otherwise modified during prosecution. (*Compare* Dkt. No. 738-3 at PX1173.100 *with* Dkt. No. 738-4 at PX0004.32 ('432 Patent, Claim 1)). Put differently, the language of issued Claim 1 ("checking for errors before the submitting step") is identical to the language presented in the original preliminary amendment ("checking for errors before the submitting step"). (*Id.*).

[FF 8]   Limitations similar to the "checking for errors" limitation appear elsewhere in the '432 Patent family. The '432 Patent is a continuation of Application No. 11/591,247, filed on Oct. 31, 2006, which issued as U.S. Patent No. 7,873,200 (the "'200 Patent"). (Dkt. No. 738-4 at PX0004.3). The '432 Patent expressly incorporates the '200 Patent by reference. (*Id.* at 1:18-21). The '200 Patent states that "[t]his application is related by subject matter to U.S. patent application . . . Ser. No. 11/590,974 [(the "'974 Application")], all filed on even date herewith and also entitled 'Systems and Methods for Remote Deposit of Checks.'" (Dkt. No. 738-7 at 1:7–14). The original 2006 claims of the '974 Application included the limitations: "A method for facilitating deposit of a check, said method comprising: . . . determining if there is an error in said deposit of said check" (Claim 9); "A computer readable medium bearing instructions for facilitating deposit of a check, said instructions comprising: . . . instructions for determining if there is an error in said deposit of said check" (Claim 17); and "A system for facilitating deposit of a check, said system comprising: . . . a subsystem for determining if there is an error in said deposit of said check" (Claim 1). (Dkt. No. 738-8 at PX1176.437–440).

[FF 9]   The '432 Patent is a continuation of U.S. Patent No. 9,224,136 (the "'136 Patent"), the '681 Patent, and the '200 Patent. (Dkt. No. 738-4 at PX0004.2–3). Each of those

patents issued without a "checking for errors" limitation in the claims.  (Dkt. Nos. 738-5, 738-6, 738-7).

[FF 10]   The only rejection during prosecution of the '432 Patent occurred on August 8, 2018, three months after the "checking for errors" limitation was added to the claims.  (Dkt. No. 738-3 at PX1173.115).  The Examiner's rejection was based on 35 U.S.C § 101 and 35 U.S.C. § 112.  (*Id.* at PX1173.117–126).  The '432 Patent claims were not explicitly rejected over prior art during prosecution and there was no specific discussion of the "checking for errors" limitation during prosecution of the '432 Patent.  (*See generally* Dkt. 738-3).

[FF 11]   USAA submitted remarks in response to the rejection on November 8, 2018.  (Dkt. No. 738-3 at PX1173.413–429).  USAA did not argue that the "checking for errors" limitation was a basis to overturn the § 101 rejection.  (*Id.* at PX1173.419–429).  Instead, USAA focused its arguments on seven other limitations.  (*Id.*).

[FF 12]   The Examiner allowed the '432 Patent claims on January 31, 2019.  (*Id.* at PX1173.447).  The Notice of Allowance was accompanied by an Examiner's Amendment that moved the "checking for errors" limitation verbatim from dependent claim 22 into independent claim 21.  (*Id.* at PX1173.452–453).  The Examiner's Reasons for Allowance do not refer to the "checking for errors" limitation as a basis for overcoming the § 101 rejection nor do they state that the Examiner's amendment was the basis for allowance.  (*Id.* at PX1173.455–457).  The "checking for errors" limitation was also not identified as a basis for overcoming prior art.  Rather, the Examiner expressly noted that the closest prior art "fails to teach or suggest" the elements of the proposed independent claim before the "checking for errors" limitation was incorporated verbatim from the proposed dependent claim.  (*Id.* at PX1173.124).

**[FF 13]**   USAA filed a Comments of Statement of Reasons for Allowance and Examiner Interview Summary on February 28, 2019.  (*Id.* at PX1173.508–510).  USAA's comments did not reference the "checking for errors" limitation as the basis for allowance.  Instead, USAA's Comments noted that the allowance was for "the reasons provided in Applicant's" November 8 statement.  (*Id.*).  As stated above, the November 8 statement did not rely on the "checking for errors" limitation.  [FF 11].

### C.   Prosecution History of the '605 and '681 Patents

**[FF 14]**   Claim 12 of the '681 Patent recites:

A system for allowing a customer to deposit a check using the customer's own mobile device with a digital camera, the system configured to ask the customer to log in using a user name and password, the system including:

a customer's mobile device including:

    camera software that works with the digital camera; and

    a downloaded app associated with a bank to work with the camera software and to control submission of a check for deposit by causing the customer's mobile device to perform:

        instructing the customer to have the digital camera take photos of front and back sides of the check;

        displaying a graphical illustration to assist the customer in having the digital camera take the photos of the check, the illustration assisting the customer in placing the digital camera a proper distance away from the check for taking the photos;

        presenting the photos of the check to the customer after the photos are taken;

        confirming that the mobile check deposit can go forward after the system performs optical character recognition on the check, the optical character recognition determining an amount of the check and reading a Magnetic Ink Character Recognition (MICR) line; and

        using a wireless network, transmitting a copy of the photos over a public communications network from the customer's mobile device and submitting the check for mobile check deposit in the bank after the photos of the check are presented to the customer;

>a computer associated with the bank programmed to update a balance of an account to reflect the check submitted for mobile check deposit by the customer's mobile device,
>
>the system configured to generate a log file for the mobile check deposit, the log file including an image of the check submitted for mobile check deposit.

(Dkt. No. 738-6 at PX0003.28). The "presenting the photos of the check to the customer after the photos are taken" limitation is central to PNC's prosecution history estoppel defense.

>**[FF 15]** Claim 12 of the '605 Patent recites:
>
>A system for allowing a customer to deposit a check using a customer's own handheld mobile device with a digital camera, the system configured to authenticate the customer, the system including:
>
>>a customer's handheld mobile device including:
>>
>>>camera software that controls the digital camera; and
>>>
>>>a downloaded app associated with a bank configured to control the camera software and to control submitting a check for deposit by causing the customer's handheld mobile device to perform the following steps:
>>>
>>>>instructing the customer to have the digital camera take photos of front and back sides of the check;
>>>>
>>>>using a display of the customer's handheld mobile device to assist the customer in having the digital camera take the photos of the check;
>>>>
>>>>presenting the photos of the check to the customer after the digital camera takes the photos; and
>>>>
>>>>transmitting, using a wireless network, a copy of the photos over the Internet from the customer's handheld mobile device; and
>>>>
>>>>submitting the check for mobile check deposit in the bank after the system authenticates the customer and after presenting the photos of the check to the customer;
>>
>>a computer associated with the bank programmed to update a balance of an account to reflect an amount of the check submitted for a mobile check deposit by the customer's handheld mobile device; and
>>
>>the system configured to perform additional steps including:
>>
>>>confirming that the mobile check deposit can go forward after performing an optical character recognition on the check, the optical

>  character recognition determining the amount of the check and reading a MICR line;
>
>  initiating the mobile check deposit after performing the confirming step; and
>
>  generating a log file for the mobile check deposit, the log file including an image of the check submitted for the mobile check deposit.

(Dkt. No. 738-13 at PX0002.27–28). The "presenting the photos of the check to the customer after the photos are taken" limitation is central to PNC's prosecution history estoppel defense.

**[FF 16]** The application which resulted in the '681 Patent was filed on July 28, 2017. (Dkt. No. 738-6 at PX0003.2). The original proposed claim 12 of the application (which became the '681 Patent) included the limitation "presenting the photos of the check to the customer after the photos are taken." (Dkt. No. 738-9 at PX0100.567–100.568). The limitation "presenting the photos of the check to the customer after the photos are taken" was not amended or narrowed during prosecution of the '681 Patent and appears verbatim in issued Claim 12. (Dkt. No. 738-6 at PX0003.28 ('681 Patent, Claim 12)).

**[FF 17]** The related applications listed on the face of the '681 Patent all issued as U.S. Patents without a "presenting the photos" limitation. (Dkt. No. 738-6 at Related U.S. Application Data; Dkt. No. 738-12; Dkt. No. 738-5; Dkt. No. 738-7; U.S. Patent No. 8,732,081; U.S. Patent No. 8,392,332).

**[FF 18]** The application which resulted in the '605 Patent was filed on July 28, 2017. (Dkt. No. 738-13 at PX0002.2). The original proposed claim 30 of the application (which became the '681 Patent) included the limitation "have the digital camera take the photos of front and back sides of the check [and] . . . presenting the photos of the check to the customer after the photos are taken." (Dkt. No. 738-10 at PX0101.452; *see also id*. at PX0101.447, PX0101.449 (similar limitations)). This limitation was not amended or narrowed during prosecution and appears in

8

issued Claim 12 without substantive change ("presenting the photos of the check to the customer after the digital camera takes the photos"). (Dkt. No. 738-13 at PX0002.27–28 ('605 Patent, Claim 12)).

**[FF 19]** The original parent of the '605 Patent is Application No. 11/590,974, which was filed in 2006 and issued as U.S. Patent No. 8,708,227 over three years before the application for the '605 Patent was filed. (Dkt. No. 738-8; Dkt. No. 738-13).

**[FF 20]** The only application related to the '605 Patent that PNC identifies as being rejected is Application No. 14/225,090 (the "'090 Application"). (Dkt. No. 734 at 5–6). The '605 Patent was not filed in response to the rejection of the '090 Application because the Patent Trial and Appeal Board ("PTAB") did not issue a final decision rejecting that application until August 2019. (Dkt. No. 738-11 at Aug. 22, 2019 Board Decision). The application leading to the '605 Patent was filed on July 28, 2017 and issued on July 3, 2018—a year before prosecution of the '090 Application ended. (*Id.*; Dkt. No. 738-13)

**[FF 21]** The earlier 2017 rejection of the '090 Application cited by PNC did not involve the "presenting the photos" limitation. Indeed, PNC has failed to present any evidence that the 2017 rejection involved the "presenting the photos" limitation. The '090 Application was not rejected over prior art. (Dkt. No. 738-11 at Aug. 22, 2019 Board Decision). Instead, the '090 Application was rejected as allegedly directed to an abstract idea under § 101. (*Id.*). Nothing in the prosecution history of either the '090 Application or the '605 Patent identifies the absence of a "presenting the photos" limitation as a reason for the § 101 rejection. To the contrary, the Examiner of the '605 Patent initially rejected the original claims under § 101 despite the

9

application already having the "presenting the photos" limitation.[2] (Dkt. No. 738-10 at PX0101.375–101.397; [FF 18]).

D. **Unclean Hands**

**[FF 22]** PNC previously filed a Motion for Sanctions under Rule 37(e) (Dkt. No. 252) (the "Motion for Sanctions"). The Court held a hearing on PNC's Motion for Sanctions where it heard evidence and argument regarding PNC's allegations. (Dkt. No. 275; Dkt. No. 278; Dkt. No. 279 at 1). After the hearing, the Court concluded that "USAA's conduct did not rise to a level of bad faith as required by Fed. R. Civ. P. 37(e) and that there was no showing of anticipation of litigation in the period between the *Mitek* litigation and the *Wells Fargo* litigation." (Dkt. No. 279 at 2) (citing Dkt. No. 278 at 61:18–63:4). PNC now raises the same facts and arguments to avoid the jury's verdict under the theory of unclean hands. (Dkt. No. 734 at 11–28).

## II. CONCLUSIONS OF LAW

**[CL 1]** A presumption of "[e]stoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 736 (2002). PNC has the burden to show that the amendment was narrowing. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366 (Fed. Cir. 2003) (burden shifts to USAA only "if the accused infringer establishes that the amendment was a narrowing one"). "If the patentee successfully establishes that the amendment was not for a reason of patentability, then prosecution history estoppel does not apply." *Id.* at 1367. If a narrowing amendment is established, it is USAA's burden to prove it was not made for reasons related to patentability. *Id.*

---

[2] The Examiner ultimately withdrew the rejection based on: (1) arguments by the applicant, none of which identified the "presenting the photos" limitation as a basis for overturning the rejection; and (2) an Examiner's amendment that did not impact these limitations. (Dkt. No. 738-10 at PX0101.38–54). The Examiner's remarks in the Notice of Allowance likewise did not identify "presenting the photos" as a basis for overcoming the rejection. In fact, the Examiner noted a prior art reference that it believed disclosed that limitation. (*Id*. at PX0101.52).

10

### A.     '432 Patent Prosecution History Estoppel

**[CL 2]**     The "checking for errors" limitation was not added as a condition to secure allowance of the '432 Patent. [FF 6]–[FF 7]. USAA filed the application for the '432 Patent on May 18, 2018. *Id.* Three days later, before any prosecution, USAA filed a preliminary amendment cancelling and replacing the claims in full. *Id.* The added claims included, in addition to all other elements, the "checking for errors" limitation. *Id.* No prosecution had occurred at the time the amendment was made, and at no point during prosecution was there any indication "checking for errors" was the basis for patentability. *Id.*; [FF 10]–[FF 13].

**[CL 3]**     Additionally, several of the parent applications to the '432 Patent had already issued without the "checking for errors" limitation present. [FF 9].

**[CL 4]**     PNC has not met its burden to show the preliminary amendment was narrowing.

**[CL 5]**     PNC argues that prosecution history estoppel bars the application of the doctrine of equivalents to its product, which PNC admits checks for errors.[3] (Dkt. No. 718 at 822:18–20). However, the alleged narrowing PNC points to is the amendment that added the "checking for errors" limitation *as a whole*. Put differently, this is not a case where USAA changed *where or when* errors were to be checked during prosecution and should now be estopped from using the doctrine of equivalents to expand *where or when* errors can be checked. Rather, USAA's amendment during prosecution simply added the "checking for errors" limitation—something the PNC product indisputably does, with the only dispute being *where or when*. (*Id.* at 822:18–20; [FF 6], [FF 12]).

**[CL 6]**     Determining whether a claim is narrowing necessarily depends on the level of abstraction with which one analyzes amendments. Here, PNC contends that the mere addition of

---

[3] The only dispute about this limitation is not if, but where or when the system checks for errors—on the mobile device or a remote server. (Dkt. No. 718 at 822:18–20).

11

the "checking for errors" limitation is narrowing. (Dkt. No. 734 at 2–3).  The Court finds such an approach oversimplifies the prosecution history estoppel analysis and ignores the purpose of the doctrine: to prevent a patentee from reclaiming claim scope, through the doctrine of equivalents, that was amended away during prosecution to gain allowance of the claim at issue.  Although adding the "checking for errors" limitation to a claim that previously did not require it could, on some level, be considered "narrowing," the Court is not persuaded that such is the proper analysis.[4]  In this case, the claim was not amended in a way that narrowed the limitation relevant to the doctrine of equivalents dispute of **where or when** the error checking occurs.  PNC's approach views "narrowing" too generically.  The better approach considers whether USAA narrowed its claims such that "checking for errors" on a remote server—the behavior USAA contends is covered by the doctrine of equivalents—is outside the claim scope.  The Court finds that USAA made no such amendment.  Specifically, USAA did not make a narrowing amendment to **where or when** error checking occurs during prosecution.  Accordingly, USAA cannot be estopped from asserting doctrine of equivalents against PNC on the "checking for errors before the submitting step" limitation where PNC contends that errors are checked on a remote server—not the mobile device itself.

[CL 7]  The "checking for errors" limitation was not narrowed during prosecution of the '432 Patent.  [FF 7].  The language of this limitation in the issued claim is identical to the language presented in the original preliminary amendment.  *Id*.  In other words, Claim 1 of the

---

[4] To the extent PNC argues that the rewriting of proposed dependent claim 21 as an independent claim is a narrowing amendment that disclaims all equivalents of the "checking for errors" limitation, the Court rejects that argument.  As explained below, the "checking for errors" limitation existed in proposed dependent claim 22.  [FF 6].  In other words, Claim 1 of the '432 Patent existed, almost verbatim, as proposed dependent claim 22 during prosecution.  [FF 12].  The Court is not persuaded that converting dependent claim 22 to an independent claim—where the scope remains unchanged—constitutes a narrowing amendment.  PNC cites no authority for such a proposition.  [CL 8].

'432 Patent existed, almost verbatim, three days after filing of the '432 Patent application—before any action by the Patent Office. *Id.*

**[CL 8]**  PNC's argument that a narrowing amendment occurred because the "checking for errors" limitation was moved verbatim from a dependent claim to the independent claim in an examiner's amendment is unpersuasive in light of Federal Circuit precedent.  In *Insta-Foam Prods., Inc. v. Universal Foam Sys., Inc.*, 906 F.2d 698 (Fed. Cir. 1990), the patent applicant "amended application claim 9 by incorporating the language of [dependent] application claim 13." *Id*. at 703.  The Federal Circuit held that because "the allowed claim contains the same limitation . . . as did the abandoned claim, the patent applicant did not disclaim anything." *Id.*; *see also Bose Corp. v. JBL, Inc*., 274 F.3d 1354, 1359 (Fed. Cir. 2001) (rewriting "dependent claim 2" as independent claim was not narrowing).[5]

**[CL 9]**  Further, the prosecution history shows that the Examiner's amendment was not made to overcome prior art because the Examiner had already found that the closest prior art (Dutta) "fails to teach or suggest" the elements of the independent claim before "checking for errors" was incorporated verbatim from the dependent claim.  [FF 12].

**[CL 10]**  PNC's argument that the "checking for errors" limitation was added to overcome prior art and the § 101 rejection is similarly unpersuasive.  The "checking for errors" limitation was part of the proposed claims in May 2018—before any examination or action by the Patent Office.  [FF 6]–[FF 7].  Further, the § 101 rejection occurred three months later in August of 2018.  [FF 10].  The '432 Patent claims were never rejected over prior art. *Id*.

---

[5] PNC attempts to distinguish these cases on the basis that the applicant did not add new limitations in those cases.  (Dkt. No. 740 at 1).  PNC is presumably referring to the procedural addition of the claims during prosecution, which occurred three days after the filing of the '432 Patent application and before any action by the Patent Office.  PNC's reliance on this procedural addition of claims is unpersuasive.  [CL 7].

**[CL 11]** The Court is further unpersuaded by PNC's suggestion that the "checking for errors" limitation overcame the § 101 rejection. USAA did not argue that the "checking for errors" limitation was a basis to overturn the § 101 rejection. [FF 11]. Rather, USAA's response focused on seven other limitations. *Id.* Similarly, the Examiner's Reasons for Allowance do not mention the "checking for errors" limitation as a basis for overcoming the § 101 rejection, nor do they state that the Examiner's Amendment was the basis for allowance. [FF 12]. USAA's Comments of Statement of Reasons for Allowance and Examiner Interview Summary likewise did not reference the "checking for errors" limitation as the basis for allowance. [FF 13]. Instead, USAA's Comments noted that allowance was for "the reasons provided in Applicant's" November 8 statement. *Id*. The November 8 statement did not address "checking for errors." *Id.*

**[CL 12]** Accordingly, prosecution history estoppel does not bar USAA's doctrine of equivalents argument with respect to the "checking for errors" limitation in the '432 Patent.

### B.     '605 Patent and '681 Patent Prosecution History Estoppel

**[CL 13]** Similarly, the Court finds that there is no prosecution history estoppel as to the "presenting the photos/electronic images" limitations in the '605 and '681 Patents because they were present in the originally-filed claims and were not amended during prosecution. Where a limitation "was not amended during prosecution" "there can be no amendment-based estoppel with respect to this claim limitation." *Abbott Labs. v. Dey, L.P.*, 287 F.3d 1097, 1103 (Fed. Cir. 2002); *see also Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 813 (Fed. Cir. 2002) (reversing finding of prosecution history estoppel where "the applicants did not amend this language regarding the location of the terminals"). Here, proposed claim 12 of the '681 Patent application included the "presenting the photos of the check to the customer after the photos are taken" limitation. [FF 14]; [FF 16]. This limitation appears verbatim in issued Claim 12. [FF 14]. Similarly, proposed claim 30 of the '605 Patent application included "have the digital camera take

14

the photos of front and back sides of the check [and] . . . presenting the photos of the check to the customer after the photos are taken." [FF 18]. This limitation appears in issued Claim 12 without substantive change. [FF 15].

[CL 14]   The Court is not persuaded by PNC's argument that the mere filing of a continuation application is a narrowing amendment. Both USAA and PNC rely on *Mark I Marketing Corp. v. R.R. Donnelly & Sons Co.*, 66 F.3d 285 (Fed. Cir. 1995) on this issue. (Dkt. No. 734 at 1; Dkt. No. 738 at 8). *Mark I* stands for the proposition that the filing of a continuation may give rise to a presumption of estoppel if it is done for reasons related to patentability, such as to avoid a rejection in the parent application in lieu of filing a narrowing amendment. 66 F.3d at 292. In *Mark I*, the Court found estoppel applied where the grandparent application was "rejected over prior art that suggested replicating a color image using two printing plates and two inks. Rather than responding to the rejection, Mark I filed the '815 continuation-in-part application with new claims." *Id*. at 291. When the first continuation was itself rejected (after further narrowing amendments), the applicant filed a second continuation with claims "even narrower than the '815 claims." *Id*. The Federal Circuit found estoppel applied in that case because "Mark I was unsuccessful in obtaining allowance of the claims until they were narrowed to require that both the first and the second printing plates be made by sequentially interposing particular combinations of colored filters" and also "asserted that the claims were patentably distinguishable over the prior art based on these process steps." *Id*. at 292.

[CL 15]   Here, however, USAA has shown that the '605 and '681 Patents were not filed in response to a rejection or to overcome prior art. With respect to the '681 Patent, it was not filed in response to a rejection because all of the related applications listed on the face of the '681 Patent issued as U.S. Patents. [FF 17]. PNC fails to identify any relevant rejection. Further, the parent

15

patents of the '681 Patent issued without a "presenting the photos" limitation. *Id.* Such demonstrates that the limitation was not added to secure the patent.

[CL 16]   With respect to the '605 Patent, it also was not filed to evade a rejection or in lieu of a narrowing amendment. The original parent of the '605 Patent is Application No. 11/590,974, which was filed in 2006 and issued as U.S. Patent No. 8,708,227. [FF 19]. The '605 Patent application was filed three years later and after the 8,708,227 Patent had already issued. *See id.* In other words, the '605 Patent could not have been filed to overcome a rejection.

[CL 17]   The only rejection of a related application identified by PNC is the rejection of the '090 Application. However, the '605 Patent was not filed in response to the rejection of the '090 Application. First, the '605 Patent application was not filed instead of responding to the rejection in the '090 Application. [FF 20]. Rather, USAA challenged the rejection of the '090 Application and the PTAB did not issue a final decision on this rejection until August 2019. *Id.* The application leading to the '605 Patent was filed on July 28, 2017 and issued on July 3, 2018—a year before prosecution of the '090 Application concluded. *Id.* Second, the 2017 rejection of the '090 Application that PNC relies on had no connection to the "presenting the photos" limitation. [FF 21]. The '090 Application was rejected as allegedly directed to an abstract idea under § 101. *Id.* The prosecution history shows that the absence of a "presenting the photos" limitation was not the basis for the rejection or the basis for overcoming it. *Id.* To the contrary, the Examiner of the '605 Patent application initially rejected the original claims under § 101 even though the claims already contained the "presenting the photos" limitation. *Id.*; *see also id.* at n.2.

[CL 18]   Accordingly, prosecution history estoppel does not bar USAA's doctrine of equivalents argument with respect to the "presenting the photos/electronic images" limitations in the '605 and '681 Patents.

### C.    Unclean Hands

**[CL 19]**    The Court previously considered and ruled on PNC's Motion for Sanctions and did not impose sanctions. [FF 22]. PNC's briefing on its unclean hands defense presents no new evidence beyond that which was previously raised in PNC's Motion for Sanctions. Indeed, PNC's briefing on its unclean hands defense repeatedly cites to its Motion for Sanctions and the accompanying exhibits. (*E.g.*, Dkt. No. 734 at 14, 18, 19). Accordingly, for the same reasons the Court declined to sanction USAA in PNC's Motion for Sanctions, the Court declines to set aside the jury's verdict under the equitable doctrine of unclean hands. (Dkt. No. 279 at 2).

## III.    CONCLUSION

For the reasons stated herein, the Court finds that PNC has failed to show that the jury's verdict should be set aside due to its prosecution history estoppel and unclean hands defenses. Judgment will be entered herein accordingly.

**So ORDERED and SIGNED this 19th day of August, 2022.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE